# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

## UNITED STATES' RESPONSE IN OPPOSITION TO QUICKEN'S MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ II

TABLE OF AUTHORITIES ...................................................................... IV

ISSUES PRESENTED ................................................................................. X

PRINCIPAL CONTROLLING AUTHORITIES ..................................... XI

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 3

I.     THE COMPLAINT PLEADS QUICKEN'S FRAUDULENT SCHEME 4

     A.    The United States Alleged the Manner of, and Methods Used in, Quicken's Fraudulent Scheme ......................................................... 4

     B.    Quicken's Arguments That More is Required to Plead a Fraudulent Scheme Are Unsupportable ............................................................ 7

II.    THE GOVERNMENT HAS SUFFICIENTLY PLED QUICKEN'S SCIENTER AS TO EACH ASPECT OF ITS FRAUDULENT SCHEME ............................................................................................ 10

     A.    The Complaint Alleges That Quicken Knew Its Value Appeals Process Violated Program Requirements ....................................... 11

     B.    The Complaint Alleges that Quicken Knowingly Manipulated Data Submitted to TOTAL .................................................................... 15

     C.    Quicken Knowingly Miscalculated Borrowers' Income .............. 17

     D.    Quicken Knowingly Violated Program Rules Through its Management Exception Process .................................................... 18

     E.    Quicken Misconstrues the Import of Its Violations of Quality Control and Incentive Compensation Requirements. ................... 20

III.   QUICKEN'S FAILURES TO ABIDE BY ORIGINATION AND UNDERWRITING REQUIREMENTS WERE MATERIAL. ................ 21

     A.    *Escobar* Codified that Common Law Theories of Materiality Apply to the FCA ................................................................................. 22

B.    The Government Clearly Alleged Sufficient Facts to Make Plausible the Materiality of Quicken's Violations. ........................................24

C.    The Government Has Alleged that Quicken Knew Its Fraudulent Scheme Was Material. ..................................................................27

IV.    THE UNITED STATES PROPERLY PLED CAUSATION. .................28

V.    THE GOVERNMENT'S COMMON LAW CLAIMS ARE PROPERLY PLED AND ARE LEGALLY COGNIZABLE. ......................................31

VI.    QUICKEN'S LIMITATIONS ARGUMENTS FAIL. ............................33

CONCLUSION ........................................................................................34

# TABLE OF AUTHORITIES

**Cases:**

*Albrecht v. Comm. On Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.,*
  357 F.3d 62, 68 (D.D.C. 2004)…….………………………………………34

*Albrecht v. Treon,*
  617 F.3d 890 (6th Cir. 2010)……….……………………………………….3, 34

*Alig v. Quicken Loans, Inc.,*
  Civ. A. No. 12-0114 (N.D. W.Va. Aug. 25, 2016)……………………..13-14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)………………………...……………………………3, 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)………………………………………………………3

*Cayman Chem. Co. v. Libby,*
  Civ. A. No. 08-11069, 2008 WL 2858342 (E.D. Mich. July 22, 2008)……33

*City of Morristown v. AT&T Corp.,*
  --- F. Supp. 3d ---, 2016 WL 4530499 (E.D. Tenn. Aug. 29, 2016)……….18

*Ernst & Ernst v. Hocfelder,*
  425 U.S. 185 (1976)………………………………………………...…16

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,*
  104 F. Supp. 3d 441 (S.D.N.Y. 2015)…………………….…………….14

*Galeana Telecomms. Invs., Inc. v. Amerifone Corp.,*
  Civ. A. No. 15-14095, 2016 WL 4205997 (E.D. Mich. Aug. 10, 2016)…....3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
  136 S. Ct. 1923 (2016)…………………………………………………..12

*Harrison v. Westinghouse Savannah River Co.,*
  176 F.3d 776 (4th Cir. 1999)………………………………………...14-15

*In re O'Keefe*,
    46 So. 3d 1240 (La. 2010)…………………………………………......32

*In re Samuel T. Issac & Assoc., Inc.*,
    1983 WL 13321 (H.U.D.B.C.A. Nov. 10, 1983)…………………….…32

*Jones v. Bock*,
    549 U.S. 199 (2007)……………………………………………………..34

*Jones v. Rogers Mem'l Hosp.*,
    442 F.2d 773 (D.C. Cir. 1971)………………………………………..…34

*Junius Constr. Co. v. Cohen*,
    257 N.Y. 393 (1931)………………………………………………...23, 29

*Kungys v. United States*,
    485 U.S. 759 (1988)……………………………………………………..22

*Midwest Healthplan, Inc. v. Nat'l Med. Health Card Sys., Inc.*,
    413 F. Supp. 2d (E.D. Mich. 2005)……………………………………...32

*Neder v. United States*,
    527 U.S. 1 (1999)………………………………………………………..22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)………………………………………………...…14

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)……………………………………………………....12

*United States v. 1st Nat'l Bank of Cicero*,
    957 F.2d 1362 (7th Cir. 1992)……………………………………...……30

*United States v. Americus Mortgage Corp.*,
    Civ. A. No. 12-2676,
    2014 WL 4274279 (S.D. Tex. 2016)……………………4, 6, 9-10, 26-27, 31

*United States v. Applied Pharmacy Consultants, Inc.*,
    182 F.3d 603 (8th Cir. 1999)…………………………………………….32

*United States v. Bernstein*,
    533 F.2d 775 (2d Cir. 1976)……………………………………...……32

*United States v. Bollinger Shipyards, Inc.*,
    775 F.3d 255 (5th Cir. 2014)………………………………………….19

*United States v. Craig*,
    178 F.3d 891 (7th Cir. 1999)………………………………………..16

*United States v. Eghbal*,
    548 F.3d 1281 (9th Cir. 2008)……………………………………....…30

*United States v. Hibbs*,
    568 F.2d 347 (3d Cir. 1977)………………………………………..30

*United States v. Kensington Hosp.*,
    Civ. A. No. 90-5430, 1993 WL 21446 (E.D. Pa. Jan. 14, 1993)………...…35

*United States v. Krizek*,
    111 F.3d 934 (D.C. Cir. 1997)……………………………………..11

*United States v. Luce*,
    Civ. A. No. 11-5158, 2012 WL 2359357 (N.D. Ill. June 20, 2012)……….10

*United States v. Miller*,
    645 F.2d 473 (5th Cir. 1981)………………………………………....30

*United States v. Movtady*,
    13 F. Supp. 3d 325 (S.D.N.Y. 2014)……………………………………10

*United States v. Peterson*,
    538 F.3d 1064 (9th Cir. 2008)……………………………………...30

*United States v. Reunion Mortg., Inc.*,
    Civ. A. No. 13-2340, 2013 WL 5944252 (N.D. Cal. Nov. 5, 2013)…...10, 34

*United States v. Sci. App. Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010)…………………………………....19

*United States v. Spicer*,
    57 F.3d 1152 (D.C. Cir. 1995)…………………………………...26, 29-30

*United States v. TXL Mortg. Corp.*,
    Civ. A. No. 15-1658, 2016 WL 5108019 (D.D.C. Sept. 20, 2016)………...10

*United States v. United Techs. Corp.*,
    782 F.3d 718 (6th Cir. 2015)………………………………………….....29

*United States v. Wells Fargo Bank, N.A.*,
    972 F. Supp. 2d 593 (S.D.N.Y. 2013)……………………..6, 9-10, 26, 31, 33

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007)…………………………………………...4, 6-8

