# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> QUICKEN LOANS INC., <br><br> Defendant. | Civil Action No. 2:16-cv-14050-MAG-RSW <br><br> District Judge:  Mark A. Goldsmith <br><br> Magistrate Judge:  R. Steven Whalen |

# DEFENDANT QUICKEN LOANS INC.'S REPLY MEMORANDUM
# IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRINCIPAL CONTROLLING AUTHORITIES ................................................... iv

I. THE BROAD SCHEME ALLEGATION IS BARRED BY BLEDSOE. ....... 2

II. THE SPECIFIC ALLEGATIONS FAIL TO PLEAD SCIENTER. ............... 4

    A. The Value Appeal Allegation Does Not Plead Scienter. ...................... 4

    B. The Other Allegations Do Not Plead Scienter. .................................... 6

III. THE COMPLAINT DOES NOT PLEAD MATERIALITY AS REQUIRED BY ESCOBAR. ................................................................................ 7

IV. THE COMPLAINT FAILS TO PLEAD CAUSATION. .............................. 9

V. THE OPPOSITION'S OTHER ARGUMENTS ARE MERITLESS. ............ 9

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alig v. Quicken Loans, Inc.*,
   No. 12-114, ECF No. 243 (N.D. W. Va. Aug. 25, 2016) ...................................... 5

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007) ................................................................ *passim*

*United States ex rel. Friddle v. Taylor, Bean & Whitaker Mortg. Corp.*,
   No. 06-3023, 2012 WL 1066510 (N.D. Ga. Mar. 27, 2012) ................................ 4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ........................................................................... 4

*United States ex rel. Hirt v. Walgreen Co.*,
   No. 16-6232, --- F.3d ---, 2017 WL 359661 (6th Cir. Jan. 25, 2017) ................... 3

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
   838 F.3d 750 (6th Cir. 2016) .................................................................. 3

*United States ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (D.C. Cir. 2015) ................................................................ 4

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ............................................................................... 4

*United States ex rel. Scharff v. Camelot Counseling*,
   No. 13-3791, 2016 WL 5416494 (S.D.N.Y. Sept. 28, 2016) ............................... 7

*United States ex rel. Schwedt v. Planning Research Corp.*,
   59 F.3d 196 (D.C. Cir. 1995) .................................................................. 9

*United States ex rel. Swafford v. Borgess Med. Ctr.*,
   98 F. Supp. 2d 822 (W.D. Mich. 2000) ..................................................... 5

*United States v. Americus Mortgage Corp.*,
   No. 12-2676 (S.D. Tex.) ........................................................................ 4

*United States v. Luce*,
  No. 11-5158, 2012 WL 2359357 (N.D. Ill. June 20, 2012) .................................4

*United States v. Movtady*,
  13 F. Supp. 3d 325 (S.D.N.Y. 2014) ...................................................................4

*United States v. N. Adult Daily Health Care Ctr.*,
  No. 13-4933, 2016 WL 4703653 (E.D.N.Y. Sept. 7, 2016)................................7

*United States v. Reunion Mortgage, Inc.*,
  No. 13-2340, 2013 WL 5944252 (N.D. Cal. Nov. 5, 2013)................................4

*United States v. TXL Mortgage Corp.*,
  No. 15-1658, 2016 WL 5108019 (D.D.C. Sept. 20, 2016) .................................4

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2013) ...............................................................10

*Universal Health Services Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016)..........................................................................1, 7, 8, 9

## **Statutes, Regulations, and Rules:**

12 U.S.C. § 1715z-21................................................................................................10

28 U.S.C. § 2416........................................................................................................1

Fed. R. Civ. P. 8 .........................................................................................................8

Fed. R. Civ. P. 9(b) .................................................................................................3, 8

## **Other Authorities:**

Complaint, *United States v. Movtady*, No. 13-2227, ECF No. 1
  (S.D.N.Y. filed Apr. 4, 2013) .............................................................................4

U.S. Memorandum of Law of the United States in Opposition to
  Wells Fargo Bank, N.A.'s Motion to Dismiss the First Amended
  Complaint, *United States v. Wells Fargo Bank, N.A.*, No. 12-
  07527, ECF No. 30 (S.D.N.Y. filed Feb. 13, 2013) ..........................................10

