UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. |
|  | ) | 2:16-cv-14050 (MAG) (RSW) |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | District Judge: |
|  | ) | Hon. Mark A. Goldsmith |
| QUICKEN LOANS INC., | ) |  |
|  | ) | Magistrate Judge: |
| Defendant. | ) | Hon. R. Steven Whalen |
|  | ) |  |

## JOINT CIVIL RULE 26(F) REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rules"), and the Court's Order of December 22, 2016 ("Order"), counsel for Plaintiff the United States of America ("United States" or "Government") and Defendant Quicken Loans, Inc. ("Quicken Loans") met and conferred telephonically on January 31, 2017, and had email conversations thereafter, to discuss the matters required by the Rules and the Order and other topics relevant to establishing a proposed schedule and discovery plan in this action.

The parties respectfully submit this joint report to inform the Court that they have agreed in substance on certain matters and recommend that the Court incorporate those agreements in appropriate orders.  As required, the joint report

also outlines the parties' respective positions as to their claims, defenses, and discovery expectations.

## STANDING ORDER MATTERS

1.   Summary of the Case:

United States' Claims:  As more fully described in its Complaint, the United States brings this action against Quicken Loans pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"), and under common law theories of liability, seeking damages, treble damages, and civil penalties as provided by law.  The United States generally alleges that Quicken Loans knowingly submitted, or caused to be submitted, false claims and made false statements to the Federal Housing Administration ("FHA"), a component of the U.S. Department of Housing and Urban Development ("HUD"), in connection with originating and underwriting loans under FHA's mortgage insurance program.

Quicken Loans' Defenses: Quicken Loans intends to defend the False Claims Act and common law claims by proving as a matter of law and of fact that Quicken Loans engaged in proper underwriting practices, complied with program and contractual requirements, and did not make either false statements or false claims.  Moreover, as shown in Quicken Loans' pending Motion to Dismiss, the Government's allegations that Quicken Loans acted improperly are not legally viable and are not credible: not only is Quicken Loans the FHA lender with highest

quality ratings (using the agency's own measure), FHA continues to work so closely with Quicken Loans that the company is FHA's largest lender partner, accounting for 6% of all new FHA loans nationwide.

If the case proceeds after resolution of the pending Motion to Dismiss, Quicken Loans will also raise a number of affirmative matters in defense. Quicken Loans intends to argue that the factual and legal issues that formed the basis for its previously-filed case in this Court, *Quicken Loans Inc. v. United States*, 2:15-cv-11408-MAG-RSW (E.D. Mich.), are grounds for judgment in its favor and to defeat some or all of the Government's suit, as this Court recognized (in dismissing that case) Quicken Loans is permitted to do. Quicken Loans also intends to demonstrate that as an insurance company that agreed to provide coverage for default, HUD may not attempt to shift its losses upon its insured, Quicken Loans. Quicken Loans further reserves the right to assert counterclaims or to seek relief in its favor, such as attorneys' fees, as may be appropriate.

2. <u>Subject Matter Jurisdiction:</u> As stated in paragraph 16 of the Complaint, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732.

3. <u>Relationship to Other Cases:</u> There are no currently pending companion cases under Local Rule 83.11(b)(7). This action was related to *Quicken Loans Inc. v. United States*, No. 2:15-cv-11408-MAG-RSW (E.D. Mich.),

but that case has been dismissed and the parties stipulated to a voluntary dismissal of the appeal that followed (Appeal No. 16-1250 (6th Cir.)).

4.    Joinder and Amendments of Pleadings:  The United States does not anticipate filing an amended complaint or seeking to join other parties to this action at this time.  Quicken Loans has not filed its initial pleading yet because its Motion to Dismiss is pending.  All parties reserve their respective rights to seek leave of Court under Rule 15 to file amended pleadings for good cause.

5.    Anticipated Discovery Disputes and Discovery Progress:

United States' Statement:  The parties undertook certain discovery for nine months while the case was pending in the U.S. District Court for the District of Columbia.  Each party served and responded to several requests for the production of documents and the United States responded to Quicken Loans' first set of interrogatories.  Additionally, the United States deposed one individual in Quicken Loans' information technology department, however Quicken Loans refused to permit the United States to depose any other fact witness.  The parties' respective requests for the production of documents included requests seeking the production of certain loan files, a sampling of which the United States intends to use to mathematically extrapolate conclusions to a broader universe of mortgages Quicken Loans' endorsed for FHA insurance on which FHA ultimately paid an insurance claim.

