## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>  Defendant. | Civil Action No. 2:16-cv-14050-MAG-RSW<br><br>District Judge:  Mark A. Goldsmith<br><br>Magistrate Judge:  R. Steven Whalen<br><br>**JURY TRIAL DEMANDED** |

## ANSWER AND JURY DEMAND

## INTRODUCTION

Quicken Loans Inc. ("Quicken Loans") is the largest lender by volume of Federal Housing Administration ("FHA")-insured loans in the United States.  It is also the highest-quality lender—FHA's own statistical measures of loan quality show that Quicken Loans has the single lowest default rate of any large FHA lender.  Indeed, Quicken Loans' FHA loans are 3 times better than the average FHA lender.

Under these circumstances, the Complaint's allegations that Quicken Loans knowingly made bad loans defy belief.  The FHA itself does not even believe those baseless accusations, because for nearly 30 years the FHA has done and continues to do business with Quicken Loans—currently its largest and best business partner in the FHA insurance program.  In fact, in the time since this lawsuit was filed, FHA's business partnership with Quicken Loans has *increased* substantially.  The FHA has earned literally billions of dollars in profit for its insurance fund from the loans made by Quicken Loans and its nearly 12,000 team members.

As laid out in this Answer, Quicken Loans denies the Complaint's allegations because it did not engage in any wrongful conduct in violation of the False Claims Act or otherwise.  The scurrilous allegations of the Department of Justice ("DOJ") to the contrary have no basis in fact or law.  Quicken Loans is committed to doing the right thing by defeating this meritless case and clearing its

good name of this smear. Quicken Loans intends to protect its stellar reputation, earned from hundreds of thousands of FHA clients—hard-working Americans such as teachers, factory workers and first responders among them—and from thousands of other satisfied clients, and which shows in the J.D. Power Awards Quicken Loans has earned for the last eight years as the nation's top mortgage lender.

Quicken Loans also intends to enforce its contracts with HUD. By operating the FHA loan program, HUD is one of the world's largest insurance companies. As an insurance company, HUD has an absolute duty to honor its promise to pay when an FHA loan defaults and to act in good faith consistent with that promise. HUD made such promises to Quicken Loans each time an FHA loan was insured. And as an insurer, HUD cannot happily collect premiums when times are good— which it did—but then look to avoid responsibility for losses—which it is now trying to do.

This lawsuit is a holdover from the prior Administration, one of the last remaining vestiges of a politically-motivated shakedown of the country's largest FHA lenders. The government's scheme has netted more than $4 billion, all in an attempt to fleece moneys from mortgage lenders (and ultimately their customers, the American people) to prop up FHA's insurance fund. In 2012, this shakedown targeted Quicken Loans when the DOJ launched a prolonged fishing expedition into the Company's records. For over three years, the DOJ collected over 85,000

2

documents and conducted lengthy depositions of numerous Quicken Loans team members.  Based on little more than immaterial disagreements regarding a handful of loans—complaining, for example, about whether Quicken Loans miscalculated a borrower's income by $2.10 a week and whether it loaned a different borrower $26 too much—the United States demanded a nine-figure settlement and untrue "admissions" of liability.  DOJ also refused Quicken Loans' offer—which still stands—to  resolve any legitimate disagreements over the application of FHA's guidelines through FHA's long-established loan-by-loan review procedures, where underwriting experts from FHA and Quicken Loans sit down and discuss any issues on the merits and, if an error is found, Quicken Loans provides indemnification to FHA of any losses.

When Quicken Loans refused to succumb to DOJ's demands, this lawsuit was filed.  But from the beginning, the government's heavy-handed, illegitimate approach continued.  The United States filed this case in Washington, D.C. in an effort to keep it out of Detroit, where Quicken Loans' honest and diligent team members made the loan-related decisions that the United States is now unfairly and untruthfully labeling as fraud.  The Washington, D.C. court agreed with Quicken Loans and ordered this case transferred to Detroit, for a jury trial.

On March 9, 2017, based on Quicken Loans' initial response, this Court dismissed several parts of the case in agreement with Quicken Loans' initial

response to the government's scurrilous suit.  The Court dismissed the claim that Quicken Loans manipulated data and factual information about its loan applicants, finding no basis for a conclusion that "the data were somehow untrue, incomplete, or inaccurate."  ECF No. 25 at 31.  The Court then found it unnecessary even to address the Complaint's allegations that Quicken Loans' quality control, self-reporting, and compensation practices were improper, because "the Government is obligated to plead a specific example of a false claim with particularity to be allowed to proceed to discovery," but it failed to do so.  *Id.* at 9 n.2.  And, the Court dismissed some of the claims as barred by the statute of limitations.

For the portions of the Complaint that survived dismissal, the Court stated that, at the first stage of the case, it was constrained to "draw[] all reasonable inferences in the Government's favor."  *Id.* at 44.  This lenient, preliminary standard applied to the handful of email snippets quoted in the Complaint (which the actual evidence will show, the government intentionally took entirely out of context), and to the allegations about supposed errors in the few cherry-picked loans cited (some of which are not even at issue).  But going forward the United States no longer has the benefit of that lenient standard.  The United States now bears the burden of actually *proving*, on a loan-by-loan basis that, as a result of each of the four alleged underwriting practices that remain in the case (Compl. ¶¶ 125-27, 139-42, 154-55, 173-74), Quicken Loans certified falsely that loans

4

complied with FHA requirements and that those statements were material, caused the default of the loan, and otherwise can be a basis for recovery under the False Claims Act. Quicken Loans' Answer, including this Introduction specifically, previews why the United States will not be able to do so.

## RESPONSE TO NUMBERED PARAGRAPHS

Quicken Loans hereby answers and otherwise responds to the numbered paragraphs of the Complaint (ECF No. 1) filed by the United States of America ("United States" or "Plaintiff").

Quicken Loans need not respond to the headings and subheadings within the Complaint. To the extent a response is required, Quicken Loans denies any averments in the headings or subheadings of the Complaint.

Quicken Loans makes these responses without waiving, and expressly reserving, all rights that Quicken Loans has to file dispositive motions addressed to some or all of the claims asserted in the Complaint. Except as expressly admitted herein, Quicken Loans denies all allegations contained in the Complaint.

1. The allegations contained in Paragraph 1 are introductory and conclusory in nature, and therefore require no response. To the extent a response is required, Quicken Loans states that the United States purports to assert claims under the False Claims Act and under the common law for breach of fiduciary duty and negligence, and seeks relief and damages for purported injuries.

Quicken Loans denies that it violated the False Claims Act or any common law duty, that it caused any purported injuries, or that the United States is entitled to any relief from Quicken Loans.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 1.

2.      In response to the allegations contained in the first sentence of Paragraph 2, Quicken Loans admits only that, during the relevant time period, it was approved by the Department of Housing and Urban Development ("HUD") to underwrite single-family residential mortgage loans insured by FHA, but otherwise denies all allegations contained in the first sentence of Paragraph 2.  Quicken Loans denies all allegations contained in the second sentence of Paragraph 2. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 2.

3.      Paragraph 3 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 3.

4.      Paragraph 4 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that said allegations are vague, ambiguous, and imprecise, and so are denied.  Further

6

responding, the FHA Program and the applicable guidelines were and are designed to expand homeownership, and Quicken Loans made and approved loans pursuant to FHA guidelines in reliance on HUD's guaranty that it was providing insurance against the risk of borrower default.  HUD's after-the-fact attempt to shift that exact risk of loss back to Quicken Loans is completely unfair and legally insupportable.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 4.

5. Quicken Loans denies all allegations contained in Paragraph 5.

6. Quicken Loans denies all allegations contained in Paragraph 6.

7. Quicken Loans denies all allegations contained in Paragraph 7.

8. Quicken Loans denies all allegations contained in the first sentence of Paragraph 8.  The remaining allegations in Paragraph 8 require no response, as Plaintiff has not identified the "example" to which it is referring.  To the extent a response is required, and assuming Plaintiff is referring to the loan that is the subject of Paragraph 173, Quicken Loans incorporates by reference its responses to Paragraph 173, and further responds as follows. In response to the allegations contained in the second sentence of Paragraph 8, Quicken Loans states that the referenced account statement and loan journal notes speak for themselves and denies any characterization or interpretation inconsistent therewith.  In response to the allegations contained in the third sentence of Paragraph 8, Quicken Loans

admits only that it underwrote and endorsed for FHA insurance a loan made to the referenced borrower.  The fourth sentence of Paragraph 8 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore require no response by Quicken Loans.  To the extent a response is required, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 8.

9.    Quicken Loans denies all allegations contained in the first sentence of Paragraph 9.  The remaining allegations in Paragraph 9 require no response, as Plaintiff has not identified the "example" to which it is referring.  To the extent a response is required, and assuming Plaintiff is referring to the loan that is the subject of Paragraph 123, Quicken Loans incorporates by reference its responses to Paragraph 123, and further responds as follows. Quicken Loans denies that the provisions referenced in the second sentence of Paragraph 9 are a complete characterization of applicable underwriting requirements.  In response to the allegations contained in the third, fourth, fifth, and sixth sentences of Paragraph 9, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith.  In response to the allegations contained in the seventh sentence of Paragraph 9 (beginning "Quicken certified"), Quicken Loans admits only that it underwrote and endorsed for FHA

insurance a loan made to the referenced borrower.  In response to the allegations contained in the eighth sentence of Paragraph 9 (beginning "The borrower"), Quicken Loans admits only that the borrower defaulted and that it submitted an FHA insurance claim on the referenced loan, but otherwise denies all allegations in the eighth sentence of Paragraph 9.  In response to the allegations contained in the ninth sentence of Paragraph 9 (beginning "FHA paid"), Quicken Loans admits that it was paid the claim amount.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 9.

