UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**UNITED STATES' AND MOTION AND BRIEF TO COMPEL DISCOVERY**

## Motion

The United States respectfully moves to compel Quicken Loans, Inc.'s, ("Quicken's") production of documents relating to three categories: 1) select loans the United States will use to prove its case; 2) the management-exception and value appeal schemes; and 3) scienter. The Parties met and conferred on the topics discussed below on April 26, 2017, but were unable to obtain concurrence in the relief sought. A Proposed Order is attached.

## Statement of Issues Presented

1. Are all documents related to the subset of loans the United States intends to use to prove its case relevant?

2. Is the United States entitled to fulsome discovery on the fraudulent schemes it properly pled in its Complaint?

3. Are documents concerning profit, compensation, and disciplinary action relevant to whether Quicken acted with the requisite scienter under the False Claims Act?

## Most Appropriate Authority for Relief Sought

1. Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401; *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4094115 (E.D. Mich. July 7, 2015) (Goldsmith, J.)

2. *U.S. ex rel. Bledsoe v. Cmty. Health Servs., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007); *U.S. v. Quicken Loans, Inc.*, --- F. Supp. 3d ---, 2017 WL 930039 (E.D. Mich. March 9, 2017) (Goldsmith, J.)

3. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 848 (6th Cir. 2007)

## Background

The parties engaged in nine months of limited discovery while this case was pending in the District of Columbia. During that time, the United States issued document requests for all documents related to 487 loan files (the "Loan Selection") the United States expects to use to prove its case, which include the 350 loans in its random sample (the "Sample") and 137 other loans the United States believes are probative of Quicken's scienter and corporate wide scheme of fraudulent conduct. In addition, the United States sought a targeted set of documents related to Quicken's fraudulent scheme to endorse ineligible loans for FHA insurance, including documents related to the management exception and value appeals schemes, and scienter.

In the interest of compromise, the United States agreed to delay discovery into appraisals until the earlier of October 1, 2016, or the decision on Quicken's Motion to Dismiss. Even after October 1, 2016, however, Quicken refused to produce documents related to appraisals. The United States also moved to compel the production of certain documents related to the Quicken's mortgage bankers, who are a borrower's first and primary point of contact, and documents related to profit. The D.C. Court issued a minute order granting that motion in part on October 24, 2016. *See* D.D.C. Dkt. 46, attached as Exhibit A. Quicken has not produced documents in response to that Order, nor searched to see if responsive documents exist. On

November 14, 2016, the case was transferred to this Court and the parties agreed to stay discovery. Initially, Quicken withheld relevant documents, claiming the documents would become irrelevant after its motion to dismiss was decided. But still, Quicken continues to refuse to produce documents in these three categories despite their clear relevancy to the allegations this Court affirmed as well pled, and without substantiating any claims of burden.

## Argument

"Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case." *Keathley v. Grange Ins. Co. of Mich.*, No. 15-11888, 2017 WL 227952, at *2 (E.D. Mich. Jan. 19, 2017) (Majzoub, M.J.) (citing Fed.R.Civ.P.26(b)(1)). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Conclusory and unsubstantiated [claims of burden] are insufficient to warrant precluding a clearly important and relevant request." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4094115, at *4 (E.D. Mich. July 7, 2015) (Goldsmith, J.) (citing Fed.R.Civ.P. 26(b)(2)(C)(iii)). The documents the United States seeks to compel Quicken to produce, as articulated below, are all clearly important and relevant. Quicken has only made conclusory

and unsubstantiated claims of burden, and has produced many similar documents, indicating that any purported burden is in fact reasonable and proportional to the needs of the case. Therefore, this Court should order Quicken to produce the requested documents.