*United States ex rel. Escobar v. Universal Health Servs., Inc.*,
    842 F.3d 103 (1st Cir. 2016)……………………………………………….23

*United States ex. rel. Fago v. M&T Mortg. Co.*,
    518 F. Supp. 2d 108 (D.D.C. 2007)…………………………………….14

*United States ex rel. Friddle v. Taylor Bean & Whitaker Mortg. Corp.*,
    2012 WL 1066510 (N.D. Ga. March 27, 2012)……………………….....10

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009)…………………………………………...3

*United States ex rel. Johnson v. Shell Oil Co.*,
    183 F.R.D. 204 (E.D. Tex. 1998)………………………………………4

*United States ex rel. Loughren v. Unum Grp.*,
    613 F.3d 300 (1st Cir. 2010)……………………………………………14

*United States ex rel. Marcus v. Hess*,
    317 U.S. 537 (1943)…………………………………………………..23

*United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*,
    114 F. Supp. 3d 549 (E.D. Tenn. 2014)…………………………….6

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
    838 F.3d 768 (6th Cir. 2016)……………………………………………...4, 8-9

*United States ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015)…………………………………………..12

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004)…………………………………………14

*United States ex rel. Schwedt v. Planning Research Corp.*,
    59 F.3d 196 (D.C. Cir. 1995)…………………………………….....29

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*,
    214 F.3d 1372 (D.C. Cir. 2000)…………………………………....14-15

*United States ex rel. Swafford v. Borgess Med. Ctr.*,
    98 F. Supp. 2d 822 (W.D. Mich. 2000),
    *aff'd* 24 F. App'x 491 (6th Cir. 2001)…………………………....12

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)…………………………………………..21- 26, 28

## Statutes, Regulations, and Rules:

28 U.S.C. § 2415……………………………………………….....34-35

28 U.S.C. § 2416………………………………………………...34-35

31 U.S.C. § 3729…………………………………………….11, 18, 22

24 C.F.R. § 203.255(g)……………………………………………33

24 C.F.R § 203.5(e)…………………………………………….....13

Fed. R. Civ. P. 8(a)…………………………………………..3, 7, 11

Fed. R. Civ. P. 9(b)……………………………………...2-4, 7-8, 11

Fed. R. Civ. P. 12(b)(6)……………………………………….2

Final Rule, Mutual Insurance Programs Under the National Housing Act;
      Direct Endorsement Processing, 48 Fed. Reg. 11928 (Mar. 22, 1983).......16

**Other Authorities:**

HUD Handbook 4060.1, REV-2, ch. 7-4.D………………………………….....26

H. Rep. No. 99-660 (June 26, 1986)………………………………………………16

S. Rep. No. 99-345 (1986)……………………………………………………...19

26 R. Lord, WILLISTON ON CONTRACTS § 69:12 (4th ed. 2003)……………...…22

RESTATEMENT (SECOND) OF TORTS § 538 (1976)………………………...…22

## ISSUES PRESENTED

(1)     Does the United States' Complaint adequately satisfy the applicable pleading standards under Fed. R. Civ. P. 8 and 9(b)?

(2)     Does the United States' Complaint set forth claims under the False Claims Act and common law for which relief can be granted, as required by Fed. R. Civ. P. 12(b)(6)?

(3)     Does the United States' Complaint adequately allege Quicken's scienter under the False Claims Act by setting forth facts that give rise to a "reasonable inference" that Quicken acted with the requisite scienter?

(4)     Does the United States' Complaint adequately set forth facts sufficient to satisfy the standard for materiality articulated by the Supreme Court in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)?

(5)     Does the United States' Complaint adequately allege that Quicken's conduct caused the United States' losses?

(6)     Does the United States' Complaint, on its face, establish that its claims are barred by any applicable statutes of limitations?

## PRINCIPAL CONTROLLING AUTHORITIES

(1)  *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 768 (6th Cir. 2016) (Issue 1)

(2)  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007) (Issue 1)

(3)  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (Issue 2)

(4)  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Issues 2 and 3)

(5)  *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) (Issue 4)

(6)  *United States v. United Techs. Corp.*, 782 F.3d 718, 728 (6th Cir. 2015) (Issue 5)

(7)  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (Issue 6)

# INTRODUCTION

Between September 2007 and December 2011, at the height of the financial crises and its immediate aftermath, Quicken Loans, Inc. ("Quicken") carried out a systemic scheme to originate, underwrite, and endorse for Federal Housing Administration ("FHA") insurance mortgages that it knew violated material FHA requirements. As detailed at length in the Complaint, Quicken's conduct was not an innocent mistake or the actions of a negligent mortgage lender, but rather a knowing and systemic scheme to reap a windfall at the expense of the FHA and the taxpayers, leaving them to foot the bill when the mortgages defaulted. For that reason, the United States Department of Justice, on behalf of the Department of Housing and Urban Development (HUD), of which FHA is a part, filed this False Claims Act suit.

Under the Direct Endorsement (DE) program, lenders like Quicken are allowed to originate mortgages and endorse them for FHA insurance without any prior review by HUD. Compl. ¶¶ 49-68. This program, built on trust, requires lenders to follow FHA rules for assuring the borrower's creditworthiness and the value of the mortgage's collateral so that FHA can properly manage its risk. *Id.* ¶ 91. As the Complaint sets forth, Quicken betrayed this trust and engaged in an overarching scheme to endorse ineligible mortgages for FHA insurance. Quicken's goal was to get mortgages closed and sold and, to accomplish that goal, Quicken systematically ignored FHA's creditworthiness and collateral requirements. And as

detailed in the Complaint, Quicken executives knew what they were doing and left a paper trail to prove it. As to one mortgage they wrote, "the only upside here is we have FHA insurance," and another mortgage "would be uninsurable if they [HUD] reviewed it prior to insuring. Chances are not high that they would review it." *Id.* at ¶¶ 175-76. They acknowledged that mortgages were underwritten with "bastard income," which they explained was "trying to put some kind of income together that is plausible to the investor even though we know its creation comes from something evil and horrible." *Id.* at ¶ 146. They endorsed a mortgage for FHA insurance, despite "absolute confirmation" that a mortgage was "uninsurable." *Id.* at ¶ 121.

Contrary to Quicken's nonsensical argument that the United States' Complaint is somehow deficient both for being too sweeping and too specific in its allegations, the Complaint not only pleads all of the necessary elements of Quicken's False Claims Act and common law violations, but is replete with detail and references to relevant facts with respect to each aspect of Quicken's scheme to originate and endorse ineligible loans between 2007 and 2011.[1] These details easily satisfy the United States' obligations under Fed. R. Civ. P. 9(b) and 12(b)(6) and Quicken's motion to dismiss should thus be denied.

---

[1] While Quicken attempts to show that the Government's allegations are implausible by providing evidence of Quicken's allegedly improved loan performance between 2014 and 2016 (Mot. at 3), this evidence is not only irrelevant and misleading, because it relates to a different time period, but also improper on a motion to dismiss.

## **ARGUMENT**

The United States' Complaint satisfies all applicable pleading standards. Under Rule 8(a)(2), a complaint must contain only "a short plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Accordingly, on a motion to dismiss "courts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."   *Galeana Telecomms. Invs., Inc. v. Amerifone Corp.*, Civ. A. No. 15-14095, 2016 WL 4205997, at *3 (E.D. Mich. Aug. 10, 2016) (Goldsmith, J.) (quotation and correction marks omitted) (quoting *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)).