U.S. Dep't of Housing and Urban Development, Mortgagee Letter
  2005-36 (Sept. 23, 2005) ..................................................................................10

## PRINCIPAL CONTROLLING AUTHORITIES

1) *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007)

2) *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007)

3) *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)

The government's response to Quicken Loans' Motion to Dismiss regurgitates the mishmash of unrelated allegations and out-of-context email snippets from its Complaint but does not address the substance of the Motion. Under the law of the Sixth Circuit—not other circuits where the government brought other cases—a False Claims Act case cannot be maintained without specific example claims that *individually* satisfy all of the required elements and, even then, is limited in scope to the conduct at issue in those example claims. The Complaint and Opposition are fatally flawed because they ignore these principles from *Bledsoe*, choosing instead to argue in generalities about a supposed generalized scheme to make bad loans. The Opposition compounds these errors by contending that every breach of every HUD rule is material, even though the new *Escobar* decision expressly rejected that very theory, which would render materiality an empty test. Similarly, the Opposition wrongly tries to make the Act's causation requirement a dead letter too.

It is not surprising that the government is forced to resort to urging the Court to ignore *Bledsoe*, *Escobar*, and causation, because Quicken Loans is an exemplary partner with an outstanding record as the highest-quality and largest FHA lender. Despite a three-year investigation involving discovery rivaling the amount taken in an entire civil case, the government has nothing but a paltry list of disconnected complaints and a vain hope to make something out of nothing. The threadbare quality of the Complaint speaks volumes. It does not state a claim for relief under

the FCA or the common law, and it should be dismissed.

## I. THE BROAD SCHEME ALLEGATION IS BARRED BY *BLEDSOE*.

The Opposition argues (at 1) that the Complaint alleges scienter for a broad scheme to endorse loans that Quicken Loans "knew violated material FHA requirements." That argument fails for two reasons. ***First***, as the Motion showed (at 7-10), the Sixth Circuit held in *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007), that an FCA "scheme" is limited to the specific conduct in the example claims. *Bledsoe* expressly rejected the argument that "a court should first ask whether the [complaint] has set forth a 'fraudulent scheme'" and then if it contains "some examples of fraudulent conduct" within that scheme. *Id.* at 509. Instead, a court must first analyze the example claims "paragraph-by-paragraph" (*id.*); and if (but only if) they are valid, the complaint can then allege a "scheme" to make claims that match the example claims "in all material respects, including general time frame [and] substantive content" (*id.* at 511). *Bledsoe* thus forbids exactly the kind of generalized scheme allegation, and broad subsequent fishing expedition, that the government seeks to launch here.

The Government argues (at 8) that *Bledsoe* applies only where the complaint "alleges distinct fraudulent schemes." To the contrary, the complaint in *Bledsoe* alleged an overall scheme to submit invalid medical bills (501 F.3d at 497-98), which is precisely akin to alleged overall scheme here to submit invalid loans, and

the specific practices alleged in *Bledsoe* (*id*. at 501 n.9) were at least as related to one another as the various specific practices alleged here. The government also wrongly argues (at 9) that *Bledsoe* was narrowed by *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750 (6th Cir. 2016). As the Sixth Circuit just expressly held, *Prather* did *not* change the stringent Rule 9(b) standard set forth in *Bledsoe*. *United States ex rel. Hirt v. Walgreen Co.*, No. 16-6232, --- F.3d ---, 2017 WL 359661 (6th Cir. Jan. 25, 2017) (also emphasizing that "inferences and implications are not what Civil Rule 9(b) requires. It demands specifics"). Instead, *Prather* was based on the private plaintiff's lack of access to individual claims (*id*.; *see also* 838 F.3d at 768-69), which is not the situation here (Mot. at 10). Moreover, *Prather* was a case alleging a single wrongful practice (838 F.3d at 755), and thus had no occasion to address *Bledsoe*'s instructions to district courts for a case, like this one, alleging multiple practices.