Before this action was transferred to this Court, the United States alerted Judge Walton to two categories of documents responsive to the United States' requests that Quicken Loans refused in whole or in part to produce, namely (1) documents related to mortgage bankers, a specific position at Quicken Loans responsible for large portions of the company's loan origination activities; and (2) documents related to Quicken Loans' profit on FHA insured mortgages.  Under Judge Walton's procedure for discovery disputes, the parties each submitted to (but did not file with) the Court a written summary of the disputes.  Thereafter, the Court heard arguments from the parties telephonically.  The Court subsequently issued a minute order addressing the parties' dispute.  D.D.C. Dkt. 46.  Despite opposing the United States' requests for them, Quicken Loans has claimed that it does not have any additional documents responsive to the mortgage banker portion of Judge Walton's order and failed to provide a proposal for producing documents related to profit.

Quicken Loans has frustrated the United States' attempt to obtain documents necessary to support its allegations and has sought unduly burdensome discovery on the United States.  Quicken Loans' inappropriate discovery conduct falls into six general categories: (1) attempting to impose an undue burden on the United States in discovery far exceeding the "limited discovery on matters beyond the

core liability issues in this FCA case,"[1] that Quicken Loans repeatedly represented in court filings was all it would seek; (2) refusing to agree to common Attorney's Eyes Only protections for certain sensitive documents regarding Quicken Loans' business competitors and the methods used by regulators to identify potential violations; (3) refusing to provide documents related to positions other than underwriters, which are integral in shepherding a loan to approval; (4) refusing to provide important information regarding compensation and discipline of underwriters; (5) refusing to provide full data related to the specific loan files requested by the United States; and (6) refusing to allow the inspection of key information systems used by Quicken Loans in its FHA lending activities. The parties appear to have reached an impasse on these issues and the United States intends to seek judicial intervention. The United States is also ready, willing, and able to provide further details in writing regarding these disputes in advance of the Court's scheduling conference should the Court wish to receive additional information.

These disputes all relate to basic information the United States needs to prove its case or unduly burdensome discovery Quicken Loans seeks to impose on the United States. As such, the United States requests the Court resolve these

---

[1] Reply Memorandum (D.D.C. R. 33) (Reply) in Support of Quicken Loans' Renewed Motion to Transfer This Action to the United States District Court For the Eastern District of Michigan (2d Transfer Mot.) at 12.

disputes before discovery restarts.  If the Court would prefer to decide the motion to dismiss before addressing any discovery dispute, the United States does not object to a stay of discovery while the motion to dismiss is pending.

The United States is also awaiting proposals from Quicken Loans for other discovery that it has thus far refused to provide.  Quicken Loans refused to discuss these discovery issues at the 26(f) conference and so it is unclear if the parties are yet at an impasse.  The United States will promptly raise any additional discovery issues with the Court if and when it is clear the parties are at an impasse.

Quicken Loans' Statement:  During the course of this litigation, Quicken Loans has produced 146,053 documents, in response to 153 requests for production, and one of its employees has been deposed.  During the course of the Government's pre-suit investigation, Quicken Loans already had produced to the Government over 85,000 additional documents, and eight Quicken Loans' employees were deposed.  The Government has produced 20,846 documents, in response to 158 requests for production, and no HUD employee has yet been deposed.  The parties have held fourteen discovery conferences (nearly thirty hours in total), seven of which pertained to the Government's discovery requests and seven of which pertained to Quicken Loans' discovery requests.  No expert discovery has yet occurred.

Prior to this case being transferred, the Government previously raised three discovery disputes relating to its requests for documents from Quicken Loans to the Court in D.C., which was resolved in an October 24, 2016 Order (D.D.C. Dkt. No. 46) that narrowed the scope of each request and denied the government's request to take depositions of Quicken Loans' employees while Quicken Loans' motion to dismiss was pending.