10.     Quicken Loans denies all allegations contained in the first sentence of Paragraph 10.  The remaining allegations in Paragraph 10 require no response, as Plaintiff has not identified the "example" to which it is referring.  To the extent a response is required, and assuming Plaintiff is referring to the loan that is the subject of Paragraph 139, Quicken Loans incorporates by reference its responses to Paragraph 139, and further responds as follows.  In response to the allegations contained in the remainder of Paragraph 10, Quicken Loans states that the initial appraisal opinion of value of the subject property was $180,000 and the appraiser changed that opinion to $185,000, which was the final opinion at the time of closing.  The fifth sentence of Paragraph 10 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required,

Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 10.

11.    Quicken Loans denies all allegations contained in the first sentence of Paragraph 11.  The remaining allegations in Paragraph 11 require no response, as Plaintiff has not identified the "example" to which it is referring.  To the extent a response is required, and assuming Plaintiff is referring to the loan that is the subject of Paragraph 146, Quicken Loans incorporates by reference its responses to Paragraph 146, and further responds as follows.  In response to the allegations contained in the second and third sentences of Paragraph 11, Quicken Loans states that the emails referenced speak for themselves and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans states that it did not use so-called "bastard income" in underwriting the referenced loan (or any loan), and that the email reflects that the income for the loan was thoroughly analyzed, calculated, and reviewed, and that the income figures used to qualify the loan and endorse it for FHA insurance were correct based on the information available to Quicken Loans.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 11.

12.    Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

from these practices," and therefore the allegations contained in Paragraph 12 require no answer.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 12, and denies that the provisions referenced in the third sentence of Paragraph 12 are a complete characterization of applicable requirements.

13.     Quicken Loans denies all allegations contained in Paragraph 13.

14.     Quicken Loans denies all allegations contained in Paragraph 14.

15.     The first sentence of Paragraph 15 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore require no response by Quicken Loans.  To the extent a response is required, Quicken Loans denies all allegations contained in the first sentence of Paragraph 15.  Quicken Loans denies all allegations contained in the second sentence of Paragraph 15.  Further responding, the FHA Program and the applicable guidelines were and are designed to expand homeownership, and Quicken Loans made and approved loans pursuant to FHA guidelines in reliance on the HUD's guaranty that HUD was providing insurance against the risk of borrower default.  HUD's after-the-fact attempt to shift that exact risk of loss back to Quicken Loans is completely unfair and legally insupportable.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 15.

16.     The allegations contained in the first sentence of Paragraph 16 are

introductory and conclusory in nature, and therefore require no response.  To the extent a response is required, Quicken Loans states that the United States purports to assert claims under the False Claims Act and under the common law for breach of fiduciary duty and negligence, but Quicken Loans denies that it violated the False Claims Act or any common law duty or that the United States has any valid claim against Quicken Loans.  The allegations contained in the second sentence of Paragraph 16 state conclusions of law to which no response is required.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 16.

17.    The allegations contained in Paragraph 17 state conclusions of law to which no response is required.  To the extent a response is required, Quicken Loans admits that it transacts business in the District of Columbia.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 17.

18.    The allegations contained in Paragraph 18 state conclusions of law to which no response is required.  To the extent a response is required, Quicken Loans admits that it transacts business in the District of Columbia, but denies that the proper and convenient venue for this action is the District of Columbia for the reasons set forth in Quicken Loans' transfer motion, which was granted by the United States District Court for the District of Columbia.  Except as expressly

stated herein, Quicken Loans denies all allegations contained in Paragraph 18.

19. Quicken Loans denies all allegations contained in Paragraph 19.

20. Paragraph 20 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans admits, on information and belief, the allegations contained in Paragraph 20.

21. Quicken Loans lacks knowledge and information sufficient to admit or deny the allegations, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 21.

22. Quicken Loans lacks knowledge and information sufficient to admit or deny the allegations, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 22.

23. Paragraph 23 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans lacks knowledge and information sufficient to admit or deny the allegations, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 23.

24. Paragraph 24 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by

Quicken Loans. To the extent a response is required, Quicken Loans lacks knowledge and information sufficient to admit or deny the allegations, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 24.

25.     Quicken Loans admits, on information and belief, the allegations contained in Paragraph 25.

26.     Quicken Loans admits the allegations contained in the first sentence of Paragraph 26. In response to the allegations contained in the second sentence of Paragraph 26, Quicken Loans states that it transacts business in all fifty states and the District of Columbia, but the remaining allegations contained in the second sentence of Paragraph 26 are too vague and conclusory to require a response, for there is no explanation of what "actively markets itself," "national lender," or "national marketing campaigns" means, and so are denied. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 26.

27.     Paragraph 27 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the statute and court decision referenced in Paragraph 27 speak for themselves and denies any characterization or interpretation inconsistent therewith.

Further responding, Quicken Loans denies that the False Claims Act is the

primary tool used by the United States and the Department of Housing and Urban Development ("HUD") to combat improper claims and to protect federal funds in the FHA loan program.  Rather, the primary tool HUD uses is to review endorsed loans through the Post-Endorsement Technical Review ("PETR") process.  Any issues or concerns that HUD may have as to the insurability of any FHA loan as a result of the PETR process or, otherwise, are resolved pursuant to a procedure under which (a) HUD raises those issues or concerns on a loan-by-loan basis, (b) the lender is afforded the right to respond to those loan-specific issues or concerns, (c) HUD's employees who have expertise and experience in FHA loan underwriting work with the lender's team members with similar expertise to determine whether there was a material violation of the FHA's underwriting requirements that caused the loan to default or materially increased the risk of default and loss to the FHA insurance fund, and (d) if those requirements are met, HUD requires indemnification as the remedy for that loan to the extent reasonably necessary to mitigate the actual risk or loss.

By agreement and understanding, including the parties' course of dealing, the evaluation of the insurability of any FHA loan made by Quicken Loans is accomplished by actually reviewing the subject loan, and is not determined through any method that samples a group of other loans and extrapolates a sampling result to loans that were not actually reviewed.  In HUD's own words,

the PETR process is "critical to the success of the Direct Endorsement (DE) program." HUD 4155.2, ch. 9.B.1.b. Neither the United States nor HUD has said the same about the False Claims Act, and until very recently—after December 31, 2011—HUD and the United States had rarely if ever used the False Claims Act to enforce HUD's underwriting guidelines, to question FHA claims or to "protect" the FHA program. Unlike the False Claims Act, the PETR process and other individual loan reviews provide lenders with valuable insight into how HUD will apply its guidelines to the many factors involved in the underwriting of a loan. And unlike the False Claims Act, the PETR process, and the individual loan review process in general, also defines for the parties which types of issues are material to the insurance and to HUD, and often results in concessions by HUD that the stated guidelines should be interpreted a certain way and that they do not apply as written under certain circumstances or when sound underwriting judgment otherwise justifies. It is not surprising, then, that the False Claims Act has played virtually no role until now.

Except as expressly stated herein, Quicken Loans denies all remaining allegations contained in Paragraph 27.

28.   Paragraph 28 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the

16

statute referenced in Paragraph 28 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 28.

29.     Paragraph 29 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute referenced in Paragraph 29 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 29.

30.     Paragraph 30 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute referenced in Paragraph 30 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 30.

31.     Paragraph 31 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute referenced in Paragraph 31 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken

Loans denies all allegations contained in Paragraph 31.

32.     Paragraph 32 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute referenced in Paragraph 32 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 32.

33.     Paragraph 33 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute and court decision referenced in Paragraph 33 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 33.

34.     Paragraph 34 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the statute and regulation referenced in Paragraph 34 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 34.

35.     Quicken Loans admits, on information and belief, the allegations contained in the first sentence of Paragraph 35.  The second and third sentences of Paragraph 35 contain introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore require no response by Quicken Loans.  To the extent a response is required to those sentences, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 35.

36.     Paragraph 36 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans admits that FHA is a part of HUD, and that HUD is one of the largest insurers in the world. Quicken Loans further admits that HUD provides insurance to lenders against losses on FHA mortgage loans, and thereby assumes all contractual and special duties that an insurer owes to its insured, including to act in good faith; to handle claims and issues of insurability fairly and consistent with its general claims-handling processes and requirements (including the agreement that loan insurability will be evaluated on a loan-level basis); to construe the insurance contract reasonably, consistent with the parties' course of dealing, and in light of the expectation that the default risk is insured and therefore the responsibility of

HUD; to honor its insurance obligations; and not to sue its insured improperly to recover for covered claims. HUD owes a fiduciary duty to its insureds, including Quicken Loans, as a result of HUD's position of dominance and control over mortgagees who participate in the FHA Program.

Quicken Loans lacks sufficient information to admit or deny the remaining allegations in Paragraph 36, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 36.

37.    Paragraph 37 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans lacks sufficient information to admit or deny the allegations of Paragraph 37, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 37.

38.    Paragraph 38 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the regulation referenced in Paragraph 38 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are

complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 38.

39.    Paragraph 39 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the relevant provisions of law referenced in Paragraph 39 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors

answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.   In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 39.

40.     Paragraph 40 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.   To the extent a response is required, Quicken Loans states that the regulations and document referenced in Paragraph 40 speak for themselves and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the

general understandings of underwriting judgment and diligence.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 40.

41.    Paragraph 41 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the court decisions referenced in the second sentence of Paragraph 41 speak for themselves and denies any characterization or interpretation inconsistent therewith, and otherwise denies all allegations contained in Paragraph 41.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 41 and specifically denies that it owed any fiduciary duty to HUD.

42.    Paragraph 42 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that these allegations are too vague and imprecise to require a response, for there is no explanation of what "proper underwriting" or "integrity" means, and so are denied. Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and

contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 42.

43. Paragraph 43 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. Further responding, as the largest mortgage insurer, HUD should have been and in fact was aware of the risks it was assuming for FHA-insured loans. HUD cannot renege on its insurance commitments and shift the insurance risk of loss back onto Quicken Loans. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 43.