## I. Documents Related to the United States' Loan Selection

Most problematically, Quicken has refused to produce key documents directly related to the small subset of loans that comprise the Loan Selection. When Quicken has offered a compromise, it has limited its offer to the loans in the Sample. Quicken has articulated no specific burden concerning the production of documents for an additional 137 loan files, and the loan files requested by the United States are highly relevant to claims this Court decided were well pled, as they are particularly probative of the fraud schemes identified in the complaint, and Quicken's knowledge thereof. All documents pertaining to the loans in the Loan Selection are highly probative of falsity, materiality, and knowledge, and are key to the case. This Court should order their production.

### a. Documents Related to Appraisals

Despite agreeing to provide appraisal related discovery by October 1, 2016, Quicken has provided no response as to documents related to appraisals. The United States seeks key documents specifically related to the requested loan files, including: communications between Quicken and any appraiser or any appraisal management

company; documents concerning value appeals; and documents concerning any value provided to the appraiser or appraisal management company; as well as documents related to Quicken's policies, procedures, and practices related to appraisals and value appeals. *See* United States' First Set of Requests for Production (specifically, requests 8, 59, 72-76, and 101-104), attached as Exhibit B, and United States' Second Set of Requests for Production (specifically, requests 5, 11, 16-19), attached as Exhibit C. These documents are needed for the United States' review of the Loan Selection. The United States asks the Court to order Quicken to respond within 3 days and complete production of relevant documents, other than emails not related to the Loan Selection, within 30 days, so the United States can obtain these key documents, assess any deficiencies in Quicken's productions, and perform its review of the Loan Selection. While most important for files that relate to the Loan Selection, the United States requests the Court enter this order for the broader set of appraisal documents necessary to prove Quicken's schemes to defraud.

Quicken has also refused to produce Title Source Inc.'s (TSI) records, objecting to the United States' definition of Quicken as including TSI. TSI is the company Quicken used as its appraisal management company and both are wholly-owned subsidiaries of Rock Holdings, Inc. Quicken has argued that it has no obligation to search or produce any TSI records because TSI is a separate company. But Quicken has refused to produce any agreements with TSI, precluding an

assessment as to whether such agreements provide for record-sharing on demand. The Court should order Quicken to immediately produce these agreements.

Moreover, it is clear that TSI records are within Quicken's possession, custody, or control, *In re Bankers Trust Co.,* 61 F.3d 465 (6th Cir. 1995) (standard is whether the party has the legal right to obtain the documents). For the entire time between 2007 and 2011, TSI provided appraisal management, title, and other services to Quicken without any written agreement between the entities, though one is presently in place. This relationship makes clear that Quicken and TSI were, and are, operated as one entity. Quicken provided TSI with borrowers' protected financial information and charged borrowers fees on behalf of TSI, prohibited activity if Quicken had no practical control over TSI. *See* 16 C.F.R. § 314(d)(2). TSI also apparently made a practice of distributing excess profits to Quicken, further demonstrating the interrelated nature of the two companies and the control Quicken exerted over TSI. *See* Deposition of Colleen Ramsyy 12:14-13:11, *Alig v. Quicken Loans and Shea et al. v. Quicken Loans*, Civ. Action No. 5:12-cv-114, 5:12-cv-115 (N.D.W.V.), attached as Exhibit D.

  b. *Loan Level Emails and Loan Journal Notes*

Quicken has withheld emails and Loan Journal Notes responsive to the United States' document requests pertaining to the Loan Selection based solely on an unfounded relevancy objection. *See* Exhibit C, specifically, requests 4, 6, and 12.

Specifically, Quicken stated that it will not produce email communications between Quicken and the borrowers on loans in the Loan Selection except for those that pertain to underwriting. Quicken has specifically stated that it will not produce emails that concern selecting the loan product for the borrower, the pricing of the loan, and other email communications with the borrower early in the lending process. However, these communications are highly relevant to the ultimate question of the loan file review—whether the loan was eligible for FHA mortgage insurance. They evidence the decision made by Quicken and the borrower to obtain an FHA-insured mortgage, the support for the decision, and the representations Quicken made to the borrower regarding the proposed mortgage's qualification for FHA insurance. Moreover, many of these emails are responsive to Judge Walton's October 24, 2016 order relating to mortgage bankers, see Exhibit A, yet Quicken has not even searched for them.