This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Rule 9(b) requires a party to plead with particularity certain elements of a fraud claim, but "does not supplant Rule 8(a)'s notice pleading."   *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009) (reversing dismissal

of certain FCA claims). Accordingly, a plaintiff more than satisfies Rule 9(b) when, as here, it alleges the "plead[s] representative false claims" or pleads specific facts "that support a strong inference that specific false claims were submitted for payment." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 768, 773 (6th Cir. 2016). "Where the allegations in a [plaintiff's] complaint are 'complex and far-reaching, pleading every instance of fraud would be extremely ungainly, if not impossible.'" *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007) (quotation omitted)); *see also United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206-07 (E.D. Tex. 1998) (when fraud is "complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied" and collecting cases).

## I.    THE COMPLAINT PLEADS QUICKEN'S FRAUDULENT SCHEME

The United States' Complaint details, with particularity, Quicken's scheme to endorse ineligible mortgages it knew, or should have known, failed to comply with FHA's underwriting and origination rules related to creditworthiness and collateral. Quicken's arguments for dismissal fail to reckon with the United States' detailed and specific allegations or the applicable legal standard and should be rejected.

### A.    The United States Alleged the Manner of, and Methods Used in, Quicken's Fraudulent Scheme

The Complaint alleges a fraud scheme similar to the fraud scheme the United States has alleged against other lenders: "knowingly representing to HUD that

certain FHA-insured mortgages had been underwritten with due diligence and were eligible for FHA insurance when, in fact, they were not." *United States v. Americus Mortgage Corp.*, Civ. A. No. 12-2676, 2014 WL 4274279 (S.D. Tex. 2014) (Jury Verdict Attached as Ex. 1). The Complaint provides ten representative examples of ineligible mortgages that Quicken endorsed for FHA insurance in violation of FHA requirements. Compl. ¶¶ 125, 126, 139, 140, 141, 142, 149, 150, 173, 174. For each mortgage, Quicken made specific false certifications depending on whether the loan was approved using FHA's TOTAL algorithm through an Automated Underwriting System (AUS) or through a manual review. *Id.* ¶¶ 87-89. The Government's allegations of falsity are narrowly based on rules related to the creditworthiness of the borrower and the sufficiency of the collateral securing the mortgages, although Quicken also violated numerous other HUD requirements that underscore the recklessness of its conduct (and will thus be relevant at trial).

Along with these representative ineligible mortgages, the Complaint sets forth various examples of the methods by which Quicken carried out its scheme which demonstrate it knew, or should have known, it endorsed ineligible mortgages for FHA insurance: (a) instituting a "management exception" process where Quicken's executives expressly approved violations of FHA requirements (*id.* ¶¶ 114-27); (b) inflating the appraised value of properties (the collateral securing the FHA mortgage) through the use of a "value appeal" process whereby Quicken originators

-- *i.e.*, mortgage bankers -- and underwriters pressured appraisers to increase appraised values (*id.* ¶¶ 128-43); (c) knowingly misstating and miscalculating borrowers' income to meet FHA requirements (*id.* ¶¶ 144-55); (d) manipulating data and ignoring red flags as to the financial ability of borrowers to make payments (*id.* ¶¶ 166-74); (e) incentivizing underwriters to ignore FHA rules by paying commissions for approved loans (*id.* ¶¶ 156-65); and (f) hiding all this from HUD by ignoring material violations during its quality control reviews and not disclosing the violations it found, as it was required to do (*id.* ¶¶ 179-98). These allegations are more than enough to plead Quicken's scienter. *See generally United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 619 (S.D.N.Y. 2013); *Americus Mortg.*, 2014 WL 4274279, at *9-10; *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 114 F. Supp. 3d 549, 567-68 (E.D. Tenn. 2014).

Though not required under Sixth Circuit law (*see Bledsoe*, 501 F.3d at 509-10), the Complaint also alleges specific persons and categories of Quicken employees involved in the fraudulent scheme: (a) originators or "mortgage bankers" (*see, e.g.,* Compl. ¶¶ 110, 111, 116, 132); (b) underwriters (*see, e.g., id.* ¶¶ 115-17, 132, 166); (c) Clint Bonkowski, Division VP for Underwriting (*id.* ¶¶ 118-19, 135, 155, 158, 164, 176, 178, 198); (d) Mike Lyon, Operations Director (*id.* ¶¶ 9, 11, 121, 123, 126.d, 146-47, 152, 175-76, 189); (e) Bobbi MacPherson, FHA Product Manager (*id.* ¶¶ 121, 176, 198); and (f) other executives (*see, e.g., id.* ¶¶ 120, 136,

171, 178, 188). The Complaint sets forth facts showing the motivations for that scheme, such as Quicken's desire for profits and its cavalier attitude towards the fact that the risk of poor loans would be borne by FHA and not the company. Compl. ¶¶ 156-65, 175-78. Thus, the Complaint gives Quicken comprehensive notice of the FCA claims it faces in this suit and satisfies not only the letter of Rules 8(a) and 9(b) but the spirit and purpose as well.

### B. Quicken's Arguments That More is Required to Plead a Fraudulent Scheme Are Unsupportable

Quicken contends that the Complaint states an overly broad fraudulent scheme and must be dissected into distinct schemes to be analyzed independently. Quicken's argument misconstrues Sixth Circuit law and distorts the United States' Complaint. It is clear from Quicken's own brief that the Complaint provides what the rules are designed to achieve, enough information to allow the defendant to respond to the allegations.

Quicken mischaracterizes the Government's claims as alleging a fraudulent scheme "to violate any and all FHA rules," which it contends is too broad under *Bledsoe*. Mot. at 7-10. In *Bledsoe*, a whistleblower or "relator" alleged a Medicare provider submitted fraudulent claims for payment using several distinct schemes, from upcoding claims for disposable equipment to misusing a doctor's billing number. 501 F.3d at 497-98. Notably, there is no indication that the relator alleged that the distinct schemes were undertaken by the same individuals in a company or

- 7 -

as part of an overarching company practice.  *Id.*  In considering relator's claims, the court held that inadequately pled claims could not survive Rule 9(b) because they were included with adequately pled claims, simply because the relator asserted them under the umbrella of the broadest of fraud schemes.  *Id.* at 509.

The core holding in *Bledsoe* is that when a complaint alleges distinct fraudulent schemes, all of the schemes cannot survive if only some are pled with particularity.  *Id.* at 509-11.  In light of this holding and the nature of the relator's claims, the *Bledsoe* court analyzed each distinct alleged fraudulent practice separately, finding some adequately pled where relator provided examples of the claims submitted and others inadequately pled when he did not.  *Id.* at 511-15.  Critically, the *Bledsoe* court also noted that "where a [plaintiff] pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a [plaintiff] may proceed to discovery on the entire fraudulent scheme." *Id.* at 510.

More recently, in *Prather*, the Sixth Circuit clarified that when a centralized scheme is pled with adequate supporting facts, specific examples of the claims submitted due to the fraud are not required under Rule 9(b).  *Prather*, 838 F.3d at 768-69.  In *Prather*, the relator alleged that her employer, a Medicare provider, engaged in a far-reaching scheme to submit Medicare claims that failed to comply with Medicare requirements in a variety of ways.  *Id.* at 758.  In so doing, however,

the relator failed to identify specific false claims submitted as a result of this fraud but pled facts leading to a strong inference that claims were submitted.  *Id.* at 768. The Sixth Circuit nonetheless allowed the relator's case to proceed because the relator "alleged significant detail regarding the fraudulent scheme," and provided "a detailed overview of the alleged fraudulent scheme[.]"  *Id.* at 768-69.