*Second*, even if Sixth Circuit law permitted "scheme" allegations that are broader than the example claims, the Complaint fails to allege *facts* to plausibly establish a broad scheme to knowingly make and certify unqualified loans. The Complaint alleges seven different types of conduct, but it contains no *factual* allegations tying them together. Mot. at 10-11. To the contrary, the Complaint relies entirely on a combination of one-off emails about particular loans and emails that discuss efforts to *improve* loan quality. *Id*. The Complaint therefore fails to state a

3

claim for an overall scheme even apart from *Bledsoe*.[1]

## II. THE SPECIFIC ALLEGATIONS FAIL TO PLEAD SCIENTER.

### A. The Value Appeal Allegation Does Not Plead Scienter.

The government argues (at 11-12) that the Complaint alleges that Quicken Loans "believed its value appeal process" violated the rules. But the caselaw is clear that defendants cannot be held liable for "follow[ing] an interpretation that could reasonably have found support in the courts, *whatever their subjective intent may have been.*" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 & n.20 (2007) (emphasis added).[2] Moreover, for its two "representative examples," the Com-

---

[1] The other cases cited by the government were not decided under Sixth Circuit law and, in any event, did not involve the same allegations. *United States v. TXL Mortgage Corp.*, No. 15-1658, 2016 WL 5108019 (D.D.C. Sept. 20, 2016), was a *default judgment* and the complaint pled the FCA elements for each individual claim. *United States v. Reunion Mortgage, Inc.*, No. 13-2340, 2013 WL 5944252 (N.D. Cal. Nov. 5, 2013), and *United States ex rel. Friddle v. Taylor, Bean & Whitaker Mortgage Corp.*, No. 06-3023, 2012 WL 1066510 (N.D. Ga. Mar. 27, 2012), *granted* motions to dismiss. *United States v. Luce*, No. 11-5158, 2012 WL 2359357 (N.D. Ill. June 20, 2012), did not address similar issues. The general jury verdict in *United States v. Americus Mortgage Corp.*, No. 12-2676 (S.D. Tex.), involved a case of outright fraud by the principals (who were personally sued) and did not address similar issues. And in *United States v. Movtady*, 13 F. Supp. 3d 325 (S.D.N.Y. 2014), the lender allegedly failed to implement any "basic quality control" and used "fabricated" documents, resulting in a 75% default rate. Complaint, No. 13-2227, ECF No. 1 (S.D.N.Y. filed Apr. 4, 2013) (Ex. 1 hereto).

[2] The cases cited by the U.S. (at 12) do not hold otherwise. *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290 (D.C. Cir. 2015), expressly held that in an FCA case, "subjective intent—including bad faith—is *irrelevant* when a defendant seeks to defeat a finding of knowledge based on its reasonable interpretation of a regulatory term" (emphasis added). *See also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-33 & n.* (2016) (bad faith relevant under Patent Act because it is "an independent basis for enhancing patent damages" under that Act);

4

plaint alleges no facts showing a belief that the value appeals were unlawful.[3]

The government (Opp. at 13) fails to rebut Quicken Loans' detailed showing (Mot. at 14-15) that value appeals were at least arguably permissible before HUD expressly prohibited them in 2010. The government ignores (and thus concedes) the dispositive point that the rules affirmatively let underwriters seek reconsideration of value opinions. Mot. at 14-15. The 1996 Mortgagee Letter only prohibited appraisals "based on" a requested value, and the Complaint does not allege that any appraisals were so based. Mot. at 14-15 & Mot. Ex. 3. Finally, the unpublished order from *Alig* (Opp. at 13-14) adds nothing, as it involved state law and addressed the different claim that appraisers were told *in advance* what the borrower believed the property was worth, not value appeals. *Alig v. Quicken Loans, Inc.*, No. 12-114, ECF No. 243 at 1-2, 7 (N.D. W. Va. Aug. 25, 2016).

The value appeal allegation *also* fails because appraisals are subjective. The Opposition argues (at 15) that what was false was the "process" rather than the "appraisers' . . . conclusions," but the Complaint's allegation is that value appeals led to "inflated and unsupported appraised values." Compl. ¶¶ 131-34, 137-42. *That* allegation, which lacks any supporting allegation that the appraisers did not

---

*United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-33 (W.D. Mich. 2000) (regulations were "the only appropriate standard" to judge conduct), *aff'd*, 24 F. App'x 491 (6th Cir. 2001).