At present, and if the case were to continue after resolution of Quicken Loans' Motion to Dismiss, the parties have reached an impasse on several discovery issues and have been discussing several others, which may require the Court's assistance in resolving in the event that this case is not dismissed. While the government identifies some of those discovery disputes between the parties, its descriptions are inaccurate. The government also omits many other disputes – especially those areas where the government has refused to provide discovery relevant to the "core liability issues"[2] such as *all* evidence of HUD's interpretation and application of the underwriting requirements at issue, including as those interpretations have been reached and articulated when they arose in connection

---

[2]    The government's suggestion that Quicken Loans is seeking discovery inconsistent with representations Quicken Loans made in seeking to obtain a transfer of venue is inaccurate, as the facts sought all bear on what this case is about – falsity, scienter, causation, materiality and damages – and so are about "core liability issues." The Court will not be surprised to hear that the government, seeking to defeat a venue transfer, suggested that substantial discovery of HUD officials in Washington would be necessary.

with loans made by other FHA lenders.  Quicken Loans does not discuss any of those disputes here as the parties have committed to further discussions in the meet and confer process on those very issues and, to the extent there is an impasse, those disputes will need to be briefed.  Thus, Quicken Loans disagrees that, at this time, each of those issues will require the need for Court intervention, and disagrees that resolution of those disputes is proper before the pending Motion to Dismiss is resolved.  Quicken Loans does clarify for the Court that the dispute the government identifies around an Attorney's Eyes Only designation concerns only the government's position that it is entitled to withhold thousands of documents it has identified as non-privileged and responsive to Quicken Loans' document requests.

6.     Phasing of Discovery During the Pendency of the Motion to Dismiss:

United States' Statement: The parties agreed to stay of discovery when the case was transferred to this court.  As stated above, the United States' discovery efforts have been stymied by Quicken Loans' refusal to produce certain key categories of documents.   The United States believes these documents are necessary for efficient discovery and therefore requests the Court resolve these discovery disputes.  To the extent the Court prefers to decide the motion to dismiss prior to addressing any discovery dispute, the United States does not object to a stay of discovery while Quicken Loans' dispositive motion is pending.   When

discovery resumes, the United States believes it is important that it is full discovery without the arbitrary limitations Quicken Loans has sought to impose, such as the refusal to allow depositions and the refusal to provide documents related to appraisals.[3]

Quicken Loans' Statement: At present and since the transfer of this case to this Court, discovery in the matter has been stayed.  In addition, pursuant to the parties' prior agreement memorialized in a Joint Rule 16.3 Report filed on February 26, 2016 with the Court in Washington, all discovery on matters relating to appraisals had been temporarily stayed pending resolution of Quicken Loans' prior motion to dismiss in this case.  Because that prior motion was never resolved, discovery has not proceeded on appraisals.   Furthermore, the D.C. Court's discovery order denied the government's attempt to take depositions while the motion to dismiss was pending.  Therefore, consistent with the current stay of discovery between the parties, and consistent with the parties' and the D.C. Court's prior recognition that certain discovery matters were not ripe until after a decision on the prior motion to dismiss, it is Quicken Loans' position that all discovery should continue to be stayed until the Court resolves the pending Motion to

---

[3] While the United States did agree to Quicken Loans prior request to stay discovery related to appraisals, that agreement included Quicken Loans' agreement to provide appraisal related discovery starting October 1, 2016 if Quicken Loans' motion to dismiss was not decided.   Quicken Loans did not abide by that agreement.

Dismiss.   Quicken Loans has drafted its proposed schedule consistent with this position.

## **JOINT DISCOVERY PLAN**

7.   Proposed Discovery Schedule:  The parties were unable to reach a mutual agreement on a proposed schedule to govern discovery and other pre-trial matters in this action.  The parties set forth competing proposals and look forward to discussing those proposals with the Court.

United States' Position:

The United States' proposed schedule is as follows:

| EVENT | DEADLINE |
|---|---|
| Lay Witness List | Six weeks before close of fact discovery |
| Exhibit List | 12 weeks before the final pretrial conference |
| Expert Witness List and Disclosure under Fed. R. Civ. P. 26(a)(2) | 1 month after close of fact discovery |
| Rebuttal Expert Witness List and Disclosure under Fed. R. Civ. P. 26(a)(2) | 3 months after close of fact discovery |
| Discovery – Fact | Nine months after issuance of scheduling order |
| Discovery – Expert | 4 months after close of fact discovery |
| Early Settlement Conference (before magistrate judge)[4] | Between close of expert discovery and dispositive motions |

---

[4] The United States also seeks relief from the Court's standing Case Management and Scheduling Order that requires attendance at settlement conferences by someone with "full and final settlement authority."  That individual is the Assistant Attorney General for the Civil Division of the U.S. Department of Justice or a

| Dispositive Motions & Motions to Limit/Exclude Expert Testimony | 1 month after close of expert discovery |
|---|---|
| All Other Motions, Including Motions in Limine | Six weeks before final pretrial conference |
| Settlement Conference (before district judge) | Four months after the dispositive motion cutoff date |
| Joint Final Pretrial Order | One week after settlement conference |
| Final Pretrial Conference | Two weeks after pretrial order due |
| Trial | Monday two weeks following the pretrial conference |