44. Paragraph 44 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the regulation referenced in the second sentence of Paragraph 44 speaks for itself and

denies any characterization or interpretation inconsistent therewith, and otherwise denies the allegations of Paragraph 44. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 44.

45.    Paragraph 45 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the allegations in Paragraph 45 are too vague and imprecise to require a response, for there is no explanation of what "qualified" means, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 45.

46.    Paragraph 46 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 46 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 46.

47.    Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

from these practices," and therefore the allegations contained in Paragraph 47 require no answer. Further responding, Paragraph 47 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the allegations contained in the first and third sentences of Paragraph 47 are too vague and imprecise to require a response, for there is no explanation of what "improper incentives," "bonuses," or "amount of loans" means, and so denies them. Quicken Loans further states that the document referenced in Paragraph 47 speaks for itself and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 47.

48.    Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 48 require no answer. Further responding, Paragraph 48 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required Quicken Loans lacks sufficient information to admit or deny these allegations, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 48.

49.    Paragraph 49 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that these allegations are too vague and imprecise to require a response, for there is no explanation of what "aspects," "due diligence," or "accuracy" means, and so denies them.  Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 49.

50.    Paragraph 50 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the allegations contained in the first and second sentences of Paragraph 50 are too vague and imprecise to require a response, for there is no explanation of what "[p]roper due diligence" means, and so denies them.  Further responding, Quicken

27

Loans states that the document and court decision referenced in Paragraph 50 speak for themselves and denies any characterization or interpretation inconsistent therewith.    Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 50.

51.    Paragraph 51 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 51 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and

contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 51.

52.     Paragraph 52 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 52 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are

subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 52.

53.    Paragraph 53 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 53 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 53.

54.    Paragraph 54 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the

document referenced in Paragraph 54 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 54.

55.     Paragraph 55 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 55 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.

Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 55.

56.    Paragraph 56 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 56 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and

often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 56.

57.    Paragraph 57 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the "limits" referenced in Paragraph 57 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable eligibility requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 57.

58.    Paragraph 58 contains introductory and general allegations, which are

not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 58 speak for themselves and denies any characterization or interpretation inconsistent therewith, including that Quicken Loans denies the allegation that HUD's 2009 change in policy was something it "reaffirmed," rather than something it created at that time. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 58.

59.     Paragraph 59 contains introductory and general allegations, which are

not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 59 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 59.

60.    Paragraph 60 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the

documents referenced in Paragraph 60 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 60.

61.     Paragraph 61 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 61 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 61.

62.     Paragraph 62 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the

documents referenced in Paragraph 62 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 62.

63.     Paragraph 63 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the "requirements" referenced in Paragraph 63 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors

answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 63.

64.     Paragraph 64 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 64 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that a "user guide" can be the basis for a False Claims Act lawsuit, and denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect

Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 64.

65.     Paragraph 65 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 65 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that all "data entered into TOTAL is material to the endorsement of the loan," denies that a "user guide" can be the basis for a False Claims Act lawsuit, and denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect

Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 65.

66.     Paragraph 66 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  Further, the second sentence of Paragraph 66 is nonsensical and circular, and so requires no response.  To the extent a response is required to any portion of Paragraph 66, Quicken Loans states that the documents referenced in Paragraph 66 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that a "user guide" can be the basis for a False Claims Act lawsuit, and denies that the referenced requirements are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing guidance, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 66.

67.     Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 67 is required.  Further responding, Paragraph 67 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 67 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the

parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 67.

68.    Paragraph 68 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 68 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 68.

69.    Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 69 require no answer. Further responding, Paragraph 69 contains introductory and

general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 69 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 69.

70. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 70 require no answer. Further responding, Paragraph 70 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 70 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 70.

43

71.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 71 require no answer.  Further responding, Paragraph 71 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 71 speak for themselves and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 71.

72.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 72 require no answer.  Further responding, Paragraph 72 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 72 speak for themselves and denies any characterization or interpretation inconsistent

therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 72.

73.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 73 require no answer.  Further responding, Paragraph 73 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 73 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 73.

74.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 74 require no answer.  Further responding, Paragraph 74 contains introductory and

general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 74 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 74.

75. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 75 require no answer. Further responding, Paragraph 75 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 75 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 75.

76.     Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 76 require no answer.  Further responding, Paragraph 76 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 76 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable recommendations and states that there are no requirements to adopt these recommendations.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 76.

77.     Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 77 require no answer.  Further responding, Paragraph 77 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 77

speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable recommendations and states that there are no requirements to adopt these recommendations.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 77.

78.    Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 78 require no answer.  Further responding, Paragraph 78 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 78 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting recommendations and states that there are no requirements to adopt these recommendations.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 78.

79.    Quicken Loans states that the Court's March 9, 2017 Order

recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 79 require no answer.  Further responding, Paragraph 79 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 79 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable recommendations and states that there are no requirements to adopt these recommendations.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 79.

80.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 80 require no answer.  Further responding, Paragraph 80 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 80 speak for themselves and denies any characterization or interpretation inconsistent

therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 80.

81.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 81 require no answer.  Further responding, Paragraph 81 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 81 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 81.

82.   Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 82 require no answer.  Further responding, Paragraph 82 contains introductory and

general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 82 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable requirements. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 82.

83.     Paragraph 83 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the requirements referenced in Paragraph 83 speak for themselves and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 83.

84.     Paragraph 84 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the certification referenced in Paragraph 84 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained

in Paragraph 84.

85.     Paragraph 85 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the certifications referenced in Paragraph 85 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 85.

86.     Paragraph 86 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the applicable provisions of law reference in Paragraph 86 speak for themselves and are the best evidence of their contents and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 86.

87.     Paragraph 87 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 87 speaks for itself, denies any characterization or interpretation inconsistent therewith, and denies that the allegations are complete.  Except as expressly stated herein, Quicken Loans denies all allegations

contained in Paragraph 87.

88.    Paragraph 88 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 88 speaks for itself, denies any characterization or interpretation inconsistent therewith, and denies that the allegations are complete.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 88.

89.    Paragraph 89 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the document referenced in Paragraph 89 speaks for itself, denies any characterization or interpretation inconsistent therewith, and denies that the allegations are complete.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 89.

90.    Paragraph 90 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans admits that a loan-level certification must be made as to each endorsed loan and states that any requirement referenced in Paragraph 90 speaks for itself and denies any

characterization or interpretation inconsistent therewith. Further responding, Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 87 through 89, inclusive. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 90.

91.    Paragraph 91 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans denies the allegations contained in the first sentence of Paragraph 91, states that it lacks sufficient information to admit or deny the allegations contained in the second sentence of Paragraph 91, and denies the remaining allegations contained in Paragraph 91. Further responding, as the largest mortgage insurer, FHA should have been and in fact was aware of the risks it was assuming for FHA-insured loans. FHA cannot renege on its insurance commitments and shift the insurance risk of loss back onto Quicken Loans.

92.    Paragraph 92 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 92.

93.    Paragraph 93 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by

Quicken Loans.  To the extent a response is required, Quicken Loans states that any requirements referenced in Paragraph 93 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 93.

94.    Paragraph 94 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the documents referenced in Paragraph 94 speak for themselves and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable claim-submission requirements.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 94.

95.    Paragraph 95 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 95.

96.    Paragraph 96 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by

Quicken Loans.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 96.

97.    Paragraph 97 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 97 and specifically denies there is a fiduciary relationship as alleged in Paragraph 96.

98.    In response to the allegations contained in Paragraph 98, Quicken Loans states that it became a DE approved mortgagee on May 12, 1988, participated in the Lender Insurance Program between September 1, 2007 and December 31, 2011, and that it did not underwrite loans through that Program between 2005 and September 2007.  In participating in the FHA program, Quicken Loans and HUD had (and have) a complex and detailed contractual relationship, which includes, but is not limited to, individual contracts of insurance as to each FHA loan made by Quicken Loans and which defines the rights, duties, and responsibilities of each party, including agreements and understandings as to what are material underwriting expectations and as to how the parties will identify, review, and resolve any concerns raised about the insurability of any FHA loan. Quicken Loans further states that it was and remains a lender that does not make direct loans to clients through physical branch offices, that it typically collects

information from clients and applicants by telephone and through electronic and other means, and that the overwhelming majority of its underwriting during the period between September 1, 2007 and December 31, 2011 was performed at Quicken Loans' retail loan headquarters in the Detroit, Michigan metropolitan area.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 98.

99.   In response to the allegations contained in the first sentence of Paragraph 99, Quicken Loans states that it often sold loans underwritten and endorsed for FHA insurance during the relevant time period to third-parties.  The allegations contained in the second sentence of Paragraph 99 are not capable of response because the allegations use the comparator "less risky" but do not allege as to what and because Quicken Loans lacks sufficient information to admit or deny the allegations concerning the beliefs of these third parties, and so denies these allegations. To the extent a response is required, Quicken Loans denies the allegations contained in the second sentence of Paragraph 99.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 99.

100.   No response is required to the allegations contained in Paragraph 100 because the word "profited" is vague and imprecise.  To the extent a response is required to the allegations contained in Paragraph 100, Quicken Loans states that some of its income during the relevant time period derived from originating and

selling FHA-insured loans to third-parties but that there were associated expenses as well, all of which varied from loan to loan.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 100.

101.  Quicken Loans lacks sufficient information to admit or deny the allegations contained in Paragraph 101, and so denies them.

102.  Quicken Loans lacks sufficient information to admit or deny the allegations contained in Paragraph 102, and so denies them.

103.  In response to the allegations contained in Paragraph 103, Quicken Loans states that it submitted annual certifications to HUD during the time period September 1, 2007-December 31, 2011, states that any requirements and any certifications referenced in Paragraph 103 speak for themselves, and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 103.