Similarly, Quicken is withholding Loan Journal Notes written after December 31, 2011 because Quicken believes that Loan Journal Notes written after a loan was underwritten cannot be relevant. Loan Journal Notes are notes written by Quicken employees about a specific loan that are highly relevant to whether a loan is eligible for FHA mortgage insurance, and Quicken's knowledge thereof. Quicken's arbitrary cut off ignores the very real possibility that notes written after the loan was underwritten could, among other things, address defects Quicken identified in the

-7-

loan file or conversations with the borrower concerning the borrower's financial condition at the time the loan was underwritten, providing evidence concerning not only falsity, but also Quicken's knowledge thereof. This Court should order the production of emails and Loan Journal Notes related to the Loan Selection where, as here, Quicken has articulated no burden in producing the documents.

To ease the burden on Quicken and in the interests of judicial economy, the United States has limited its most detailed discovery to the Loan Selection. Nevertheless, Quicken continues to improperly frustrate the United States' legitimate requests for all documents relevant to Quicken's decision to endorse these loans without articulating a burden. The documents relevant to the Loan Selection go to the very heart of this matter as they will serve as the foundational evidence of Quicken's knowing endorsement of ineligible FHA loans. This Court should order Quicken to produce all documents related to the Loan Selection, regardless of date or subject, in the absence of any specifically articulated burden.

## II.  Documents Related to Quicken's Management-Exception and Value Appeal Practice

If a complaint "pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, [plaintiff] may proceed to discovery on the *entire fraudulent scheme*." *U.S. ex rel. Bledsoe v. Cmty. Health Servs., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (emphasis added). This Court concluded that "the

-8-

Government has sufficiently alleged scienter for the management-exception process examples, thereby asserting plausible violations of the False Claims Act." *U.S. v. Quicken Loans, Inc.*, --- F. Supp. 3d ---, 2017 WL 930039, at *23 (E.D. Mich. March 9, 2017) (Goldsmith, J.). This Court also concluded that because "the Government has sufficiently alleged scienter relative to the value-appeals process examples, the Court denies [Quicken's motion to dismiss the value appeals allegations]." *Id.* at *28. Accordingly, the United States is entitled to discovery on "the entire [management-exception] fraudulent scheme" and on "the entire [value appeals] fraudulent scheme." After discussions with Quicken and in search of compromise, the United States has narrowly tailored its discovery concerning management-exceptions and value appeals for loans outside the Loan Selection to, in part, a limited universe of easily extractable tracking items that contain management-exception and requests, and management's ultimate decision in response to the request, and key information concerning value appeals. *See* Exhibit B, specifically, requests 63, 64, 68, 69, and 72.

Quicken has already written the code necessary to extract the requested data. Moreover, Quicken previously agreed to produce these requested tracking items, but has since changed course. Accordingly, the Court should order Quicken to produce the requested tracking items it previously agreed to produce.

-9-

### III. Other Documents Related to Quicken's Scienter

Quicken has refused to produce certain other documents relevant to Quicken's scienter, an element of the False Claims Act and core subject for discovery.

*a. Documents Evidencing the Compensation Incentives Paid by Quicken*

The United States specifically alleged Quicken paid speed bonuses and commissions, and sought specific documents and data pertaining to the ways and amounts that Quicken's employees were actually compensated for their work. *See* Exhibit B, specifically, requests 58-61. Quicken has withheld from production the data used to calculate compensation, including incentive-based compensation on both relevance and burden objections. *See* AMP Tables and Fields, attached as Exhibit E. Quicken has never substantiated its burden objections with any detail. The United States has continually offered to work with Quicken on tailoring the request to minimize the burden while providing the United States with the information needed to substantiate its allegations. While Quicken's improper compensation practices are not alleged to be an independent basis for FCA liability, they are highly relevant to the motives behind Quicken's alleged FCA violations, and are therefore probative and relevant. *See, e.g., Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 848 (6th Cir. 2007) (allegations of a defendant's motive and opportunity "may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct"). As Quicken has not

-10-

substantiated the burden and refused to discuss a compromise, the Court should order Quicken to produce all compensation related data.