Contrary to Quicken's suggestions (Mot. at 8-9), the Sixth Circuit has not placed a blanket limit on how broad a scheme may be for FCA purposes.  Indeed, such a limit would contravene notice pleading for complex schemes.  Instead, *Bledsoe* and *Prather* require that the allegations include particular facts showing the existence of the scheme, which may, but need not, include representative examples of claims submitted as a result of the scheme.  *Bledsoe*, 501 F.3d at 510; *Prather*, 838 F.3d at 768.  The United States' 66-page Complaint more than meets these requirements.  The Government's claims arise from a well-pled central fraudulent scheme to underwrite and originate ineligible mortgages for FHA insurance, implemented by specifically-named senior leaders at Quicken, with various details regarding Quicken's knowledge of that scheme.  *See I.A. supra*.

*Lastly*, notwithstanding Quicken's attempt to distinguish them, the Government's pleadings in this case are similar to those in other cases alleging fraudulent FHA origination and underwriting that courts have found to have been properly pled. *Wells Fargo* and *Americus Mortgage* addressed substantially identical

claims that lenders knowingly violated such requirements in procuring FHA mortgage insurance. *Wells Fargo*, 972 F. Supp. 2d at 599; *Americus Mortg.*, 2014 WL 4274279, at *1. And, in both, the United States did allege multiple distinct fraud schemes. But one of those schemes is exactly the one scheme the United States alleges here. *See Americus Mortg.*, Jury Verdict (Ex. 1 at 4); *Wells Fargo*, Compl. at 44-45 (reckless underwriting) (Attached as Ex. 2).[2] The minor differences noted by Quicken in the particular factual circumstances of those cases merely indicate the different ways different companies carry out similar fraudulent schemes.

Thus, the United States' Complaint satisfies the pleading requirements of Rule 9(b) as it details Quicken's fraud with particularity.

## II.    THE GOVERNMENT HAS SUFFICIENTLY PLED QUICKEN'S SCIENTER AS TO EACH ASPECT OF ITS FRAUDULENT SCHEME

Quicken contends that because the United States' Complaint fails to adequately allege a fraudulent scheme, the Complaint must plead Quicken's scienter

---

[2] These cases are not alone in holding that claims alleging fraudulent schemes to violate HUD and FHA requirements are actionable under the FCA. *See, e.g.*, *United States v. TXL Mortg. Corp.*, Civ. A. No. 15-1658, 2016 WL 5108019, at *2 (D.D.C. Sept. 20, 2016) (allegations sufficient to state FCA claims based on violations of FHA origination and underwriting requirements); *United States v. Movtady*, 13 F. Supp. 3d 325, 330 (S.D.N.Y. 2014) (finding sufficient allegations of scheme to violate FHA origination and underwriting requirements); *United States v. Reunion Mortg., Inc.*, Civ. A. No. 13-2340, 2013 WL 5944252 (N.D. Cal. Nov. 5, 2013); *United States v. Luce*, Civ. A. No. 11-5158, 2012 WL 2359357 (N.D. Ill. June 20, 2012); *United States ex rel. Friddle v. Taylor Bean & Whitaker Mortg. Corp.*, 2012 WL 1066510 (N.D. Ga. March 27, 2012).

as to each facet of the alleged scheme to survive its motion to dismiss.  Mot. at 13-21.  Quicken's contention has no merit because, even were the Court to disassemble the allegations into unique parts, each part is fully and properly pled.

As an initial matter, Quicken fails to state that the Rules permit a plaintiff to allege a defendant's knowledge in general terms.  Fed. R. Civ. P. 9(b).  As such, the United States need only allege facts that give rise to a reasonable inference or plausible basis that Quicken acted with at least reckless disregard or deliberate ignorance -- the scienter required by the FCA.  *See Iqbal*, 556 U.S. at 686-87 (allegations of malice, intent, knowledge, and other conditions of a person's mind need only comply with Rule 8(a) standards); 31 U.S.C. § 3729(b)(1) (definition of "knowledge" in FCA).  Reckless disregard in this context is "an extension of gross negligence."  *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997).  The United States has met this standard.

### A.    The Complaint Alleges That Quicken Knew Its Value Appeals Process Violated Program Requirements

In arguing the United States failed to plead scienter as to value appeals, Quicken claims it had an objectively reasonable belief its conduct comported with FHA rules.  Mot. at 13-14.  This claim is contrary to the facts and premature.

*First,* and perhaps most importantly, the factual allegations before the Court show that Quicken believed its value appeal process was a violation of FHA rules.  The Complaint specifically cites emails from Quicken's executives acknowledging

that value appeals not only violated FHA requirements, but would result in mortgages that were "not insurable" by FHA. Compl. ¶¶ 135-36.

The cases cited by Quicken do not permit the Court to ignore these well-pled allegations in the Complaint, but merely stand for the proposition that if the factual record reveals (i) a defendant had a different understanding of its legal obligations at the time of the allegedly false representations; *and* (ii) that understanding was objectively reasonable as a matter of law, a defendant may lack the requisite scienter for a FCA violation. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("culpability is generally measured against the knowledge of the actor at the time of the challenged conduct"); *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 833 (W.D. Mich. 2000) (affirmed 24 F. App'x 491 (6th Cir. 2001)) (finding defendant's subjectively held alternative reasonable belief in absence of specific guidance from Government sufficient to defeat scienter); *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015). Based on the factual allegations pled by the Government, defendants cannot show that either the defendant had a different understanding of the legality of the value appeal process from the Government, or even if it did, that the defendant's contemporaneous interpretation of that requirement was reasonable. *See Halo*, 136 S. Ct. at 1933.

*Second*, Quicken's contention that FHA's guidance was somehow ambiguous is untenable. The Complaint details that the standards set forth in the Mortgagee Letters are not only requirements of the appraiser, but also requirements of the lender. Compl. ¶¶ 56-58. HUD regulations and handbooks specifically obligate an FHA-approved lender and its underwriters to "have the property appraised in accordance with [the] standards and requirements" prescribed by HUD, 24 C.F.R § 203.5(e)(1), and resolve any doubt by stating "[a] mortgagee and an appraiser must ensure that an appraisal and related documentation satisfy FHA appraisal requirements, and both bear responsibility for the quality of the appraisal in satisfying such requirements." 24 C.F.R. § 203.5(e)(3). Thus, there is no reasonable interpretation that would justify Quicken's use of its value appeals process.

Indeed, these exact same arguments by Quicken were rejected in *Alig v. Quicken Loans, Inc.*, Civ. A. No. 12-0114, Mem. Op. at 6-15, (N.D. W. Va. Aug. 25, 2016) (Attached as Ex. 3).[3] Specifically, on summary judgment, the court found there existed no genuine issue of material fact that Quicken's value appeal process violated a wealth of authorities including FHA guidance (*id.* at 6-11) and that Quicken used "target figures to undermine appraiser independence in an effort to

---

[3] *Alig* is a class action lawsuit, where the class was recently certified, accusing Quicken of defrauding borrowers in part through obtaining false appraisals. When *Alig* becomes final, Quicken will face collateral estoppel on this issue.

- 13 -

obtain inflated home values." *Id.* at 12. The *Alig* Court also cited a host of evidence establishing that the company did not actually hold a contrary reasonable interpretation as to propriety of its value appeals.