[3] The first cited email did not suggest that value appeals violated FHA rules in 2007, and the second did not even involve value appeals. Compl. ¶¶ 135-36.

5

believe their opinions, cannot support a false claims theory. Mot at 15-16.

### B. The Other Allegations Do Not Plead Scienter.

The Government likewise fails to defend its other allegations "paragraph-by-paragraph," as *Bledsoe* requires. As to the supposed "red flags" on loans approved by TOTAL, the government ignores (and thus concedes) Quicken Loans' dispositive showing that the rules expressly authorized a lender to rely solely on TOTAL, which after all was the *government's* own algorithm. Mot. at 17. The government also admits (at 15-16) that no rule even mentioned red flags, much less prohibited lenders from ignoring them—which would be required for an FCA claim that Quicken Loans falsely certified compliance with such a rule. Mot. at 17 n.10.[4] As to alleged income miscalculations, the Opposition simply ignores the Motion's "paragraph-by-paragraph" showing that (1) the Complaint does not even allege, much less with facts, that the underwriters in the two example claims made anything other than inadvertent errors, and (2) the emails cited in the Complaint had nothing to do with these loans. Mot. at 18-19. And as to "management exceptions," the Opposition (at 18-20) fails to even respond to, much less refute, the Motion's detailed showing that the Complaint alleges no facts to establish scienter as to the two specific "example" loans (Mot. at 20-21). The Opposition instead

---

[4] The Opposition's assertion (at 15) that "[i]gnoring 'red flags' is synonymous with deliberate ignorance and reckless disregard" cannot retroactively create a new rule and, in any event, would provide no notice as to what conduct is required.

6

simply rehashes the Complaint's allegations at a high level of generality, which is precisely what *Bledsoe* forbids.  *See* 501 F.3d at 509-10.[5]

### III. THE COMPLAINT DOES NOT PLEAD MATERIALITY AS REQUIRED BY *ESCOBAR*.

Even though its position was *rejected* by the Supreme Court in *Universal Health Services Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), the government argues (at 21-23) that the Court "reaffirmed" the lenient "capable of influencing" test.  Not so.  *Escobar* held that a violation is *not* material "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."  136 S. Ct. at 2003.  Instead, under this "demanding" and "rigorous" requirement, the question is whether the allegedly-violated requirements "are so central . . . that the [government] would not have paid these claims had it known of these violations."  *Id*. at 2004.[6]

The government's arguments to satisfy the new *Escobar* test are unavailing.  In the main, those arguments amount to an impermissible attempt to wish *Escobar* away:  the government asserts that HUD "would not endorse the mortgage for

---

[5] As for the allegations about quality control and compensation, the Opposition admits (at 20-21) that they cannot be the basis for finding any claim to be false.

[6] Thus, *Escobar* clearly "abrogated" prior caselaw.  *United States ex rel. Scharff v. Camelot Counseling*, No. 13-3791, 2016 WL 5416494, at *8 n.2 (S.D.N.Y. Sept. 28, 2016); *see also, e.g.*, *United States v. N. Adult Daily Health Care Ctr.*, No. 13-4933, 2016 WL 4703653, at *11-12 (E.D.N.Y. Sept. 7, 2016) (dismissing complaint because it did not "allege . . . that the government would have refused reimbursement had it known of [defendant's] noncompliance").

insurance without truthful certifications," that all the statements were material because the certification was a condition for HUD to "enter into a contract," and that all underwriting requirements are "central to the FHA." Opp. at 23-25. These are exactly the kind of broad eligibility arguments foreclosed by *Escobar*. The government also argues (at 25) that the alleged violations were "widespread." But that assertion is irrelevant (as well as false): under *Bledsoe*, the only relevant question is whether the specific alleged misstatement concerning *each* of the 10 example loans was material. Finally, the Opposition argues (at 25) that the Complaint is sufficient because "nothing in the pleadings would suggest that the Government's actions with respect to these or similar violations condoned them in any way." But the government had the burden, under Rules 8 and 9(b), of affirmatively "pleading facts to support allegations of materiality." *Escobar*, 136 S. Ct. at 2004 n.6. The Complaint fails to do so.[7]