<u>Quicken Loans' Position</u>:  Quicken Loans' proposed schedule is as follows:

a.    The United States served on Quicken Loans on March 11, 2016, the list of loans the Government intends to use in conducting sampling and extrapolation analyses absent good cause based on changed circumstances in this action.[5]

---

higher ranking official.  The United States respectfully requests that the Court permit trial attorneys to attend with their supervisors readily available by telephone.  *See United States v. United States Dist. Court for Northern Mariana Islands*, 694 F.3d 1501, 1509 (9th Cir. 2012).  Quicken Loans believes that the Courts' Order should not be modified, and pledges that it would work with the government to accommodate the schedule of the relevant official.

[5] Milestones a. and b. already occurred, when the case was in the D.C. Court. Quicken Loans proposes that they be included in this Court's schedule so that compliance with those milestones becomes part of a formal order.  The United States disagrees with Quicken Loans' phrasing of these milestones.  In particular, Milestone a. incorrectly describes the listing the United States provided to Quicken Loans on March 11, 2016.  As agreed, the listing "comprises the potential universe of loans that the Government presently intends to use in conducting sampling and extrapolation analyses absent good cause based on changed circumstances in this action (e.g., a material change in the scope of the claims in this action through resolution of Quicken Loans' motion to dismiss or otherwise)."  D.D.C. Dkt. 27.

b.　　Quicken Loans produced, on or before April 15, 2016, the contents of those loan files, and to produce, on or before July 15, 2016, other materials concerning those loans, including emails, audio recordings, and other electronically-stored information.

c.　　Discovery shall remain stayed until the later of (a) the Court's resolution of Quicken Loans' motion to dismiss, or (b) on May 15, 2017, which is ninety (90) days after the February 13, 2017 Scheduling Conference.

d.　　The United States, on or before June 16, 2017, shall produce one or more witnesses to sit for a single, one day (7 hour) deposition under Fed. R. Civ. P.30(b)(6) conducted by Quicken Loans in accordance with Paragraph 17, for the purpose of enabling Quicken Loans to formulate its ESI custodian and search term proposal.

e.　　The United States, on or before June 16, 2017, shall disclose, either through expert witness disclosures or in response to Interrogatory No. 3 of Quicken Loans' First Set of Interrogatories (July 15, 2016), the methodology it employed in selecting the loans it identified on March 11, 2016, under paragraph (a) of this Scheduling Order;

---

For the reasons stated above the United States also disagrees milestone b has occurred.

f.      The United States, on or before July 19, 2017, shall serve on Quicken Loans affirmative expert witness disclosures that are in compliance with Rule 26(a)(2), as to any expert opinions to be offered relative to sampling of loans at issue in this matter or relative to the compliance of any sample of loans with relevant standards for FHA insurance;

g.      The parties, on or before August 11, 2017, shall exchange proposed search terms and ESI custodians in accordance with Paragraph 17.

h.      The parties, on or before September 11, 2017, shall, in accordance with Paragraph 17, file with the Court any disputes as to the exchange of search terms and ESI custodians.

i.      Quicken Loans, on or before December 15, 2017, shall serve on the United States rebuttal expert witness disclosures that are in compliance with Rule 26(a)(2), as to any experts disclosed under paragraphs (e) and (f) of this Scheduling Order;

j.      The parties, on or before June 15, 2018, shall complete their production of documents, except for such production as may later be ordered or as agreed by the parties.

k.      The parties, on or before June 15, 2018, shall serve all other affirmative expert witness disclosures that are in compliance with Rule 26(a)(2);

l.      The parties, on or before July 18, 2018, shall serve all other rebuttal expert witness disclosures, in compliance with Rule 26(a)(2);

m.      The parties, on or before August 20, 2018, shall submit any reply expert witness disclosures in response to any rebuttal expert witness disclosures, in compliance with Rule 26(a)(2);

n.      All expert and fact discovery shall close on September 14, 2018;

o.      The early settlement conference shall take place on September 28, 2018;

p.      The deadline for dispositive motions and *Daubert* motions to limit or exclude expert testimony is October 13, 2018;