104.  In response to the allegations contained in Paragraph 104, Quicken Loans states that it submitted a certification to HUD for fiscal year 2008 on August 26, 2008, states that this certification speaks for itself, and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 104.

105.  The allegations contained in Paragraph 105 are too vague and conclusory to require a response, for there is no explanation of what "similar"

means, and are so denied.   Further responding, Quicken Loans states that it submitted annual certifications to HUD for fiscal years 2009-2012, states that those certifications speak for themselves, and denies any characterization or interpretation inconsistent therewith.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 105.

106.   Quicken Loans denies all allegations contained in Paragraph 106.

107.   Quicken Loans denies all allegations contained in Paragraph 107.

108.   Quicken Loans denies all allegations contained in Paragraph 108.

109.   Quicken Loans denies all allegations contained in Paragraph 109.

110.   Quicken Loans denies all allegations contained in Paragraph 110.

111.   Quicken Loans denies all allegations contained in Paragraph 111.

112.   Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations contained in Paragraph 168 is required.   To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 112.

113.   Quicken Loans denies  the allegations contained in the first two sentences of Paragraph 113.   With respect to the third sentence of Paragraph 113, Quicken Loans denies that the United States or HUD has identified "hundreds" of loans that were "falsely certified," because the government purports to use

sampling and extrapolation to determine loan insurability without individual review of the actual "hundreds" of loans.  This is inconsistent with the parties' expectation and agreement that sampling and extrapolation would not be used for purposes of evaluating the insurability of individual FHA loans that were never individually reviewed, and that sampling is inconsistent with federal regulations and HUD acknowledgement in the Federal Register that sampling was not being used to evaluate loan insurability and would not be used for that purpose unless and until HUD changed its policy, which it has not done.  78 Fed. Reg. 41075 (July 9, 2013).  Quicken Loans also denies that it "falsely certified" "hundreds" of loans and denies the remaining allegations of Paragraph 113.

114.   The allegations contained in Paragraph 114 are introductory and conclusory in nature, and therefore require no response.  Paragraph 114 also contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 87 through 89, inclusive.  Further responding, Quicken Loans states that any requirements or certifications referenced in Paragraphs 87 through 89 speak for themselves and denies any characterization or interpretation inconsistent therewith and denies that the referenced paragraphs contain a complete characterization of applicable

underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 114.

115.   Quicken Loans denies all allegations contained in Paragraph 115.

116.   Quicken Loans denies all allegations contained in Paragraph 116.

117.   Quicken Loans denies all allegations contained in Paragraph 117.

118.   Quicken Loans denies the allegations contained in the first sentence of Paragraph 118.  In response to the allegations contained in the second sentence of Paragraph 118, Quicken Loans admits that Clint Bonkowski was and remains employed by Quicken Loans, states that the referenced testimony speaks for itself, and denies any characterization inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 118.

119.   Quicken Loans denies all allegations contained in the first and second sentences of Paragraph 119.  Quicken Loans states that the email referenced in the third and fourth sentences of Paragraph 119 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated

herein, Quicken Loans denies all allegations contained in Paragraph 119.

120.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 120, except that Quicken Loans admits that Jeanine Taylor was and remains employed by Quicken Loans.  In response to the allegations contained in the second sentence of Paragraph 120, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith, and otherwise denies the allegations contained in the second sentence of Paragraph 120.   Further responding, Quicken Loans states that the borrower provided citizenship documentation that was sufficient to establish the borrower's citizenship status under applicable HUD guidelines, and denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 120.

121.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 121, except to admit that Mike Lyon and Bobbie MacPherson were and

remain employed by Quicken Loans.  In response to the allegations contained in the second sentence of Paragraph 121, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith, and otherwise denies the allegations in the second sentence of Paragraph 121.  Further responding, Quicken Loans states that during the underwriting process it verified that the borrower had $431,000 in assets, and therefore concluded that the $350 prepayment penalty did not affect the insurability of the loan, and that the loan has not resulted in an insurance claim and so is not at issue in this lawsuit.  Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 121.

122.  In response to the allegations contained in Paragraph 122, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith.  Further responding,

Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 122.

123. In response to the allegations contained in the first, second, third, and fourth sentences of Paragraph 123, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith. In response to the allegations contained in the fifth sentence of Paragraph 123, Quicken Loans states that it certified and endorsed the loan for FHA insurance. In response to the allegations contained in the sixth sentence of Paragraph 123, Quicken Loans states that the borrower defaulted and that it submitted an insurance claim for $162,740, but otherwise denies the allegations of this sentence. In response to the allegations contained in the seventh sentence of Paragraph 123, Quicken Loans states that it received the full amount of the claim. Except as expressly stated herein, Quicken Loans denies all allegations contained

in Paragraph 123.

124.    The allegations contained in Paragraph 124 are introductory and conclusory in nature, and therefore require no response.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 124.

125.    In response to the allegations contained in the preface and subpart a. of Paragraph 125, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about October 14, 2008, secured by property located in the State of Washington, and endorsed for FHA insurance, and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 125. Quicken Loans denies all allegations contained in the first and third sentences of subpart c. of Paragraph 125.  In response to the allegations contained in the second sentence of subpart c. of Paragraph 125, Quicken Loans states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans states that because the borrower obtained the standard filing extension permitted by the IRS, the borrower's 2007 tax return was not yet available, and therefore the two most recent years of available tax returns were 2005 and 2006; and hence the loan was properly qualified for insurance.  Quicken Loans denies all allegations contained in subpart

d. of Paragraph 125. Subpart e. of Paragraph 125 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations contained in subpart e. of Paragraph 125 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them. Further responding, Quicken Loans denies that the provisions referenced in subparagraphs (c)-(d) are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing guidance, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 125.

126.  In response to the allegations contained in the preface and subpart a. of Paragraph 126, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about August 19, 2008, secured by property located in the Commonwealth of Kentucky, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation

66

inconsistent therewith.  Quicken Loans denies all allegations contained in subpart b. of Paragraph 126.  Quicken Loans denies all allegations contained in the first sentence of subpart c. of Paragraph 126.  In response to the allegations contained in the second and third sentences of subpart c. of Paragraph 126, Quicken Loans states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith.  Quicken Loans denies all allegations contained in subpart d. of Paragraph 126.  Further responding, Quicken Loans states that the loan file contains a fully executed written verification of employment less than 120 days before closing, and a verbal verification of employment less than 5 days before closing; and hence the loan was properly qualified for insurance.  Subpart e. of Paragraph 126 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations contained in subpart e. may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Further responding, Quicken Loans denies that the provisions referenced in subpart (c)-(d) of Paragraph 126 are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing

direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 126.

127.   The allegations contained in the first sentence of Paragraph 127 are too vague and imprecise to require a response, for there is no explanation of what "underwriting requirements" are referred to, and are so denied. Further responding, to the extent that the first sentence of Paragraph 127 alleges that Quicken Loans allowed employees and underwriters to request exceptions to FHA underwriting requirements, Quicken Loans denies that allegation. Quicken Loans denies all allegations contained in the second sentence of Paragraph 127. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 127.

128.   Quicken Loans denies all allegations contained in Paragraph 128.

129.   Paragraph 129 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the referenced documents speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable

underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 129.

130.  Paragraph 130 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans lacks sufficient information to admit or deny the allegations contained in the first sentence of Paragraph 130, and so denies them, and states that the documents referenced in the second and third sentences of Paragraph 130 speak for themselves and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans denies that the referenced provisions are a

complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 130.

131. Quicken Loans denies all allegations contained in Paragraph 131.

132. In response to the allegations contained in the first and second sentences of Paragraph 132, Quicken Loans states that during part of the relevant time period, certain collateral underwriters, referred to as "value analysts," could submit a value appeal (*i.e.*, a request for professional reconsideration of a value estimate) to an appraisal management company, and otherwise denies the allegations in these sentences. Quicken Loans denies all allegations contained in the third and fourth sentences of Paragraph 132. Except as expressly stated herein,

Quicken Loans denies all allegations contained in Paragraph 132.

133.   Quicken Loans denies all allegations contained in Paragraph 133.

134.   Quicken Loans denies all allegations contained in the first and third sentences of Paragraph 134.  In response to the second sentence of Paragraph 134, Quicken Loans admits that Darren Thomas was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 134.

135.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 135.  In response to the allegations contained in the second sentence of Paragraph 135, Quicken Loans admits that Clint Bonkowski was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 135.

136.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 136.  In response to the allegations contained in the second, third, fourth, and fifth sentences of Paragraph 136, Quicken Loans admits that David Lee and Darren Thomas were employed by Quicken Loans and that Darren Thomas remains employed by Quicken Loans, states that the referenced emails and loan

journal notes speak for themselves, and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans states that the emails referenced in Paragraph 136 concern ordering a second appraisal, not a value appeal. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 136.

137. Quicken Loans denies all allegations contained in Paragraph 137.

138. The allegations contained in Paragraph 138 are introductory and conclusory in nature, and therefore require no response. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 138.

139. In response to the allegations contained in the preface and subpart a. of Paragraph 139, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about January 26, 2008, secured by property located in the State of Michigan, and endorsed for FHA insurance, but states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 139. In response to the allegations contained in subpart c. of Paragraph 139, Quicken Loans states the referenced loan journal notes and appraisal speak for themselves and denies any characterization inconsistent therewith. Quicken Loans denies all allegations contained in the first and third sentences of subpart d. of Paragraph 139,

and states in response to the allegations contained in the second sentence of subpart d. of Paragraph 139 that the referenced appraisal speaks for itself and Quicken Loans denies any characterization inconsistent with its terms.   Subpart e. of Paragraph 139 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans.   To the extent the allegations contained in subpart e. of Paragraph 139 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 139.