### b. Documents Evidencing the Profit Earned by Quicken

As with the compensation data requested above, discovery regarding Quicken's profit from FHA mortgages is relevant to Quicken's motivations for its FHA lending and related processes, and thus, its knowledge regarding its violations of FHA requirements and approval of ineligible loans, and is responsive to the United States' requests. *See* Exhibit C, specifically, requests 30 and 31. Quicken was specifically ordered by Judge Walton to "produce to the plaintiff information regarding all profits, e.g., the difference between the costs Quicken Loans incurred marketing a loan and the funds Quicken Loans acquired by successfully securing an FHA loan for a borrower." *See* Exhibit A. Quicken has asserted that it has no documents responsive to this order—an order to produce "information regarding all profit"—despite common sense dictating, and its documents stating, otherwise. *See* QLFHA00249509_CONFIDENTIAL Old Bigopedia, attached as Exhibit F, and Exhibit E. This Court should order Quicken to produce this relevant information immediately.

### c. Documents Evidencing the Disciplinary Actions Taken by Quicken Against Underperforming Employees

Underperforming employees at Quicken can be given an "opportunity letter," a form of discipline and accountability. The United States is unaware of any other

-11-

disciplinary actions Quicken could, or did, take during the Lending Time Period to encourage originators and underwriters to adhere to FHA requirements. During discovery in this matter, Quicken has refused to produce opportunity letters despite the United States' request, arguing they are irrelevant, and the burden associated with production is too high. *See* Exhibit B, specifically, request 62. However, the prevalence and content of "opportunity letters" is highly probative of Quicken's knowledge of deficient underwriting and origination, as well as the care and remedial action Quicken took when confronted with a concerning practice or underperforming employee. Quicken has claimed burden because the documents are located in personnel files. To alleviate this burden, the United States has offered to accept the entire personnel files for the relevant Quicken employees. Quicken has also raised an objection based on M.C.L.A. 423.506 but failed to agree to a court order that would alleviate any concerns. *See Bowers v. Reutter,* 951 F. Supp. 666, 671 (E.D. Mich. 1997). This Court should order Quicken to either produce all opportunity letters or all relevant employees' personnel files.

Respectfully submitted,

| | |
|---|---|
| CHAD A. READLER<br>Acting Assistant Attorney General | By: */s/ Samuel J. Buffone Jr.*<br>Attorney, Commercial Litigation Branch<br>P.O. Box 261, Ben Franklin Station |
| DANIEL L. LEMISCH<br>Acting United States Attorney | Washington, DC 20044<br>(202) 616-2945 |

*Attorneys for the United States of America*

## Certificate of Service

I hereby certify that on May 3, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Jeffrey B. Morganroth
> MORGANROTH & MORGANROTH, PLLC
> 344 North Old Woodward Avenue, Suite 200
> Birmingham, MI 48009
>
> Thomas M. Hefferon
> William Kyle Tayman
> Sabrina M. Rose-Smith
> GOODWIN PROCTER LLP
> 901 New York Avenue, NW
> Washington, DC 20001

Additionally, copies of the sealed attachments were served via email to all counsel of record.

> /s/ Samuel J. Buffone._____
> Samuel J. Buffone
> Attorney, Commercial Litigation Branch
> P.O. Box 261, Ben Franklin Station
> Washington, DC 20044
> (202) 616-2945
> Email: Samuel.j.buffone@usdoj.gov