*Third, and lastly*, Quicken is incorrect in suggesting that its wrongful value appeal process cannot be actionable because appraisals are subjective in nature. Mot. at 15-16. Numerous courts have rejected the argument that subjective statements are immunized from liability. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,* 104 F. Supp. 3d 441, 572 (S.D.N.Y. 2015); *United States ex. rel. Fago v. M&T Mortg. Co.*, 518 F. Supp. 2d 108, 123-24 (D.D.C. 2007); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999).

To the contrary, subjective opinions are actionable if either (i) the speaker did not actually hold the belief expressed; or (ii) facts supporting the opinion were untrue. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326-27 (2015); *United States ex rel. Loughren v. Unum Grp.*, 613 F.3d 300, 311 (1st Cir. 2010) ("an opinion may be characterized as a false statement for purposes of the FCA if its maker knows facts which would preclude it") (citing *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000) (quotation omitted)).

More fundamentally, however, the Government is not challenging the appraisers' separate conclusions, but rather the process by which those conclusions were reached. The heart of the United States' allegation is that through its value appeals process, Quicken improperly influenced the appraisers' opinions, in violation of FHA requirements. Quicken is liable not because the appraisers made false statements, but because Quicken knowingly and falsely certified to HUD that the appraisals were performed and reviewed in conformity with HUD requirements. The corrupting influence of Quicken's improper value appeal process rendered Quicken's certifications regarding appraisals false and made the mortgages "not insurable," as Quicken's executives themselves noted. Compl. ¶ 136. Quicken cannot now hide behind the purported subjectivity of opinions they actively influenced and effectively undermined, in clear violation of FHA requirements.

**B.    The Complaint Alleges that Quicken Knowingly Manipulated Data Submitted to TOTAL**

Quicken often used an Automated Underwriting System ("AUS") that relied on FHA's TOTAL algorithm, which in turn relied on the data supplied by Quicken to make a credit determination. Compl. ¶¶ 62-68. Quicken contends that its manipulation of data supplied to TOTAL did not specifically violate FHA requirements and HUD did not define "red flags." Mot. 16-18. This argument lacks merit. Ignoring "red flags" is synonymous with deliberate ignorance and reckless disregard (the FCA's well-defined concepts of scienter), as Congress explicitly

- 15 -

recognized when it expanded the definition of knowledge in the 1986 FCA amendments.[4]  Similarly, "manipulating" data is plainly supportive of Quicken's scienter.  *Cf. Ernst & Ernst v. Hocfelder*, 425 U.S. 185, 199 (1976) (the term "manipulative" "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities"). FHA does not need to promulgate a regulation admonishing lenders not to act recklessly -- although it has[5] -- in order for these practices to be highly relevant to Quicken's knowledge under the FCA.

Further, the Complaint pleads in detail the requirements of TOTAL that Quicken violated despite its certifications to the contrary (Compl. ¶¶ 62-68), identifies the particular manner in which Quicken committed these violations (*id.* ¶¶

---

[4] *See* H. Rep. No. 99-660, at 21 (June 26, 1986) ("By adopting this definition of knowledge, the Committee intends not only to cover those individuals who file a claim with actual knowledge that the information is false, but also to confer liability upon those individuals who deliberately ignore or act in reckless disregard of the falsity of the information contained in the claim.  *It is intended that persons who ignore 'red flags' that the information may not be accurate or those persons who deliberately choose to remain ignorant of the process through which their company handles a claim should be held liable under the Act. This definition, therefore, enables the Government not only to effectively prosecute those persons who have actual knowledge, but also those who play 'ostrich.'"*) (emphasis added) (Attached as Ex. 4); *see also, e.g., United States v. Craig*, 178 F.3d 891, 898 (7th Cir. 1999) (evidence that defendant ignored "red flags" sufficient to find deliberate ignorance).

[5] Compl. ¶¶ 50-52; Final Rule, Mutual Insurance Programs Under the National Housing Act; Direct Endorsement Processing, 48 Fed. Reg. 11928, 11932 (Mar. 22, 1983) (FHA lenders must exercise "due diligence" in underwriting mortgages).

166-71), and provides examples of these violations (*id.* ¶¶ 173-74). Moreover, as discussed below, the United States alleged that Quicken hid these and other parts of its scheme when it failed to self-report violations it found during quality control reviews. The Court should reject Quicken's arguments on this front.

### C.    Quicken Knowingly Miscalculated Borrowers' Income

Quicken continues to ignore the Complaint's allegations by contending that the United States has failed to plead scienter as to income miscalculations. Mot. at 18-20. As alleged, Quicken systemically and knowingly overstated borrowers' income and used false or unsupported borrower income to approve and endorse FHA mortgages. Compl. ¶¶ 144-55. The United States cited management directives promoting these unlawful practices and specific incidents of management's involvement in them. *Id.* For example, the Complaint alleges that Quicken's management encouraged manipulating a borrower's income in order to secure FHA insurance. *Id.* ¶ 145. The Complaint also notes an occasion in which Operations Director Mike Lyon commented that an FHA mortgage had been underwritten with "bastard income," which he defined as "trying to put some kind of income together that is plausible to the investor even though we know its creation comes from something evil and horrible." *Id.* ¶ 146. The United States cited other specific examples of management's involvement in, or knowledge of, manipulating and miscalculating borrower income to obtain FHA approval (*id.* ¶¶ 147, 152-55), its

- 17 -

failure to address what was deemed Quicken's "recurring income calculation challenges" (*id.* ¶¶ 153-55), and a sample of mortgages where Quicken improperly calculated a borrower's income. *Id.* ¶¶ 148-50.

These allegations leave no room to infer that Quicken's miscalculations were merely the result of "bad math." Rather, they demonstrate that Quicken's management was fully aware of its pervasive miscalculation and manipulation of income, and chose not to fix the problem. *See City of Morristown v. AT&T Corp.*, --- F. Supp. 3d ---, 2016 WL 4530499, at *8 (E.D. Tenn. Aug. 29, 2016).

### D.   Quicken Knowingly Violated Program Rules Through its Management Exception Process

Quicken implemented a formal process, called management exceptions, by which line employees could request permission to disregard underwriting requirements, including FHA requirements. Quicken remarkably contends that the Complaint fails to give rise to a reasonable inference of scienter as to this process. Mot. at 20-21.  In so doing, Quicken again hypothesizes -- without any support -- that there might be a benign explanation for Quicken's fraud and that the United States has failed to allege that the underwriters involved had an intent to defraud. Quicken's arguments are deficient in multiple respects.

First and foremost, the FCA does not require proof of an intent to defraud. Indeed, the FCA expressly rejects any such requirement. 31 U.S.C. § 3729(b)(1). Second, Quicken's argument is based on the erroneous belief that the United States

is required to plead facts to rule out any possibility that the company had an innocent scienter. This is not the law. The United States is merely required to allege facts to support a conclusion that Quicken acted with the required scienter, and the United States has done so here. *See United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 263 (5th Cir. 2014) ("Rule 12(b)(6) does not require the United States to present its best case or even a particularly good case, only to state a plausible case.").[6]

As set forth in the Complaint, through its "management exception" process, Quicken purposefully disregarded FHA requirements in order to approve and endorse mortgages for FHA insurance. Compl. ¶¶ 110, 114-27. Quicken had a formal process, known to and approved by Quicken's management, including Operations Director, Mike Lyon; Divisional Vice President for Underwriting, Clint Bonkowski; and FHA Team Operations Director, Jeanine Taylor; through which it permitted Quicken underwriters to approve a mortgage for FHA insurance despite a clear recognition that the mortgage did not meet FHA requirements. *Id.* Even as it

---

[6] These holdings also conclusively reject Quicken's apparent contention that to hold it liable its employees must have known the truth of the allegedly false statements they made. "The FCA does not require the United States to show that [defendant] knew the correct figure" in the false statement. *Bollinger Shipyards*, 775 F.3d at 261. The FCA punishes not only purposeful fraud, but also ostrich like behavior, including where, as here, Quicken's senior management encouraged and systematically ignored red flags that its loans were ineligible for FHA mortgage insurance. *See United States v. Sci. App. Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("ostrich-like conduct" is actionable (citing S. Rep. No. 99-345, at 7 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5272)).

knowingly disregarded FHA requirements through its management exception process, Quicken certified that the mortgages met those very same requirements. Compl. ¶¶ 87-91 (Quicken certified to compliance with FHA requirements for each mortgage that it endorsed), 125-26 (representative examples of mortgages for which Quicken knowingly granted "management exceptions" to FHA requirements and nonetheless falsely certified to compliance with those requirements).