The Motion to Dismiss showed (at 26) that the Complaint *also* fails because it does not allege facts to show that Quicken Loans knew the government would view each alleged violation as material. The Opposition contends (at 27-28) that the Complaint contains emails suggesting that Quicken Loans knew "that HUD would not permit a loan to be endorsed" had it known of the issues. Again, how-

---

[7] The government's argument (at 25-26) that it "has likewise pursued other lenders who engaged in similar conduct" is irrelevant. That the government has pursued a political agenda to sue large lenders under the FCA does not even begin to establish that FHA would have refused to pay the 10 example claims in the Complaint.

ever, the *Escobar* test for materiality does not look at requirements for *eligibility* (here, loan endorsement), but whether the government would have refused *to pay the claim* had it known of the specific alleged issue. Mot. at 26-27; *Escobar*, 136 S. Ct. at 1996. The Complaint contains no factual allegations that Quicken Loans knew the government would not pay (*i.e.*, would demand indemnification for) the 10 example claims if it was aware of the specific alleged issues with those loans.

## IV. THE COMPLAINT FAILS TO PLEAD CAUSATION.

The Opposition fails to distinguish the cases holding that an FCA complaint must allege facts to show that the actual cause of the loss was related to the supposed false statement. Mot. at 29. Indeed, the leading case it cites (at 28-29) *agrees* that proximate cause exists only if the government's loss would not have occurred if the defendant's statement "had been true." *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995). The Opposition does not, and cannot, deny that the Complaint fails to allege that the example loans would not have defaulted if the supposedly-inaccurate statements in the certifications had been "true." Mot. at 29.

## V. THE OPPOSITION'S OTHER ARGUMENTS ARE MERITLESS.

The government's contentions as to its flawed common law claims and the lapsed statutes of limitations are already amply refuted in the Motion (at 30-34). Indeed, those contentions only underscore how weak the government's positions are. For example, the government tries to evade one defect in its common law

9

claims by asserting (at 32) that HUD's indemnification authority is a recent development, but HUD got that authority in 1996 and has used it since 2005. 12 U.S.C. § 1715z-21; Mortgagee Letter 2005-36 (Sept. 23, 2005) (Ex. 2 hereto). Likewise, the government's argument for a six-year limitation period for its fiduciary duty claim (Opp. at 34) is not just plainly wrong but also contrary to its admission in *Wells Fargo*,[8] as is its argument that 28 U.S.C. § 2416(c) is not a tolling provision.[9]

## CONCLUSION

The Court should dismiss the Complaint in its entirety with prejudice.

Dated: January 26, 2017

Respectfully submitted,

QUICKEN LOANS INC.

By its attorneys,

/s/ Jeffrey B. Moganroth
Jeffrey B. Morganroth
**MORGANROTH &**
**MORGANROTH, PLLC**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
Tel.: 248.864.4000
Fax: 248.864.4001
jmorganroth@morganrothlaw.com
P41670

Thomas M. Hefferon
Sabrina M. Rose-Smith
W. Kyle Tayman
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel.: 202.346.4000
Fax: 202.346.4444
thefferon@goodwinlaw.com
srose-smith@goodwinlaw.com
ktayman@goodwinlaw.com

---

[8] *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 614 (S.D.N.Y. 2013); *Wells Fargo*, No. 12-07527, ECF No. 30 at 64-65 n.34 (S.D.N.Y. filed Feb. 13, 2013) (Ex. 3 hereto).

[9] Ex. 3 hereto at 64-65 n.34; *Wells Fargo*, 972 F. Supp. 2d at 607-08.

10

## **LOCAL RULE CERTIFICATION**

  I, Jeffrey B. Morganroth, certify that Quicken Loans' Motion to Dismiss complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length pursuant to the Court's December 15, 2016 order. ECF No. 13.

            /s/ Jeffrey B. Morganroth
            Jeffrey B. Morganroth

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2017, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

/s/ Jeffrey B. Morganroth
Jeffrey B. Morganroth