q.      The deadline for the parties to submit all other motions, including motions in limine, is January 19, 2018;

r.      The parties, on or before February 9, 2018, shall submit their lay witness list, in compliance with the Standing Orders;

s.      The parties, on or before February 9, 2018, shall submit their exhibit list, in compliance with the Standing Orders;

t.      The settlement conference shall take place on February 15, 2019;

u.      The joint final pretrial order shall be submitted to the Court on March 2, 2019;

v.     The final pretrial conference shall take place on March 16, 2019, at 1:30 p.m.;

w.     Trial shall commence on April 11, 2019 at 8:30 a.m.;

x.     The parties estimate a length of trial of eight to ten weeks.

8.     <u>Depositions</u>:  The parties previously had agreed on a set of limits and modifications to the current default provisions of the Rules governing depositions:

a.     The limit on oral depositions set forth in Rule 30(a)(2)(A)(i) is amended, as follows:

1)     Each side shall be permitted to take 25 fact depositions pursuant to Rules 30 and 31 and the limitations set forth therein, including the durational limits set forth in rule 30(d)(1);

2)     Each side shall be permitted to take 20 additional half-day fact depositions (each day of up to 4 hours of testimony);

3)     Each party shall be permitted to take one additional deposition under Rule 30(b)(6) of the opposite party, which deposition shall be limited to a running total of 28 hours, notwithstanding the number of topics noticed or the number of witnesses produced in response.  Each noticing party shall provide the responding party 60 days' written notice, with all topics specified, of its Rule 30(b)(6) deposition.  The parties reserve

all rights to object to such notices on any grounds other than

timing of notice and number and length of such deposition;

4)     If a party notices the deposition of a non-party, non-expert

under Rule 30(b)(6), that deposition shall be treated as a full or

half-day fact deposition notwithstanding the number of topics

noticed or the number of witnesses produced by the non-party

in response; and

5)     A party shall be permitted to take one full-day deposition (each

day of 7 hours of testimony) of each expert disclosed by the

opposite party.  Expert depositions will not count against the

limit on the number of depositions set forth in this Order.

b.     The parties shall work cooperatively in scheduling depositions.  No

party shall notice a fact or expert deposition of a party opponent

witness without first providing informal notice to the party 10

calendar days in advance of the proposed deposition, which will allow

the parties and their counsel a reasonable opportunity to meet and

confer on scheduling that deposition for a reasonable day, time and

place that is convenient for the deponent and all parties.  If the parties

are unable to agree upon a mutual date, time and location within 10

calendar days of the proposed deposition, the noticing party shall

proceed by noticing the deposition in accordance with the Federal and Local Rules of Civil Procedure.

9.  <u>Summary Judgment Briefing Schedule:</u>   The parties propose the following schedule for summary judgment briefing:

a.  Summary judgment motions shall be filed one month after the last date when both fact and expert discovery are closed;

b.  Oppositions to such motions shall be filed one month later; and

c.  Replies on such motions shall be filed one month later.

Any party may file summary judgment motions earlier than the deadline; in that event, oppositions and replies shall each be due 30 days after the filing to which it responds.

## DISCOVERY TOPICS, CATEGORIES OF WITNESSES, AND ANTICIPATED BURDENS

<u>United States' Statement</u>:  The United States anticipates that it may need discovery of Quicken Loans, through the devices contemplated by the Rules (including document requests and interrogatories), to support its claims and refute Quicken Loans' defenses.  For its claims, the United States intends to seek discovery of Quicken Loans concerning the following general categories: (i) files and additional information maintained by Quicken regarding specifically identified FHA loans that Quicken Loans originated and underwrote and for which a claim of FHA insurance has been paid; (ii) Quicken Loans' practices, policies, and

procedures regarding the origination and underwriting of FHA loans; (iii) Quicken Loans' practices, policies, and procedures regarding appraisals, including its practice of conducting "value appeals"; (iv) Quicken Loans' quality control practices, policies, and procedures; (v) Quicken Loans' practices, policies, and procedures concerning defaults of FHA loans; (vi) Quicken Loans' self-reporting to FHA; (vii) Quicken Loans' information systems and the preservation of data; (viii) training provided to Quicken Loans' employees on FHA loans and related topics; (ix) the organization and structure of Quicken Loans and other entities that participated in FHA lending-related activities; (x) the compensation of Quicken Loans employees that worked on FHA related matters; (xi) Quicken Loans' practice of making internal exceptions to material underwriting and FHA requirements; (xii) Quicken Loans' understanding and practices, policies, and procedures concerning the TOTAL Scorecard, FHA guidelines, DU software and certifications, and other tools and guidance concerning FHA loans; (xiii) Quicken Loans' mortgage bankers; (xiv) Quicken Loans' and its affiliates' use of sampling and other extrapolation methods in their business endeavors; (xv) Quicken Loans' systems of internal controls regarding FHA loans, direct endorsement underwriters, and other FHA lending-related topics; (xvi) other topics relevant and related to Quicken Loans' origination, evaluation, underwriting, and endorsement of FHA