140.   In response to the allegations contained in the preface and subpart a. of Paragraph 140, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about January 16, 2008, secured by property located in the State of New York, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 140.  In response to the allegations contained in subpart c. of Paragraph 140, Quicken Loans states that the referenced loan journal notes and appraisals speak for themselves and denies any characterization inconsistent therewith.  Quicken Loans denies all allegations contained in the first and fourth sentences of subpart d. of

Paragraph 140, and states in response to the allegations contained in the second and third sentences of subpart d. of Paragraph 140 that the referenced appraisal speaks for itself and Quicken Loans denies any characterization inconsistent with its terms.  Subpart e. of Paragraph 140 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent the allegations contained in subpart e. of Paragraph 140 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 140.

141.   In response to the allegations contained in the preface and subpart a. of Paragraph 141, Quicken Loans states that the referenced purchase loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about September 2, 2008, secured by property located in the State of Michigan, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 141.  In response to the allegations contained in subpart c. of Paragraph 141, Quicken Loans states that the referenced loan journal notes and appraisal speak for themselves denies any characterization inconsistent therewith.   Quicken Loans

denies all allegations contained in subpart d. of Paragraph 141. Subpart e. of Paragraph 141 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations contained in subpart e. of Paragraph 141 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 141.

142. In response to the allegations contained in the preface and subpart a. of Paragraph 142, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about June 19, 2008, secured by property located in the State of Georgia, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 142. In response to the allegations contained in subpart c. of Paragraph 142, Quicken Loans states that the referenced loan journal notes and appraisal speak for themselves and denies any characterization inconsistent with their terms. Quicken Loans denies all allegations contained in subpart d. of Paragraph 142. Subpart e. of Paragraph 142 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations

contained in subpart e. of Paragraph 142 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 142.

143.  In response to the allegations contained in the first sentence of Paragraph 143, Quicken Loans states that, beginning in 2009, it prohibited value analysts from submitting requests for value appeals to an appraisal management company.  Quicken Loans denies all allegations contained in the second and third sentences of Paragraph 143.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 143.

144.  Paragraph 144 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the regulation referenced in Paragraph 144 speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Quicken Loans also incorporates by reference, as if fully set forth herein, its response to Paragraph 55.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and

concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 144.

145. Quicken Loans denies all allegations contained in Paragraph 145.

146. In response to the allegations contained in the first sentence of Paragraph 146, Quicken Loans admits that Mike Lyon was and remains employed by Quicken Loans, states that the email referenced speaks for itself, and denies any characterization or interpretation inconsistent therewith. Further responding, Quicken Loans states that it did not use so-called "bastard income" in underwriting the referenced loan, that the email reflects that the income for the loan was thoroughly reviewed and recalculated, and that the income used to qualify the loan and endorse it for FHA insurance was correct. In response to the allegations contained in the second sentence of Paragraph 146, Quicken Loans states that the referenced certificate speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 146.

147. In response to the allegations contained in the first sentence of

Paragraph 147, Quicken Loans states that the email referenced speaks for itself and denies any characterization or interpretation inconsistent therewith. In response to the allegations contained in the second sentence of Paragraph 147, Quicken Loans admits that Jeanette Ahles was and remains employed by Quicken Loans, states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith. In response to the allegations contained in the third sentence of Paragraph 147, Quicken Loans admits that the loans referenced in Paragraph 147 were endorsed for FHA insurance. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 147.

148. The allegations contained in Paragraph 148 are introductory and conclusory in nature, and therefore require no response. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 148.

149. Quicken Loans states that the United States' claims concerning this loan were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations contained in Paragraph 149 is required.

150. In response to the allegations contained in the preface and subpart a. of Paragraph 150, Quicken Loans states that the referenced refinance loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about May 24, 2008, secured by property located in the Commonwealth of

Pennsylvania, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in subpart b. of Paragraph 150. Quicken Loans denies the allegations contained in the first and fourth sentences of subpart c. of Paragraph 150, states that the referenced documentation and certificate speak for themselves and denies any characterization or interpretation inconsistent therewith. In response to the allegations contained in the first sentence of subpart d. of Paragraph 150, Quicken Loans states that the referenced loan application speaks for itself and Quicken Loans denies any characterization inconsistent therewith. Quicken Loans denies the allegations contained in the second sentence of subpart d. of Paragraph 150. In response to the allegations contained in subpart e. of Paragraph 150, Quicken Loans states that the referenced credit report and certificate speak for themselves and are the best evidence of their contents, and Quicken Loans denies any characterization inconsistent therewith. Subpart f. of Paragraph 150 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations contained in subpart f. of Paragraph 150 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in

Paragraph 150.

151.   Quicken Loans denies all allegations contained in Paragraph 151.

152.   In response to the allegations contained in the first sentence of Paragraph 152, Quicken Loans admits that in 2008 it required certain underwriters to take a "Basic Income Calculations & Key Elements" test.  Further responding, Quicken Loans states that the email referenced in the second sentence of Paragraph 152 speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 152.

153.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 153.  In response to the allegations contained in the second and third sentences of Paragraph 153, Quicken Loans states that Bill Emerson was and remains employed by Quicken Loans, states that the referenced emails speak for themselves and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 153.

154.   Quicken Loans denies all allegations contained in Paragraph 154.

155.   In response to the allegations contained in the first sentence of Paragraph 155, Quicken Loans states that Bill Banfield was and remains employed by Quicken Loans, states that the referenced email speaks for itself,  and denies

any characterization or interpretation inconsistent therewith.  In response to the allegations contained in the second and third sentences of Paragraph 155, Quicken Loans admits that Clint Bonkowski was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith.  In response to the allegations contained in the fourth sentence of Paragraph 155, Quicken Loans states that the referenced testimony speaks for itself and denies any characterization or interpretation inconsistent therewith.  Further responding, Quicken Loans states that the emails referenced in Paragraph 155 are irrelevant to this case because per FHA guidelines, DE underwriters have a minimum of thirty-six months experience and so these emails had nothing to do with FHA loans.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 155.

156.  Quicken Loans denies all allegations contained in Paragraph 156.

157.  In response to the allegations contained in Paragraph 157, Quicken Loans admits that it tracked certain production metrics between September 1, 2007 and December 31, 2011.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 157.

158.  Quicken Loans denies all allegations contained in the first sentence of Paragraph 158.  In response to the allegations contained in the second and third sentences of Paragraph 158, Quicken Loans admits that Clint Bonkowski was and

remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 158.

159. Quicken Loans denies all allegations contained in the first sentence of Paragraph 159. In response to the allegations contained in the second sentence of Paragraph 159, Quicken Loans admits that Jeanine Taylor was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in the third sentence of Paragraph 159. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 159.

160. Quicken Loans denies all allegations contained in the first sentence of Paragraph 160. In response to the allegations contained in the second sentence of Paragraph 160, Quicken Loans admits that Bill Emerson was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 160.

161. Quicken Loans states that the Court's March 9, 2017 Order

recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 161 require no answer.   Further responding, the first sentence of Paragraph 161 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans.   To the extent a response is required, Quicken Loans states that any referenced requirements speak for themselves and denies any characterization or interpretation inconsistent therewith.   Quicken Loans also incorporates by reference, as if fully set forth herein, its response to Paragraph 47.   Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.   In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be

insurance coverage.  Quicken Loans denies all allegations contained in the second sentence of Paragraph 161.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 161.

162.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 162 require no answer.  To the extent a response is required, Quicken Loans states in response to the allegations contained in the first and second sentences of Paragraph 162 that the referenced bonus and/or compensation plans speak for themselves and denies any characterization or interpretation inconsistent therewith.   Quicken Loans denies all allegations contained in the third sentence of Paragraph 162.

163.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 163 require no answer.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 163.

164.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 164 require no answer.  To the extent a response is required, Quicken Loans denies all

allegations contained in the first sentence of Paragraph 164. In response to the allegations contained in the second sentence of Paragraph 164, Quicken Loans admits that Clint Bonkowski was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in the third sentence of Paragraph 164. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 164.

165. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 165 require no answer. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 165.

166. Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 166 is required. Quicken Loans denies all other allegations contained in Paragraph 166.

167. Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations contained in Paragraph 167 is

required.

168.   Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations contained in Paragraph 168 is required.

169.   Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 169 is required.  Quicken Loans denies all other allegations contained in Paragraph 169.

170.   Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 170 is required.  Quicken Loans denies all other allegations contained in Paragraph 170.

171.   In response to the allegations contained in Paragraph 171, Quicken Loans admits that Gail Doyle and Jeanette Ahles were and remain employed by Quicken Loans, states that the referenced emails speak for themselves, and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 171.

172.   Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 172 is required.  Further responding, the allegations contained in Paragraph 172 are introductory and conclusory in nature, and therefore require no response.  To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 172.

173.   In response to the allegations contained in the preface and subpart a. of Paragraph 173, Quicken Loans states that the referenced purchase loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about September 15, 2008, secured by property located in the State of Minnesota, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith.  Quicken Loans denies all allegations contained in subpart b. of Paragraph 173.  In response to the allegations contained in subpart c. of Paragraph 150, Quicken Loans denies the allegations contained in the first and fourth sentences of subpart c. of Paragraph 173, and states in response to the allegations contained in the second and third sentences of subpart c. of Paragraph 173 that the referenced account statement and loan journal notes speak for themselves and denies any characterization or interpretation inconsistent therewith.