The Complaint also references a mortgage-by-mortgage analysis by Quicken of management exceptions granted for FHA mortgages in default. *Id.* ¶ 119. In that analysis, Quicken itself concluded that it had made "some really dumb decisions" in granting a number of the exceptions. *Id.* Quicken was therefore not only knowingly violating FHA requirements by granting management exceptions, but cognizant that its violations were leading to poor credit outcomes and, as a result, an increased risk of default and subsequent loss to HUD.

### E.    Quicken Misconstrues the Import of Its Violations of Quality Control and Incentive Compensation Requirements.

Quicken argues that the United States' allegations of deficient quality control practices and improper underwriter compensation practices do not support FCA liability. Mot. at 22-24. This argument misstates the United States' theory of liability. As discussed above, the United States alleged Quicken schemed to endorse ineligible mortgages for FHA insurance that violated material underwriting and origination requirements -- requirements to which Quicken falsely certified

- 20 -

compliance in its loan-level certifications.  The United States is not contending that mortgages that were properly underwritten are nonetheless false claims because Quicken was compensating its underwriters impermissibly or had a deficient quality control program.   Rather, as explained above, Quicken's corporate practices contribute to Quicken's reckless approach to FHA underwriting and are probative of its scienter to endorse ineligible mortgages for FHA insurance.

With regard to Quicken's failure to self-report materially deficient mortgages, it is the material deficiency in the *underwriting*, not the failure to self-report the mortgage, that the United States alleges renders the claim false.   Quicken's concealment of its defects demonstrates that it knew its mortgages were materially deficient and ineligible for FHA insurance.  Accordingly, the Court need not address Quicken's argument that underwriter compensation and quality control requirements are conditions of participation rather than payment because the United States is not alleging that any false claims independently arise from these practices.

## III.   QUICKEN'S FAILURES TO ABIDE BY ORIGINATION AND UNDERWRITING REQUIREMENTS WERE MATERIAL.

In claiming the United States has failed to plead the materiality of its knowing violations, Quicken misconstrues the holding in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), and attempts to engraft novel demands on the United States' obligations to plead, and ultimately prove, materiality.

- 21 -

**A.    *Escobar* Codified that Common Law Theories of Materiality Apply to the FCA**

The Supreme Court in *Escobar* outlined the standard applicable to claims under 31 U.S.C. § 3729(a)(1)(A) for whether a defendant's non-compliance with statutory, regulatory, or other requirements is material. *Escobar*, 136 S. Ct. at 2002-04. The Court reaffirmed that the "term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* at 2002 (citing *Neder v. United States*, 527 U.S. 1, 16 (1999), and *Kungys v. United States*, 485 U.S. 759, 770 (1988)). *Escobar* explained that "materiality 'looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id.* at 2002 (internal correction marks omitted) (quoting 26 R. Lord, WILLISTON ON CONTRACTS § 69:12 (4th ed. 2003)). In other words, the question is whether the defendant's misrepresentation would have been important to the Government's payment decision.

The Court noted that this question can be answered from either the perspective of a "reasonable" person or the particular defendant: "'a matter is material. . . (1) [if] a reasonable [person] would attach importance to [it] in determining his choice of action in the transaction'; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter 'in determining his choice of action,' even though a reasonable person would not." *Id.* at 2002-03 (citing RESTATEMENT (SECOND) OF TORTS § 538, at 80 (1976)).

In *Escobar*, the Supreme Court identified four central factors bearing on the materiality inquiry, including whether the requirement is labeled a condition of payment, *id.* at 2003, whether the violation goes to the "essence of the bargain," *id.* n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), whether the violation is significant or "minor or insubstantial," *id.* at 2003, and whether the Government took action in this or other cases when it had actual knowledge of the violations, *id.* at 2003-04. *See also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 109 (1st Cir. 2016) ("The language that the Supreme Court used in [*Escobar*] makes clear that courts are to conduct a holistic approach to determining materiality in connection with a payment decision, with no one factor being necessarily dispositive.").

Notably, although it emphasized materiality is a multi-faceted inquiry, the Court indicated materiality is plainly satisfied where the alleged false statement or claim induced the Government to take on an obligation or enter into a contract. *Id.* at 2003 (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943); *Junius*, 178 N.E. at 674). Moreover, as *Escobar* instructs, materiality is not determined by the specific label attached to the underlying violation, but rather on the capacity of the violation to affect the Government decision-maker. *Id.* at 2001-03.

**B.    The Government Clearly Alleged Sufficient Facts to Make Plausible the Materiality of Quicken's Violations.**

Under the relevant factors set forth in *Escobar*, the Government has more than satisfied its obligations to plead materiality.  The Complaint alleges not only that the false statements about compliance with FHA requirements were capable of influencing agency action, it alleges that FHA would not have endorsed the loans for FHA mortgage insurance had FHA known of their falsity.  Compl. ¶¶ 90-92. This is for a good reason; HUD uses these requirements to measure and confine the credit risks in insuring FHA mortgages.  *See* Compl. ¶¶ 15, 91 (". . . HUD does not review FHA loans for approval prior to the loan being endorsed for insurance or paying claims in the event of a default.  Instead, HUD relies on its lenders to comply with it requirements and to ensure that every loan is in fact eligible for FHA insurance.").  The HUD requirements that Quicken violated therefore go to the core of HUD's bargain with lenders: if, and only if, they loan to borrowers with acceptable credit risk, HUD will insure the mortgages to further FHA's goal of promoting mortgages for people who may not find conventional financing.  *Id.* ¶ 3.

Under the factors set forth in *Escobar*, the Complaint pleads materiality. *First*, as detailed in the Complaint, HUD made clear that it would not endorse the mortgage for insurance without truthful certifications.  *See* Compl. ¶ 91 (noting materiality of Quicken's certifications to HUD).  *Second*, and more importantly, as explained above, the requirements go to the essence of the bargain.  The Complaint

sets forth the material underwriting requirements at issue and explains the rationale for the requirements and why they are central to the FHA. *Id.* ¶¶ 35-97. "The entire scheme of FHA mortgage guaranties presupposes an honest mortgagee performing the initial credit investigation with due diligence and making the initial judgment to lend in good faith after due consideration of the facts found." *Id.* ¶ 50; *see also id.* ¶ 78 (HUD Handbook 4060.1, REV-2, ch. 7-4.D) (Attached as Ex. 6) (describing HUD's mandatory quality control program, under which a loan is a "material risk" if there is a "significant miscalculation of the insurable mortgage amount or the applicant[']s capability to repay, failure to underwrite an assumption, or protect abandoned property from damage, or fraud").