loans; and (xvii) other topics that arise and as identified during the discovery period in this matter.

The United States expects that it may seek to depose current and former employees, officers, and directors of Quicken Loans and its affiliated entities including those responsible for, or with knowledge or information concerning, (i) originating, evaluating, underwriting, and endorsing FHA loans; (ii) supervising and directing Quicken Loans' FHA lending and related practices and actions; (iii) developing, implementing, and enforcing the practices, policies, procedures, and systems of internal controls detailed above; and (iv) the other categories of information listed above.  The United States also expects it may seek to depose certain third-parties including those responsible for, or with knowledge or information concerning, (i) appraisals on FHA loans originated and underwritten by Quicken Loans; (ii) the securitization or purchase of FHA loans originated and underwritten by Quicken Loans; (iii) Quicken Loans' and its affiliates' use of sampling and other extrapolation techniques; and (iv) the categories of information listed above.

The United States hopes to meet and confer with Quicken Loans on any undue burdens presented by Quicken Loans' discovery requests, which may include an overly expansive definition of which Government entities and components comprise the party-plaintiff in this action.  The United States is

committed to attempting to resolve any such issues with Quicken Loans on an informal basis without judicial intervention.

Lastly, the United States notes that the elements of an FCA claim are incorrectly stated in Quicken Loans' Statement. The Government need not prove causation and damages to prevail under the FCA and recover civil penalties. *See, e.g., United States ex. rel. Fago v. M&T Mortg. Co.*, 518 F. Supp. 2d 108, 122 (D.D.C. 2007).

Quicken Loans' Statement:   Quicken Loans believes that substantial discovery for its defense in this case is necessary given the wide-ranging and unspecific nature of the Government's complaint, and that the need for discovery supports the schedule proposed above. The time period and alleged loans potentially at issue in the complaint concern about 100,000 loans made by Quicken Loans, for which the Government alleges that Quicken Loans engaged in a large number of distinct and varied practices in violation of the FHA program or underwriting requirements. Quicken Loans' proposed discovery plan acknowledges the significant scope of potential discovery imposed by the government's Complaint, and on that basis, its proposed discovery plan is consistent with the schedule agreed to by the government prior to the case being transferred.

The scope of discovery will be particularly wide-ranging if the Complaint survives the pending Motion to Dismiss intact. As Quicken Loans' established in its motion to dismiss, the government has failed to plead any facts showing that Quicken Loans engaged in a company-wide scheme to defraud the government, and the specific underwriting practices alleged by the government do not make out a claim of knowing falsity. If that allegation survives the Motion to Dismiss, evidence involving those alleged practices will need to be developed through the discovery process. Evidence will also be needed as to the government's claims payment and indemnification practices which are relevant to determining materiality under the standards set by the Supreme Court in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). Additionally, the Government intends to prove its case by engaging in a new underwriting of a sample of the loans at issue, a process that Quicken Loans will contest and will involve substantial factual development and expert opinions. Sampling in this case is contractually barred and, moreover, legally impermissible because the falsity of any claim depends on highly fact-specific determinations. *See, e.g.*, *United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 07-00604, 2016 WL 3449833 (N.D. Tex. June 20, 2016). Therefore, discovery will go well beyond the alleged samples.

In that context, Quicken Loans anticipates that it may need discovery, through document requests and interrogatories, on the following topics: each element of the Government's claims. For the Government's False Claims Act claim for the recovery of damages and penalties, discovery may be needed as to each element, *inter alia*, (1) falsity; (2) scienter; (3) materiality; (4) causation; (5) damages and remedies. (The Government is wrong in suggesting that causation and damages are somehow irrelevant when the plaintiff, like the United States here, seeks damages under the FCA. *United States v. United Techs. Corp.*, 782 F.3d 718, 728 (6th Cir. 2015); *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995). For the Government's breach of fiduciary duty claim, discovery may be needed as to the relevant matters, *inter alia*, (1) duties allegedly owed to HUD; (2) the alleged breach of those duties; and (3) proximately caused damages. For the Government's negligence claim, discovery may be needed on relevant matters, *inter alia*, (1) duties allegedly owed to HUD; (2) the alleged breach of those duties; and (3) proximately caused damages. Discovery may also encompass all other documents that the Government intends to use to supports its claims in this case.