In response to the allegations contained in the first, second, and third sentences of subpart d. of Paragraph 173, Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations contained in subpart d. of Paragraph 173 is required.  Quicken Loans denies the allegations contained in the fourth sentence of subpart d. of Paragraph 173.  The allegations contained in the fifth sentence of subpart d. of Paragraph 173 state conclusions of law to which no response is required.  To the extent a response is required, Quicken Loans states that the referenced loan journal notes speak for themselves and denies any characterization or interpretation inconsistent therewith.   In response to the allegations contained in subpart e. of Paragraph 173, Quicken Loans denies all allegations contained in the first and last sentence of subpart e. of Paragraph 173, and states in response to the remaining allegations contained in subpart e. of Paragraph 173 that the referenced paystub, loan journal notes, and documents speak for themselves and denies any characterizations inconsistent therewith.  Subpart f. of Paragraph 173 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans.  To the extent the allegations contained in subpart f. of Paragraph 173 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.   Further

responding, Quicken Loans denies that the provisions referenced in subparts (d) and (e) of Paragraph 173 are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 173.

174. In response to the allegations contained in the preface and subpart a. of Paragraph 174, Quicken Loans states that the referenced refinanced loan was underwritten using an FHA-approved Automated Underwriting System, closed on or about March 16, 2009, secured by property located in the Commonwealth of Virginia, and endorsed for FHA insurance; and states that the referenced certificate speaks for itself and denies any characterization or interpretation inconsistent therewith. In response to the allegations contained in subpart b. of Paragraph 174, Quicken Loans denies the allegations contained in the first sentence of subpart b. of Paragraph 174, and states in response to the allegations contained in the remaining sentences of subpart b. of Paragraph 174 that the referenced loan file, loan journal notes, and documents speak for themselves and denies any

characterization or interpretation inconsistent therewith.   In response to the allegations contained in the first and second sentence of subpart c. of Paragraph 174, Quicken Loans states that the referenced loan journal notes speak for themselves and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in the third sentence of subpart c. of Paragraph 174.   Quicken Loans denies all allegations contained in subpart d. of Paragraph 174.   Quicken Loans denies the allegations contained in the first and fifth sentences of subpart e. of Paragraph 174.   In response to the allegations contained in the second, third, and fourth sentences of subpart e. of Paragraph 174, Quicken Loans states that the referenced credit report, loan application, and certificate speak for themselves and denies any characterization or interpretation inconsistent therewith.  Subpart f. of Paragraph 174 contains no allegations of fact directed to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent the allegations contained in subpart f. of Paragraph 174 may be construed to contain allegations of fact directed to Quicken Loans, Quicken Loans lacks sufficient information to admit or deny them, and so denies them.  Further responding, Quicken Loans denies that the provisions referenced in subparts (b) and (d) of Paragraph 174 are a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and

concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 174.

175.   Quicken Loans denies all allegations contained in the first and second sentences of Paragraph 175.   In response to the allegations contained in the third, fourth, and fifth sentences of Paragraph 175, Quicken Loans states that the referenced emails speak for themselves and denies any characterization or interpretation inconsistent therewith.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 175.

176.   Quicken Loans denies all allegations contained in the first sentence of Paragraph 176.   In response to the allegations contained in the second and third sentences of Paragraph 176, Quicken Loans states that the referenced email speaks for itself and denies any characterization or interpretation inconsistent therewith. Quicken Loans denies all allegations contained in the fourth sentence of Paragraph 176.   Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 176.

177.   Quicken Loans denies all allegations contained in Paragraph 177.

178.   In response to the allegations contained in Paragraph 178, Quicken

Loans admits that Jeanette Ahles and Clint Bonkowski were and remain employed by Quicken Loans, states that the referenced emails speak for themselves and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 178.

179. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 179 require no answer. Further responding, Paragraph 179 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans states that the referenced requirements speak for themselves and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 179.

180. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 180 require no answer. Further responding, Paragraph 180 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and

therefore requires no response by Quicken Loans.  To the extent a response is required, Quicken Loans states that the referenced provisions speak for themselves and denies any characterization or interpretation inconsistent therewith.  Quicken Loans also incorporates by reference, as if fully set forth herein, its responses to Paragraphs 72 through 76, inclusive.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  In addition, because HUD as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against HUD so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 180.

181.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

from these practices," and therefore the allegations contained in Paragraph 181 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 181 that the referenced quality control plan speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 181.

182.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 182 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 182 that the referenced quality control plan speaks for itself and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 182.

183.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 183 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 183 that the referenced quality control plan speaks for itself and denies any characterization or interpretation inconsistent

therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 183.

184.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 184 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 184 that the referenced quality control plan speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 184.

185.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 185 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 185 that the referenced quality control plan speaks for itself and is the best evidence of its contents and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 185.

186.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

95

from these practices," and therefore the allegations contained in Paragraph 186 require no answer. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 186.

187. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 187 require no answer. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 187, and denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Further responding, Quicken Loans states that none of the loans referenced in Paragraph 187 resulted in an insurance claim, and also that applicable HUD guidelines did not require that Quicken Loans report possible underwriting defects to HUD.

188. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

from these practices," and therefore the allegations contained in Paragraph 188 require no answer.  To the extent a response is required, Quicken Loans denies all allegations contained in the first sentence of Paragraph 188.  In response to the allegations contained in the second sentence of Paragraph 188, Quicken Loans admits that Bill Emerson was and remains  employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith.   Quicken Loans denies all allegations contained in the third sentence of Paragraph 188.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 188.

189.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 189 require no answer.  To the extent a response is required, Quicken Loans admits in response to the allegations contained the first and second sentences in Paragraph 189 that Mike Lyon was and remains employed by Quicken Loans, states that the referenced email speaks for itself, and denies any characterization or interpretation inconsistent therewith.  Quicken Loans denies the allegations contained in the third sentence of Paragraph 189.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 189.

190.  Quicken Loans states that the Court's March 9, 2017 Order

recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 190 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in the first sentence of Paragraph 190 that the referenced documents speak for themselves and denies any characterization or interpretation inconsistent therewith.   Quicken Loans denies all allegations contained in the second sentence of Paragraph 190.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 190.

191.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 191 require no answer.  Further responding, Quicken Loans states in response to the allegations contained in Paragraph 191 that the referenced documents speak for themselves and denies any characterization or interpretation inconsistent therewith. Quicken Loans also incorporates by reference, as if fully set forth herein, its response to Paragraphs 79 through 80, inclusive.  Further responding, Quicken Loans denies that the referenced provisions are a complete characterization of applicable underwriting requirements which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering

lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.  In addition, because FHA as the insurer drafted the guidelines and requirements, those guidelines and requirements must be construed against FHA so as to protect Quicken Loans' reasonable expectation that, so long as it acted in a manner consistent with any interpretation that was reasonable or was consistent with the parties' course of dealing, there would be insurance coverage.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 191.

192.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 192 require no answer.  To the extent a response is required, Quicken Loans denies all allegations contained in the first sentence of Paragraph 192.  In response to the allegations contained in the second sentence of Paragraph 192, Quicken Loans states that the referenced quality control plans speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 192.

193.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise

from these practices," and therefore the allegations contained in Paragraph 193 require no answer. To the extent a response is required, Quicken Loans denies all allegations contained in Paragraph 193.

194. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 194 require no answer. To the extent a response is required, Quicken Loans admits all allegations contained in the first sentence of Paragraph 194. Quicken Loans denies all allegations contained in the second sentence of Paragraph 194. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 194.

195. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 195 require no answer. To the extent a response is required, Quicken Loans admits the allegations contained in the first sentence of Paragraph 195. In response to the allegations contained in the second sentence of Paragraph 195, Quicken Loans states that the referenced self-reports speak for themselves and denies any characterization or interpretation inconsistent therewith. With respect to the third sentence of Paragraph 195, Quicken Loans states that it did not report possible

underwriting issues to HUD between September 1, 2007 and December 31, 2011, but denies that such reporting was required.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 195.

196.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 196 require no answer.  To the extent a response is required, Quicken Loans admits all allegations contained in the first sentence of Paragraph 196.  In response to the allegations contained in the second sentence of Paragraph 196, Quicken Loans states that the referenced self-reports speak for themselves and denies any characterization or interpretation inconsistent therewith.  Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 196.

197.  Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 197 require no answer.  To the extent a response is required, Quicken Loans states in response to the allegations contained in the first and second sentences of Paragraph 197 that the referenced document speaks for itself and denies any characterization or interpretation inconsistent therewith.  Quicken Loans denies all allegations contained in the third sentence of Paragraph 197.  Except as expressly stated

herein, Quicken Loans denies all allegations contained in Paragraph 197.

198. Quicken Loans states that the Court's March 9, 2017 Order recognized that Plaintiff "is not alleging that any false claims independently arise from these practices," and therefore the allegations contained in Paragraph 198 require no answer. To the extent a response is required, Quicken Loans admits in response to the allegations contained in the first sentence of Paragraph 198 that it reported instances of borrower fraud, but otherwise denies all allegations contained in the first sentence of Paragraph 198. In response to the allegations contained in the second, third, and fourth sentences of Paragraph 198, Quicken Loans admits that Bobbi Macpherson was and remains employed by Quicken Loans, states that the referenced emails speak for themselves, and denies any characterization or interpretation inconsistent therewith. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 198.

199. Quicken Loans denies all allegations contained in Paragraph 199.

200. Quicken Loans states that the United States' claims concerning data manipulation were dismissed with prejudice pursuant to the Court's March 9, 2017 Order, and thus no response to the allegations concerning data manipulation contained in Paragraph 200 is required. Quicken Loans denies all other allegations contained in Paragraph 200.

201. Quicken Loans denies all allegations contained in Paragraph 201.

202. Paragraph 202 contains introductory and general allegations, which are not directed specifically to Quicken Loans, and therefore requires no response by Quicken Loans. To the extent a response is required, Quicken Loans lacks sufficient information to admit or deny the allegations contained in Paragraph 202, and so denies them. Except as expressly stated herein, Quicken Loans denies all allegations contained in Paragraph 202.

203. Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 1 through 202, inclusive.

204. Quicken Loans denies all allegations contained in Paragraph 204.

205. Quicken Loans denies all allegations contained in Paragraph 205.

206. Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 1 through 202, inclusive.