*Third*, Quicken's alleged violations as pled were widespread and systemic, not minor or insubstantial. For example, Quicken found that, on average, 61 percent of mortgages reviewed per month during the relevant time period contained what Quicken termed "unacceptable" or "major" underwriting defects. Compl. ¶ 190.

*Fourth*, and lastly, nothing in the pleadings would suggest that the Government's actions with respect to these or similar violations condoned them in any way. To the contrary, the Government is suing Quicken for these fraudulent claims and has likewise pursued other lenders who engaged in similar conduct.[7]

---

[7] When the Government became aware of similar violations by other FHA program participants, it took serious action. For instance, the United States has filed FCA

It is therefore not surprising then that every court to consider the issue has understood the materiality of the HUD requirements designed to ensure that FHA insurance is only granted on mortgages to creditworthy borrowers on properly valued properties.[8]  Notably, instructed on the *Escobar* standard, a jury in the Southern District of Texas recently returned a verdict in favor of the United States on claims nearly identical to those presented here -- that a lender violated the FCA by breaching origination and underwriting requirements in endorsing FHA loans. *See Americus Mortg.,* Civ. A. No. 12-2676 at R.435 (Verdict, Ex. 1), R.434 (Jury Instructions, Attached as Ex. 7).

---

suits alleging violations of FHA underwriting and origination requirements against Wells Fargo, Americus Mortgage, Guild Mortgage, and TXL Mortgage. Furthermore, in lieu of filing FCA complaints alleging similar underwriting or origination violations, the Government has entered into settlement agreements with numerous other FHA program participants.  *See, e.g., The False Claims Act & Federal Housing Administration Lending*, (March 15, 2016), https://www.justice.gov/opa/blog/false-claims-act-federal-housing-administration-lending, (last visited Jan. 19, 2017) (Attached as Ex. 5).

[8] *See, e.g., United States v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995) ("Spicer's misrepresentations were material to HUD's determination that the mortgage applicants met the financial requirements to qualify for FHA-insured mortgages and had a sufficient personal financial stake in the properties . . . ."); *Wells Fargo*, 972 F. Supp. 2d at 601, 625 (in FCA case, violations affecting "creditworthiness, collateral security or insurability of the loan" are sufficiently material); *Americus Mortg.*, 2014 WL 4274279, at *11 (finding materiality where "[t]he Complaint alleges that [defendant] submitted loan-level and annual certifications containing false statements. These certifications were requisite to the mortgages receiving FHA insurance . . . The Government alleges that absent these certifications, FHA would not have insured the loans, and HUD would not have paid claims on them[.]") (internal quotation and correction marks omitted).

- 26 -

**C.     The Government Has Alleged that Quicken Knew Its Fraudulent Scheme Was Material.**

The Complaint also details how Quicken and its officials knew that its origination and underwriting violations were material.  Indeed, the Complaint is rife with emails and statements that reveal in no uncertain terms Quicken's knowledge that HUD would not permit a loan to be endorsed for mortgage insurance had it known of them.  *See, e.g.* Compl. ¶¶ 121; 135-36; 146-47; 175-76.  These specific contemporaneous emails reflect active contemplation by upper level management that Quicken's violations were material -- as well as recognition of FHA's clear directives designed to limit credit risk to the United States.

In the face of the detailed facts showing (i) origination and underwriting requirements pertaining to creditworthiness and collateral are objectively material; and (ii) that Quicken's executives themselves subjectively understood the materiality of these requirements, Quicken advances an argument that misunderstands *Escobar*.  That is, Quicken incorrectly places dispositive weight on certain factors identified in *Escobar* while ignoring the sum total of the Government's allegations.

For example, Quicken suggests the United States must plead that "'the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement' at issue."  Mot. at 26 (quoting *Escobar*, 136 S. Ct. at 2003).  Quicken's cherry-picked quote, however, tellingly omits the preface to this passage

that commands "proof of materiality can include, but is not necessarily limited to" --
*i.e.*, the passage reflects just one method of establishing knowledge of materiality.
*Escobar*, 136 S. Ct. at 2003.  Immediately, preceding this passage the Court notes
that a false claim is material if "no one can say with reason that the plaintiff would
have signed this contract if informed of the likelihood of the undisclosed fact[.]"  *Id.*
(internal quotation marks omitted) (quoting *Junius Const.*, 178 N.E. at 674).
Consequently, the United States need not show that Quicken knew FHA would
request indemnification "in all instances where income was miscalculated," if it can
show that the company's personnel knew that no insurance contract would be created
in the first instance had FHA known that origination and underwriting requirements
regarding creditworthiness and collateral had not been followed, which the
Complaint plainly alleges with particularity.

## IV.   THE UNITED STATES PROPERLY PLED CAUSATION.

Quicken seeks dismissal of the Government's complaint on the ground that it
fails to sufficiently plead that Quicken's false claims caused HUD any losses.  Again,
Quicken's arguments fail for multiple reasons.

First, damages are not an element of liability and thus Quicken's argument
does not provide a basis to dismiss.  *See Fago*, 518 F. Supp. 2d at 122.  Second, a
defendant is liable for damages that arise because of the falsity of the claim.  *See
United States v. United Techs. Corp.*, 782 F.3d 718, 728 (6th Cir. 2015) (citing with

favor *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995)); *see also Spicer*, 57 F.3d at 1159.  Quicken attempts to expand this standard to require proof that a loan's default "did not actually result from a cause unrelated to the alleged misstatement."  But, contrary to Quicken's proposed new standard, courts in mortgage fraud cases routinely find proximate cause even if other factors also contributed to a loan's default so long as the borrower's default was a "foreseeable consequence" of the falsity.  *Spicer*, 57 F.3d at 1159; *see also United States v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008) (rejecting argument that intervening financial difficulties of borrowers broke the causal chain of defendant's underwriting violations).

This foreseeability requirement is met when the alleged violations are "material to HUD's determination that the mortgage applicants met the financial requirements to qualify for FHA-insured mortgages," material to the determination of whether the borrower "had a sufficient personal financial stake in the propert[y] to have the proper incentive to avoid default," or material to the collateral securing the loan.  *Spicer*, 57 F.3d at 1159.[9]

---

[9]   *See also United States v. Eghbal*, 548 F.3d 1281, 1284 (9th Cir. 2008) (causation satisfied where false statements bore on the "likelihood that the buyers would be unable to make their mortgage payments"); *United States v. 1st Nat'l Bank of Cicero*, 957 F.2d 1362, 1373-74 (7th Cir. 1992) (causation satisfied where United States would not have guaranteed a loan absent the false statement); *United States v. Miller*, 645 F.2d 473, 476 n.3 (5th Cir. 1981) (causation satisfied where

The violations the United States alleges here are all violations of requirements that speak to a borrower's creditworthiness, financial wherewithal, and stake in the property, or the property's value. The United States specifically alleged that Quicken did not properly verify employment or overstated income (Compl. ¶¶ 125-26, 149-50), improperly inflated the appraised value (*id.* ¶¶ 139-42), understated a borrower's debt burden (*id.* ¶¶ 150, 174), failed to verify assets (*id.* ¶ 173), and allowed borrowers to have a lesser stake in the property than allowed by FHA (*id.* ¶¶ 173-74).[10] Other courts have uniformly held that violations of the very same requirements, if proven, are sufficient to establish proximate cause as the requirements "are those meant to ensure that borrower are able to afford their homes," *Wells Fargo*, 972 F. Supp. 2d at 626, and are "the very regulations meant to ensure a borrower would not pose a serious risk of default." *Americus Mortg.*, 2014 WL 4274279, at *12.