Discovery also may be needed on the allegations made in the Complaint, including allegations concerning Quicken Loans' annual and loan certifications; underwriting practices; granting of management exceptions; underwriting of

borrower income; appraisal value reconsiderations; compensation plans for underwriters; alleged manipulation of data entered into automated underwriting tools; allegations of ignoring "red flags"; Quicken Loans' Quality Control program; the self-reporting requirement; and duties owed to HUD. Quicken Loans also believes that discovery will be needed as to the Government's conduct in its relationship with Quicken Loans, including changes made in how FHA evaluated and settled disputes on a loan level basis through the PETR process and reasons why the Government made those changes. Additional topics for discovery include the nature, extent and limits of the insurance and contractual relationship between the parties. Quicken Loans reserves the right to identify additional discovery topics based upon subsequent events, including any motions the Government may file, its ongoing investigation, and/or discovery in this matter.

Quicken Loans anticipates deposing and/or serving a subpoena on the following categories of individuals:

i.      Current and former employees of Quicken Loans who have knowledge of Quicken Loans' FHA underwriting practices or who have communicated with HUD, HUD-OIG, or DOJ about this lawsuit or the allegations made in this lawsuit and who are not reasonably available to testify at trial;

ii.     With respect to each of the 3,885 claims allegedly at issue (which figure Quicken Loans understands has increased by several hundred since the filing

of the Complaint), applicants, employers, and other payers of money used as the source of an applicant's income, third parties holding applicants' assets, appraisers, and other third parties with knowledge of facts relevant to the application, underwriting, processing, closing, and performance of the loan;

iii.     Current or former FHA or HUD employees as necessary for defense, particularly as necessary (1) to rebut the Government's contentions created for this lawsuit as to the correct interpretation of certifications, guidelines and other relevant standards, and (2) to explore the Government's contentions that the alleged issues with loans were material to FHA, and (3) to develop evidence as to positions taken by HUD in its relationships with other FHA lenders which concern the issues in this case. Relevant employees may include, but are not limited to, employees of HUD's Home Ownership Centers ("HOCs"), which are located in Philadelphia, Denver, Santa Ana, and Georgia;

iv.     Third parties with knowledge of relevant industry standards and experience with FHA programs, or knowledge of any of the subjects that may be the subject of discovery from the Government;

v.     All other fact or expert witnesses that the government intends to use to support the allegations in the Complaint, and other fact or expert witnesses relevant to the government's allegations or Quicken Loans' defenses in this lawsuit.

## **OTHER MATTERS**

1.    <u>Settlement</u>:   The parties have explored a potential resolution of the claims in this action with the assistance of a mediator on October 28-29, 2015.   As the parties explained to the Court via email on December 12, 2016, the parties have not reached an agreement to mediate the case at this time.

2.    <u>Facilitation/Arbitration/Case Evaluation</u>:   If the parties believe that further settlement discussions may be productive, they will approach the Court at that time and may seek a stay or other relief to facilitate their discussions.   The parties do not believe Arbitration or Case Evaluation will facilitate settlement in this case.

3.    <u>Anticipated Motions Practice</u>:   Quicken Loans filed a Motion to Dismiss, which was fully briefed as of January 27, 2017.   Quicken Loans further anticipates that it may file a summary judgment motion or motion in limine as to the government's intended use at trial of evidence and expert testimony on its sampling and extrapolation analysis.   Quicken Loans anticipates it may need to file motions to compel.   The United States anticipates it will file a motion to compel on the above discovery disputes, a motion for summary judgment at the conclusion of discovery in this action, and motions in limine concerning evidentiary issues in False Claims Act cases.

4.     <u>Stipulated Protective Order for the Production of Confidential Information</u>:   On May 4, 2016 (ECF #37), Judge Walton entered the parties' Stipulated Protective and FRE 502(b) Order For the Treatment of Confidential and Privileged Information.  While the parties agree to be bound by this order, and do not intend to file a new protective order in this matter unless the Court would like them to do so, the current Stipulated Protective Order may require amendment pending resolution of the issue identified above concerning an Attorney's Eyes Only protection.