207. Quicken Loans denies all allegations contained in Paragraph 207.

208. Quicken Loans denies all allegations contained in Paragraph 208.

209. Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 1 through 202, inclusive.

210. Quicken Loans denies all allegations contained in Paragraph 210.

211. Quicken Loans denies all allegations contained in Paragraph 211.

212. Quicken Loans denies all allegations contained in Paragraph 212.

213. Quicken Loans denies all allegations contained in Paragraph 213.

214.    Quicken Loans denies all allegations contained in Paragraph 214.

215.    Quicken Loans incorporates by reference, as if fully set forth herein, its responses to Paragraphs 1 through 202, inclusive.

216.    Quicken Loans denies all allegations contained in Paragraph 216.

217.    Quicken Loans denies all allegations contained in Paragraph 217.

218.    Quicken Loans denies all allegations contained in Paragraph 218.

<u>COMPLAINT'S PRAYER FOR RELIEF</u>

Quicken Loans denies that the United States is entitled to any relief, including but not limited to the relief sought in sub-parts (A)-(D) of the "Prayer for Relief."

**AFFIRMATIVE DEFENSES**

Quicken Loans asserts the following affirmative defenses without assuming the burden of proof on any issue for which the United States bears the burden of proof.

**First Affirmative Defense**

The United States' claims are barred or limited, in whole or in part, by the terms and conditions of the agreements between Quicken Loans and HUD, including the agreement that loan insurability can be assessed only based on individualized review of each loan and not by sampling.

More specifically, and without limitation, the relationship between HUD and Quicken Loans is governed by the parties' agreements, which include separate insurance contracts for each loan, under which HUD agrees to insure the loan against a default by the borrower, regardless of its cause. The terms of the parties' agreement as to each loan include applicable regulatory requirements, insurance law and contract principles, an implied covenant of good faith and fair dealing such that any discretion the contract affords to HUD must be exercised honestly and in good faith in light of the parties' reasonable expectations, and the parties' course of dealing and shared understanding concerning Quicken Loans' participation in the FHA program.

Under the agreements, any issues or concerns that HUD may have as to the insurability of any FHA loan originated by Quicken Loans must be resolved pursuant to a process under which (a) HUD raises any issues or concerns on a loan-by-loan basis, (b) Quicken Loans is afforded the right to respond to those loan-specific issues or concerns, (c) HUD employees or contractors who have expertise and experience in FHA loan underwriting work with Quicken Loans' team members with similar expertise to determine whether there was a material violation of the FHA's underwriting requirements that caused the loan to default or materially increased the risk of default, and (d) if those requirements are met, and if other terms for indemnification are otherwise triggered, HUD requires

indemnification as the remedy for that loan to the extent reasonably necessary to mitigate the actual risk or loss to the FHA insurance fund. *See generally* Mortgagee Letter 2011-02 at 4 (Jan. 5, 2011); 24 C.F.R. § 203.4(c); *id.* § 203.255. This evaluation of the insurability of any FHA loan and appropriateness of any remedy must be accomplished by actually reviewing the subject loan and not determined through any method that samples a group of other loans and extrapolates those results to loans that were not actually reviewed. This is required as well by HUD regulations. 24 C.F.R. §§ 203.255, 203.257.

For over five years, from 2007 through mid-2013, every time or virtually every time that HUD had any issue or concern relating to any FHA loan originated by Quicken Loans, the parties resolved that issue or concern pursuant to this process. As alleged elsewhere in this Answer, after the period in question, HUD breached the parties' agreements by suspending individualized loan-level review and attempting instead to use sampling and extrapolation as a mechanism to assess loan insurability and possible remedies.

The centerpiece of how loans are to be reviewed for insurability and possible remedies is the Post Endorsement Technical Review ("PETR") process. In HUD's own words, the PETR process is "critical to the success of the Direct Endorsement (DE) program." HUD 4155.2 9.B.1.b. PETRs have always involved HUD's loan-by-loan review of FHA-insured loans originated by Quicken Loans, as described

above.  In the overwhelming majority of instances, based on Quicken Loans'
response to HUD's preliminary finding, HUD decided that its preliminary finding
was in error or was not material to the insurability of the loan, or that HUD's
concern had been addressed or mitigated (by, without limitation, providing missing
documentation or explaining a discrepancy).  For instance, HUD's data from one
recent quarter show that it reverses course after issuing a PETR as much as 85% of
the time.

The PETR process not only resolves any issues of insurability and remedies,
it also provides Quicken Loans valuable insight into how HUD will apply its
guidelines to the many factors involved in the underwriting of a loan.  The PETR
process, and the loan-level mandate in general, also defines for the parties which
types of issues are material to insurability and to HUD, and often results in
concessions by HUD that the stated guidelines should be interpreted a certain way,
and do not apply as written under certain circumstances or when sound
underwriting judgment otherwise justified.  Quicken Loans has relied on those
results, as well as on other communications with FHA on guidelines interpretation,
in making other FHA loans.

The parties' agreements also incorporated the expectation and understanding
that sampling and extrapolation would not be used for purposes of evaluating the
insurability of individual FHA loans that had never been individually reviewed, or

any associated remedies.  Sampling was never used for this purpose, and is antithetical to loan-level review.  Moreover, HUD acknowledged in a Federal Register notice filed in July 2013 that sampling was not being used to evaluate FHA loan insurability and would not be used for that purpose unless and until HUD changed its policy and, even then, would only be applied to loans made after any policy change.  78 Fed. Reg. 41075 (July 9, 2013).

To the extent HUD retained discretion as part of the insurance loan contracts, it was required to exercise that discretion in good faith and in line with the parties' reasonable expectations and course of dealing.  This prevented HUD from changing its approach radically, such as abandoning the longstanding loan-by-loan process for reviewing closed loans for insurability and associated remedies.

### Second Affirmative Defense

The United States' claims are barred by HUD's breaches of its statutory, regulatory, programmatic, common law, and/or contractual duties.

More specifically, among other conduct, in 2013 HUD announced that it would no longer honor the parties' contractual agreement that individual loan-level review would be the method used to review closed loans for insurability and possible remedies.  That announcement came on June 24, 2013, by letter in which HUD announced that it was suspending the PETR process and all HUD Quality

Assurance Division reviews for loans underwritten by Quicken Loans between September 1, 2007 and December 31, 2011. The notice went so far as to state that HUD would not even respond to any questions or requests by Quicken Loans to discuss a single one of those loans, depriving Quicken Loans of HUD guidance on its interpretation of the guidelines that every other lender received on loans endorsed during the relevant time period and which HUD knew is "critical" to lenders.

HUD also breached its duties as an insurance company that promised to stand behind the FHA loans made by Quicken Loans and gladly accepted billions of dollars in premiums. The government is now seeking to shift losses flowing from those promises onto Quicken Loans, since a number of loans went into default due to borrowers' individual circumstances, many because of the recent recession. To bolster its improper conduct and to seek to force Quicken Loans to pay for the insurance HUD was supposed to provide, the United States and HUD have invented and rely upon ungrounded allegations of underwriting deficiencies that are factually wrong, are inconsistent with FHA underwriting guidelines and interpretations and the parties' agreements, involve only immaterial errors that did not affect the insurability of the loan, or reflect sensible underwriting judgment of the type HUD routinely has agreed is acceptable. Among the frivolous positions taken by the government in an effort to impose False Claims Act and common law

liability are that Quicken Loans purportedly miscalculated a borrower's income by as little as $17 and purportedly lent another borrower $26 too much on a $99,500 loan.

The government has even sued its insured, Quicken Loans, contrary to the duty that insurers have never to do so in an effort to shift losses onto the insured.

The government also has breached the duties and obligations for other reasons set forth in this Answer, including by suing about released loans and about loans HUD reviewed and accepted.

### Third Affirmative Defense

The United States' claims are barred, in whole or in part, by principles of contract and law that arise by virtue of HUD's status as an insurer.

In issuing the Mortgage Insurance Certificate, HUD agreed to provide insurance to the mortgagee, Quicken Loans, and accepted special duties to its insured. Among those duties, HUD agreed to act in good faith; to handle claims and issues of insurability fairly and consistent with its general claims-handling processes and requirements (including to use loan-level review to evaluate insurability and possible remedies); to construe the insurance contract reasonably and in light of the expectation that the risk of borrower default is insured and therefore the responsibility of HUD; and to honor its insurance obligations. HUD also accepted a fiduciary duty as a result of HUD's position of dominance and

control over mortgagees who participate in the FHA Program and of HUD's provision of insurance to Quicken Loans. Quicken Loans reasonably relied on the expectation that HUD would honor its commitments and act consistent with the agreements it made to insure each loan. HUD was aware of these duties, and of Quicken Loans' reliance on it.

An insurer in HUD's position also may not seek to recover from the insured the loss that the insurance company is supposed to shoulder. Otherwise, the insured becomes the insurer and the purpose of the insurance is nullified. Yet, this lawsuit attempts to achieve exactly this result—seeking to recover from the insured, Quicken Loans, losses that were paid under the insurance—and so the United States is barred from doing so.

## Fourth Affirmative Defense

The United States' claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, and abandonment. Among other grounds, this defense arises based on HUD's conduct in approving loans made by Quicken Loans; in making interpretations of underwriting rules which modified, clarified, or otherwise changed certain grounds of alleged violations on which the United States bases such claims; in eschewing any reliance on sampling to review a loan's insurability, and instead agreeing that loan-level review would be the sole mechanism used for

111

such purposes; in accepting premiums on the loans; and in the course of its contractual relationship with Quicken Loans.