---

Government alleged "false statements regarding the ability of the purchasers to afford housing"); *United States v. Hibbs*, 568 F.2d 347, 352 (3d Cir. 1977) (causation satisfied, "the false information furnished to the government bore upon the likelihood of the applicants meeting mortgage payments").

[10]   Quicken's argument that failing to obtain proof of immigration status does not go to the borrower's creditworthiness is wrong. Mot. at 28. If a borrower cannot legally reside or work in this country, it follows that the borrower is more likely to default on a mortgage secured by a purported primary residence in this country.

## V.   THE GOVERNMENT'S COMMON LAW CLAIMS ARE PROPERLY PLED AND ARE LEGALLY COGNIZABLE.

Finally, Quicken's arguments for dismissal of the United States' common law claims should also be rejected.  *First*, Quicken incorrectly argues that the United States failed to plead the existence of a fiduciary duty.  Indeed, the Complaint specifically alleges facts showing that the Quicken had a duty to act as a fiduciary in its role as the lender (*e.g.*, Compl. ¶¶ 38-41, 96-97).  *See Midwest Healthplan, Inc. v. Nat'l Med. Health Card Sys., Inc.*, 413 F. Supp. 2d 823, 833 (E.D. Mich. 2005) (recognizing "fiduciary relationships can arise in several different situations," and may exist "when one person or entity has a duty to act for another on matters falling within the scope of the relationship") (citations omitted).[11]  Courts have repeatedly recognized the fiduciary nature of this relationship.  *See In re O'Keefe*, 46 So. 3d 1240, 1242 (La. 2010) (noting a lender "had been entrusted with the fiduciary duty of being a direct endorsement lender."); *In re Samuel T. Issac & Assoc., Inc*., 1983 WL 13321 (H.U.D.B.C.A. Nov. 10, 1983) (mortgagee "act[ed] in a fiduciary capacity as to HUD[.]"); *United States v. Bernstein*, 533 F.2d 775, 797 (2d Cir. 1976) ("the entire scheme of FHA mortgage guaranties presupposes an honest

---

[11]     The United States' common law claims are governed by federal common law, which, when silent, looks to state common law unless there is a reason to believe it is inconsistent with federal interests.  *See United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999).

mortgagee").  And, Quicken itself recognizes that Quicken made the mortgages, underwrote them, certified to HUD that the underwriting met FHA requirements, and, made certifications to HUD.  *See* Mot. 4-5.  The mortgages were then insured based on Quicken's certifications without any review by HUD; the only review Quicken cites is after the mortgage is insured.  Compl. ¶ 4; Mot. at 30.

*Second*, Quicken is wrong that the existence of mortgage insurance contracts precludes the Government's common law claims.  *See generally Cayman Chem. Co. v. Libby*, Civ. A. No. 08-11069, 2008 WL 2858342, at *2 (E.D. Mich. July 22, 2008).  As set forth in the Complaint, Quicken's duty to HUD did not arise solely from a mortgage insurance contract, but from its obligation as a trusted business partner and fiduciary that HUD entrusted to directly endorse mortgages for insurance without any prior review by HUD.  Compl. ¶¶ 38-41, 96-97.

*Third*, Quicken incorrectly claims that indemnification under the FHA program precludes these alternative claims.  No such authority existed at the time Quicken endorsed the mortgages at issue here.  *See* 77 Fed. Reg. 3598, 3605 (Jan. 25, 2012) (denoting an effective date of February 24, 2012 for 24 C.F.R. § 203.255(g) *and compare with* Compl. ¶ 1.  In addition, Quicken cites no legal authority to require the United States to elect a programmatic administrative remedy rather than pursuit of a common law claim.  Notably, other courts have allowed

common law claims of the very sort advanced here. *Wells Fargo*, 972 F. Supp. 2d at 632-33.

## VI.   QUICKEN'S LIMITATIONS ARGUMENTS FAIL.

It is well settled that statute of limitations is an affirmative defense and a complaint does not need to negate the defense. *Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 774 (D.C. Cir. 1971). A complaint should only be dismissed if, on its face, it makes clear the claims are barred by the statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Here, the Complaint gives rise to no limitations defects.

The United States seeks relief solely for mortgages on which claims were made within six years of the filing date of this action -- *i.e.*, after April 23, 2009. This renders timely all of its FCA claims under 31 U.S.C. § 3731(b)(1). Likewise, breach of fiduciary duty, while not governed by the contracts for FHA insurance, derives from contract (and not tort) and is thus governed by 28 U.S.C. § 2415(a)'s six-year statute of limitations. *Reunion Mortg.*, 2013 WL 5944252, at *8; *cf. Albrecht v. Comm. On Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.,* 357 F.3d 62, 68 (D.D.C. 2004) (holding that fiduciary duties derived from contract). Therefore, the breach of fiduciary duty claim is timely so long as the facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances on April 23, 2009, as the United States has pled. Finally, the limitations period for all

actions under Section 2415 -- such as the United States' negligence claims --
excludes the period in which "facts material to the right of action are not known and
reasonably could not be known by an official of the United States charged with the
responsibility to act in the circumstances."  28 U.S.C. § 2416(c).  Section 2416(c)
extends, rather than tolls, the statute of limitations, and it is the defendant's burden
to prove the statute of limitations period has run.  *See United States v. Kensington
Hosp.*, Civ. A. No. 90-5430, 1993 WL 21446, at *5 (E.D. Pa. Jan. 14, 1993).  Thus,
because the Complaint does not establish, on its face, that an official of the United
States "charged with the responsibility to act in the circumstances" was aware or
could reasonably have known the facts underlying Quicken's scheme, the United
States' negligence claim extends beyond the three year statute of limitations
prescribed in section 2415 and is timely.

## **CONCLUSION**

For the reasons stated above, the Court should deny Quicken's Motion.

- 34 -

Dated:        January 19, 2017
              Washington, DC

                              Respectfully submitted,

BARBARA L. McQUADE            BENJAMIN C. MIZER
United States Attorney        Principal Deputy Assistant Attorney
                              General


                              By:_____/s/ John W. Black_____

PETER A. CAPLAN               MICHAEL D. GRANSTON
Assistant U.S. Attorney       SARA McLEAN
DANIEL HUGO FRUCHTER          SAMUEL J. BUFFONE
BRIAN P. HUDAK                CHRISTOPHER R. B. REIMER
Special Assistant U.S. Attorneys   JOHN W. BLACK
211 W. Fort St., Suite 2001   Attorneys, Commercial Litigation Branch
Detroit, MI 48226             P.O. Box 261, Ben Franklin Station
(313) 226-9784                Washington, DC 20044
Email: peter.caplan@usdoj.gov (202) 305-2479
                              Email: john.w.black@usdoj.gov

                              *Attorneys for the United States of America*

**<u>Local Rule Certification</u>**

I, John W. Black, certify that the United States' Response in Opposition to Quicken's Motion to Dismiss complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length pursuant to the Court's December 15, 2016 order. ECF No. 13.

*/s/ John W. Black*_____
John W. Black

## Certificate of Service

I hereby certify that on January 19, 2017, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009

Thomas M. Hefferon
William Kyle Tayman
Sabrina M. Rose-Smith
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001

John W. Black

*/s/ John W. Black*
John W. Black
Attorney, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 305-2479
Email: john.w.black@usdoj.gov