5.     <u>Privilege Logs:</u>  The parties are discussing a stipulation as to creation of privilege logs for documents withheld on the basis of attorney client or work product.

6.     <u>Service by Electronic Mail:</u>  The parties have previously consented to service of all papers in this action by electronic mail pursuant to Rule 5(b)(2)(E).

7.     <u>Production Format for Electronically Stored Information</u>:  The parties discussed the topics set forth in Rule 26(f)(3)(C), and have agreed to specifications for the production of electronically stored information.

8.     <u>Discovery of Electronically Stored Information</u>:   The parties agree that timely identification of custodians and search terms is necessary.   A responding party's production of electronically stored information responsive to discovery requests should not occur until the parties have agreed on the principal

custodians and search terms that the responding party will use for these purposes. Each party will use reasonable and prompt efforts to commence the production of electronically stored information on a rolling basis after the custodians and search terms are agreed to for that party, and no additional search terms or ESI custodians may be requested after the agreed upon exchange, unless a requesting party makes a demonstration of good cause and substantial need.

     9.    <u>Quicken Loans' Request for an Additional Rule 30(b)(6) Deposition Limited to ESI Issues</u>:

    <u>Quicken Loans' Position</u>: Because it did not conduct pre-suit discovery, unlike the Government, and so is unfairly disadvantaged in proposing ESI parameters without some deposition discovery, Quicken Loans proposes that, on or before June 16, 2017, it will be allowed to take a single Rule 30(b)(6) deposition (of up to 7 hours), which persons shall be knowledgeable as to HUD's, and each HUD Home Ownership Center's, organizational structure, departments, personnel, and division of labor as it relates to the oversight, management administration, and day-to-day responsibilities for the FHA insurance program during the relevant time period. The depositions of such person(s) shall not count against the limit on number of depositions in this Order as specified above in Paragraph 8 on "Depositions."

United States' Position:  Quicken Loans' first raised this demand at 4:24 on Friday February 3, in its initial response to the draft 26(f) report circulated by the United States. Quicken Loans has not discussed its request with the United States beyond the statements made in this report.  The fact the United States conducted an investigation before filing an enforcement action is not unique, *see* Fed. R. Civ. P. 9(b), 11, and does not warrant granting Quicken Loans the broad discovery request it seeks.  It is Quicken Loans who has a leg up on discovery in this matter since the matter, at its core, is about improper conduct by Quicken Loans that led to Quicken Loans' False Claims Act liability.  Quicken Loans knows the facts at issue in this case; the United States has had to discover them.  Moreover, the United States' pre-suit investigation was not as broad as Quicken Loans claims because Quicken Loans raised many of the same objections it now raises in litigation.  It also did not include 30(b)(6) testimony.  Quicken Loans is free to  include these topics in its Rule 30(b)(6) deposition notices under the terms and limitations of the applicable rules, take depositions of individuals knowledgeable about HUD's systems and practices, and seek other related discovery through document requests or interrogatories.  Quicken Loans' position that it should receive other unique and one-sided, discovery is untenable and not contemplated by the discovery rules.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BARBARA L. McQUADE
United States Attorney


By:    */s/ Samuel J. Buffone*
    PETER A. CAPLAN
    Assistant U.S. Attorney
    DANIEL HUGO FRUCHTER
    BRIAN P. HUDAK
    Special Assistant U.S. Attorneys
    211 W. Fort St., Suite 2001
    Detroit, MI 48226
    (313) 226-9784
    Email: peter.caplan@usdoj.gov

MICHAEL D. GRANSTON
SARA MCLEAN
SAMUEL J. BUFFONE
CHRISTOPHER R. B. REIMER
JOHN W. BLACK
Attorneys, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-2945

*Attorneys for the United States of America*


 Dated: February 6, 2017

QUICKEN LOANS INC.

By its attorneys,


    */s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth
**MORGANROTH &**
**MORGANROTH, PLLC**
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
Tel.:  248.864.4000
Fax.:  248.864.4001
jmorganroth@morganrothlaw.com

Thomas M. Hefferon
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC  20001
Tel.:  202.346.4000
Fax.:  202.346.4444
thefferon@goodwinlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 6, 2017, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

<u>*/s/ Jeffrey B. Morganroth*</u>
Jeffrey B. Morganroth