### Fifth Affirmative Defense

The United States' claims are barred, in whole or in part, by the doctrine of estoppel. Among other grounds, this defense arises based on HUD's conduct in approving loans made by Quicken Loans; in making interpretations of underwriting rules which modified, clarified, or otherwise changed certain grounds of alleged violations on which the United States bases such claims; in eschewing any reliance on sampling to review a loan's insurability, and instead agreeing that loan-level review would be the sole mechanism used for such purposes; in accepting premiums on the loans; and in the course of its contractual relationship with Quicken Loans, each of which induced Quicken Loans to rely on to its detriment in making hundreds of thousands of loans.

### Sixth Affirmative Defense

The United States' claims are barred, in whole or in part, by the doctrine of unclean hands and unjust enrichment. Among other grounds, this defense arises based on the HUD's conduct in inducing Quicken Loans to become and maintain its status as a large participant in the FHA program; in approving loans made by Quicken Loans; in working with Quicken Loans in making interpretations of underwriting rules; in eschewing any reliance on sampling to review a loan's

insurability and instead agreeing that loan-level review would be the sole mechanism used for such purposes; and in accepting premiums on the loans but then suing Quicken Loans, taking contrary positions and seeking to retain all of the economic benefits of loans made between September 1, 2007 and December 31, 2011.

## Seventh Affirmative Defense

The United States' claims are barred, in whole or in part, by the doctrines of settlement, release, and accord and satisfaction.  Among other grounds, this defense arises because certain loans made during the subject period are subject to binding settlement agreements.

More specifically, and without limitation, during the course of its business and as discussed elsewhere in this Answer, Quicken Loans had agreed to indemnify HUD as to some loans, including certain loans that ultimately became claims as defined within the scope of this lawsuit.  Those indemnifications resolved all disputes about the loans.  This suit, however, seeks to recover under the False Claims Act for those same loans, which not only is barred by this defense and breach of contract, but also is in bad faith.

## Eighth Affirmative Defense

The United States' claims are barred, in whole or in part, because Quicken Loans' conduct was in compliance with, in substantial compliance with, justified

by, and/or excused by applicable guidelines, programs, or contracts, including those materials as interpreted, modified, or superseded by decisions, directions, and concessions made by HUD employees and contractors answering lenders' questions, handling PETR reports and subsequent followup, and providing other guidance.

### Ninth Affirmative Defense

The United States' claims are barred, preempted or limited, in whole or in part, by the rights, limitations and remedies of the comprehensive FHA program, including the mandatory procedures by which loan insurability can be assessed and the limited circumstances in which a remedy is permitted.

### Tenth Affirmative Defense

The United States' claims are barred by a failure to satisfy conditions precedent, including without limitation exhaustion, established by the FHA program and the parties' agreements.

### Eleventh Affirmative Defense

The United States' claims are barred, in whole or in part, by HUD's admissions, concessions, approval, and acquiescence arising from HUD review and clearance of many closed loans under the PETR process and otherwise, often with an explicit exchange of correspondence.  Quicken Loans relied on those determinations.

## Twelfth Affirmative Defense

The United States has failed, refused, and/or neglected to take reasonable steps to mitigate its damages, if any, thus barring or diminishing any recovery.

More specifically, and without limitation, for each loan, the government had a duty to take reasonable steps to sell the secured property to recoup a portion, or all, of any default-related loss. Regulatory requirements mandate that such sales be reasonable and competitive, intended to maximize recoveries so that the net loss is minimized or eliminated: "at the list price based on Market Value, reflecting the highest and best use in the current market, competitive with Properties being offered by other sellers." HUD Handbook 4000.1.IV.B.2.b. This is also a contractual and legal requirement under common law, the implied covenant, and general principles of insurance and subrogation. On information and belief, despite these requirements, HUD failed to take reasonable steps to market and sell the properties. Instead, HUD had a practice of poorly executing property sales and of selling properties to Wall Street traders at below-market values.

## Thirteenth Affirmative Defense

Quicken Loans is entitled to the benefit of any agreement, arrangement, or other circumstance by which HUD has received or has a right to receive indemnity, payment, claim reduction, or other amounts from or with respect to any third party with respect to any of the loans at issue in this lawsuit. The United States' claims

are barred to the extent that the United States has waived or surrendered or will have waived or surrendered its rights, or has otherwise chosen or will otherwise choose to forego any recovery from a third party.

## Fourteenth Affirmative Defense

If the United States has sustained any injuries or incurred any expenses (which Quicken Loans denies), they may not be recovered, in whole or in part, due to intervening or superseding events, factors, occurrences, or conditions that were in no way caused by Quicken Loans and for which Quicken Loans is not responsible, including the acts or omissions of third parties, borrowers, HUD, and other government agencies.

For example, a lender's adherence to HUD guidelines does not and cannot guarantee that the borrower will not default or that a loss will not be caused on the loan.  No matter how thoroughly and carefully a loan is underwritten, every loan presents a risk that it will not be repaid and a loss will result even after the property securing the loan is sold through foreclosure.  Borrowers become ill, die, lose their jobs, get divorced, or otherwise lose their ability or willingness to re-pay the loan. Such events are not known or predictable with any certainty at the time the loan is made.  Such losses are neither actually caused nor proximately caused by Quicken Loans, and cannot be the basis of liability.

### Fifteenth Affirmative Defense

The United States' claims are barred, in whole or in part, because they violate the Due Process Clause of the United States Constitution to the extent that the United States seeks to prove its causes of action as to only a subset of the loans at issue, thereby depriving Quicken Loans of due process of law, including the traditional means of defending itself.

### Sixteenth Affirmative Defense

The United States' claims are barred, in whole or in part, because they violate Quicken Loans' right to a jury trial under the Seventh Amendment to the United States Constitution to the extent that, *inter alia*, the United States attempts to deprive Quicken Loans of its right to have a jury determine whether Quicken Loans is responsible for the alleged injuries, damages, or harms as to each loan or claim on which the United States purports to have incurred damages, costs, and/or other expenses.

### Seventeenth Affirmative Defense

Any damages and/or penalties sought against Quicken Loans that are in excess of actual damages suffered by the United States violate the Fifth, Sixth, and/or Eighth Amendments of the United States Constitution.

## Eighteenth Affirmative Defense

The United States' claims are barred, in whole or in part, by the applicable statute of limitations contained in or applicable under the False Claims Act, state law, and common law principles.

## Nineteenth Affirmative Defense

The United States' claims are barred in whole or in part by recoupment and/or set-off.

## Twentieth Affirmative Defense

The common law causes of action are barred, in whole or in part, by the economic loss rule and similar doctrines that preclude recovery in tort to parties with an express contractual agreement.

## Twenty-First Affirmative Defense

The common law causes of action are barred, in whole or in part, by the doctrines of contributory negligence and/or comparative negligence.

## Twenty-Second Affirmative Defense

The common law causes of action are barred, in whole or in part, by the doctrine of assumption of risk. More specifically, and without limitation, as the largest mortgage insurer, FHA should have been and in fact was aware of the risks it was assuming for FHA-insured loans. FHA cannot renege on its insurance commitments and shift the insurance risk of loss back onto Quicken Loans.

### Twenty-Third Affirmative Defense

The United States' claims are barred, in whole or in part, by the doctrine of laches due to the United States' unreasonable and prejudicial delay in asserting claims.

### Twenty-Fourth Affirmative Defense

The United States' claims are barred, in whole or in part, because the United States had actual or constructive knowledge of, or was willfully blind to, the misrepresentations or omissions alleged.

### Twenty-Fifth Affirmative Defense

The United States' claims are barred, in whole or in part, because and to the extent that Quicken Loans' alleged statements and certifications were based on or represented non-actionable opinions.

### Twenty-Sixth Affirmative Defense

The United States' claims are barred, in whole or in part, by the one recovery rule.

### Twenty-Seventh Affirmative Defense

The Complaint fails to state a claim for which relief may be granted for reasons including those set forth in the previously-filed Motion to Dismiss (ECF No. 15).

### Twenty-Eighth Affirmative Defense

Quicken Loans hereby gives notice that it intends to rely on all defenses to the Complaint's causes of action, and to require strict proof of each element of each cause of action as to each loan alleged to contain or reflect an actionable false certification, or breach of duty, or to have otherwise given rise to the alleged damages.

## Twenty-Ninth Affirmative Defense

Quicken Loans is entitled to its attorney's fees because and to the extent the United States' claims are not substantially justified and/or are inconsistent with the actions and statements of HUD in administering the FHA program.

Quicken Loans herein reserves the right to assert additional affirmative defenses that become known to it during the course of this action.

## PRAYER FOR RELIEF

WHEREFORE, Quicken Loans demands that judgment be entered in its favor and against Plaintiff the United States in all respects; that Quicken Loans be awarded its attorney's fees and costs incurred; and that the Court grant Quicken Loans such other and further relief as is deemed just and equitable.

## DEMAND FOR JURY TRIAL

Quicken Loans demands a jury trial as to all issues so triable.


Dated:  March 31, 2017                    Respectfully submitted,

                                         QUICKEN LOANS INC.

                                         By its attorneys,

                                         /s/ Jeffrey B. Morganroth
Thomas M. Hefferon                       Jeffrey B. Morganroth
Sabrina M. Rose-Smith                    **MORGANROTH &**
W. Kyle Tayman                           **MORGANROTH, PLLC**
**GOODWIN PROCTER LLP**                  344 North Old Woodward Avenue
901 New York Avenue, NW                  Suite 200
Washington, DC  20001                    Birmingham, MI 48009
Tel.:  202.346.4000                      Tel.:  248.864.4000
Fax:  202.346.4444                       Fax:  248.864.4001
thefferon@goodwinlaw.com                 jmorganroth@morganrothlaw.com
srose-smith@goodwinlaw.com               P41670
ktayman@goodwinlaw.com

## **LOCAL RULE CERTIFICATION**

I, Jeffrey B. Morganroth, certify that Quicken Loans' Answer and Jury Demand complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

/s/ Jeffrey B. Morganroth
Jeffrey B. Morganroth

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2017, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.


/s/ Jeffrey B. Morganroth