UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>QUICKEN LOANS INC.,<br><br>         Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**DEFENDANT QUICKEN LOANS INC.'S**
**MOTION TO COMPEL AND SUPPORTING MEMORANDUM**

Pursuant to the Court's April 20, 2017 Order (ECF No. 31), Defendant Quicken Loans Inc. ("Quicken Loans") hereby moves the Court to compel the Government to produce the following documents. Pursuant to Local Rule 7.1(a), counsel for Quicken Loans conferred with counsel for Plaintiff to seek concurrence for the relief sought by way of this motion; opposing counsel denied concurrence.

   a. Documents construing and applying the FHA guidelines at issue even if they relate to other lenders' loans;

   b. The thousands of responsive, non-privileged documents that the Government has withheld on the grounds that they are too confidential to share with Quicken Loans;

   c. Email responses from the FHA Resource Center to Quicken Loans;

   d. Documents comparing the performance of loans originated by Quicken Loans during the relevant time period to those of other lenders;

   e. Plaintiff's methodology for selecting its sample of 350 loans; and

   f. A Rule 30(b)(6) witness to answer questions to enable Quicken Loans to identify individuals from whom the Government should collect electronic documents and to select search terms for such documents.

In support therefore, Quicken Loans states as follows:

**I.    THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE THE DOCUMENTS QUICKEN LOANS SEEKS.**

   **A.    Documents Applying FHA Guidelines to Other Lenders' Loans.**

   1.    As the Court recognized in its Opinion on the Motion to Dismiss, the materiality element of the False Claims Act ("FCA") asks, in part, whether "FHA would . . . have insured the particular loans at issue in this case had it known of

Quicken's alleged noncompliance with underwriting requirements." ECF No. 25, at 37. A requirement "is not material simply because the Government h[ad] the *ability* to refuse payment or seek indemnification from Quicken for the alleged violations." *Id.* at 36 (emphasis added). Instead, the jury must decide *what really mattered* to the Government: what did its underwriting guidelines really mean—show they were construed and applied by the Government—and how FHA responded when confronted with alleged noncompliance with the guidelines.

      2.      After the Motion to Dismiss, this case involves four alleged practices that the Government asserts violated FHA requirements: value appeals, management exceptions, miscalculation of income, and "ignoring 'red flags.'" *Id.* at 12-35. Documents showing what the Government has done with loans reflecting these practices are therefore directly relevant. Moreover, materiality focuses on FHA's behavior, asking what FHA would have done had it discovered the alleged violations. *See id.* at 37. Documents showing the FHA's application of its requirements to the practices at issue are therefore relevant regardless of what lender originated the underlying loan. Quicken Loans requested such documents in, among other requests, its Request for Production ("RFP") 116, seeking "[a]ll Documents concerning HUD's interpretation stated at any time and to any person, lender, entity, government employee, government contractor, or court, of" each of the FHA guidelines on which the Government relies. *See* Ex. A, at 8.

3.  Quicken Loans has already discovered examples of such documents, so they indisputably exist. For example, in a 2012 and 2013 FHA Quality Assurance Division ("QAD") review of a Quicken Loans loan, FHA initially sought indemnification because of insufficient funds charges on the borrower's bank statement. *See* Ex. B. This is precisely the exemplar "red flag" that the Government pleads in its Complaint. *See* Compl. ¶ 173(d). But after Quicken Loans responded that no FHA rule required it to consider the insufficient funds charges, HUD rescinded its indemnification request. Exs. C, D.

4.  Despite the central relevance of these types of documents, the Government has refused to produce them unless they happen to involve a loan originated by Quicken Loans. But such documents are just as important to Quicken Loans' defenses when they relate to loans originated by other lenders. The documents show that when FHA actually applied the very requirements that the Government is relying on here, FHA did not treat them as material. Yet the Government is refusing to produce the vast majority of such documents on the sole ground that they happen to involve other lenders' loans. The Government made, and lost, precisely this same argument in the *Wells Fargo* case. *See* Ex. E.

5.  After refusing for nearly a year to produce any documents that were created in the context of loans originated by other lenders, the Government offered a purported compromise proposal on the eve of the April 18 status conference. But

the Government's proposal excludes (a) so-called PETR files, which routinely apply the FHA guidelines on which the Government relies; (b) QAD files applying the FHA requirements on which the Government relies, other than those which happened to have been produced in the *Wells Fargo* litigation, which involved a different lending time period and different FHA requirements; and (c) internal FHA memoranda and notes construing the FHA requirements on which the Government relies. *See* Ex. F. The Government's proposal also does not make any provision for email searches. The compromise would therefore exclude many of the most relevant documents, and so this motion became necessary.

6. The Court should compel the Government to produce all documents applying, interpreting, or construing the FHA guidelines that the Government alleges Quicken Loans violated, even if they involve another lender's loan. *See* RFP Nos. 116, 121-23, 125, 131-36, 138-39, 148, Ex. A at 8-13. This includes PETR files, QAD files, correspondence and memoranda, and a type of document called a HUD-2 exception request. The Court should also compel the Government to negotiate in good faith over search terms and document custodians for identifying electronically stored information ("ESI") relating to this same issue.

**B. <u>Non-Privileged Documents Withheld as "Attorneys' Eyes Only."</u>**

7. Since April 2016, the Government has unilaterally withheld over 8,000 responsive, non-privileged documents based on the Government's vague and

insulting "objection" that Quicken Loans cannot be trusted with them. The rules of discovery do not allow a party to object on the basis that relevant, non-privileged documents should be viewed by Attorneys' Eyes Only ("AEO"), and thereby grant themselves a protective order, rather than seeking protection from the Court, which is precisely what the Government did. The Government refused to compromise, insisting that the documents could only be shared with Quicken Loans' outside counsel and only one in-house attorney that the Government itself picked, but not with Quicken Loans' team members, its general counsel, or other members of the Quicken Loans legal department. And the Government refused Quicken Loans' request that it provide a log of documents or other justification for its extreme restriction to explain why each document could not be shared with Quicken Loans.

8. Quicken Loans is entitled to defend itself against the false allegations that it engaged in fraud. But the Government has prejudiced it by withholding over 8,000 documents and dozens of deposition transcripts from the *Wells Fargo* case. An AEO designation is "the most restrictive possible protective order." *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009). To be entitled to it, the Government must show its need for it "with a particular and specific demonstration of fact." *Federal-mogul Motorparts Corp. v. Mevotech L.P.*, No. 15-cv-13205, 2016 WL 47969, at *2 (E.D. Mich. Jan. 5, 2016); *Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan*, No. 11-

10561, 2012 WL 1936415, at *1 (E.D. Mich. May 29, 2012) (requiring "specific demonstrations of fact, supported where possible by affidavits and concrete examples"). The Government has not and cannot meet this standard.

9. Quicken Loans is a collection of real people who were involved in the underlying events and who are integral to Quicken Loans' defense of the false accusations against it. Quicken Loans is entitled to choose how to defend itself; it is not required to and does not delegate that task solely to lawyers, and instead intends to rely on its personnel as essential members of its defense team. But Quicken Loans cannot fairly defend itself if the Government is allowed to hide documents so that that its counsel cannot consult with Quicken Loans executives, managers, and operations team members to understand the Government's documents, explain key facts, identify errors in the Government's production, and help develop rebuttal evidence. And trial and deposition preparation will be impossible if there are thousands of documents that Quicken Loans' lawyers cannot discuss with Quicken Loans. *See Arvco Container*, 2009 WL 311125, at *6 ("Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant.").

10. The Government chose to bring this lawsuit and falsely accuse Quicken Loans of fraud, so it put these documents at issue and must now live with the consequences by allowing the facts to come out, without hiding them from the

very individuals it contends engaged in fraud. The Government cannot be allowed to thwart Quicken Loans defense based on pure mistrust that Quicken Loans could somehow misuse the information or gain a competitive advantage from documents, most of which are 5-10 years stale. Any concerns are addressed by designating the material "Confidential" under the protective order, preventing its use outside of this lawsuit, including for business purposes. *See* Ex. G ¶ 7.

### C. Email Responses from the FHA Resource Center.

11. The FHA Resource Center is a HUD office responsible for answering questions from consumers and mortgage companies about FHA lending. In response to Quicken Loans' document request for "[a]ll Documents concerning communications by Quicken Loans personnel with . . . the FHA Resource Center" (RFP No. 57, Ex. H at 11), the Government produced a document cataloguing Quicken Loans' inquiries to the FHA Resource Center. But that document does not include the responses sent by the FHA Resource Center or others at HUD to Quicken Loans' inquiries. The Government has refused to produce such documents, asserting that its production of "the standard answers" that FHA staff were instructed to provide to particular types of inquiries should be adequate, because "[a]ny answer from the Resource Center would be based on these standard answers." Ex. I, at 4. (Quicken Loans also sought the production of telephone call recordings with the FHA Resource Center, but that aspect of this request is the

subject of ongoing discussions between the parties. Quicken Loans is awaiting more information from the Government about the organization of the recordings.)

12. The answers FHA provided to Quicken Loans about FHA requirements are critical to this action. Quicken Loans should not be forced to rely on the Government's assurance that they "would be based on" standard answers. Quicken Loans requested, and is entitled to, the actual answers. And although any number of team members at Quicken Loans could have contacted the FHA Resource Center and received answers to questions, Quicken Loans did not track, compile, or preserve such answers in any particular way, so Quicken Loans does not possess all such answers. The Court should order them produced.

### D. Documents Comparing Quicken Loans and Other Lenders.

13. The Government has alleged that Quicken Loans undertook a multi-year scheme to defraud the U.S. Government by originating loans that did not comply with HUD's underwriting guidelines, causing hundreds of millions of dollars in losses to the U.S. Treasury. If the Government's allegations were correct, one would reasonably expect that Quicken Loans' loans would have performed worse than the average FHA lender, had more defaults within the first few months of the loan, and yielded higher than average defect rates when reviewed by HUD as part of the PETR process. And if instead Quicken Loans' loans performed better than average, with fewer early defaults and lower defect

rates as part of the PETR process, that would tend to confirm that no such scheme existed. Quicken Loans therefore requested, in RFP 67, documents comparing Quicken Loans' performance with other lenders'. *See* Ex. H, at 12.

14. Despite the clear relevance of these comparative documents to the Government's alleged scheme, the Government has refused to produce them to date. The Government possesses such documents, but has objected that they are irrelevant and asserted that "the burden of producing such documents is disproportionate to the needs of the case"—without offering any concrete compromise (just a vague offer of unspecified ESI searches). Ex. I, at 5. Only early this morning, in response to Quicken Loans' persistence, did the Government admit that the documents *might* be located within a single employee's files at HUD, but that it had not collected those files.

15. The Court should reject the Government's resistance and order the production of the comparative-performance documents that Quicken Loans seeks, including documents comparing early-payment default and material finding rates, as well as Mortgagee Performance Reports, for Quicken Loans' loans originated during the relevant time period (even if the documents were created later).

### E. The Government's Methodology in Selecting the Loan Sample.

16. Although the Government has now belatedly identified the 350 loans in its sample, it still refuses to identify its methodology in selecting those loans,

even though it has known that methodology for over a year, claiming that it will not do so until expert discovery is due, after the close of fact discovery. This position prevents Quicken Loans from probing the propriety and representative nature of the Government's sample in fact discovery. The Court should compel the Government to identify its sampling methodology in response to Quicken Loans' interrogatory no. 3, which it served on July 15, 2016. *See* Ex. J, at 2.

### F.     Rule 30(b)(6) Witness for Search Term and Custodian Selection.

17.    Unlike the Government, Quicken Loans did not have the opportunity to conduct pre-suit discovery in this matter. Quicken Loans is therefore unfairly disadvantaged in proposing search terms and custodians for the collection of ESI by the Government. Thus, it requested permission to take, on or before July 21, 2017, a single Rule 30(b)(6) deposition (of up to 7 hours) of person(s) knowledgeable of HUD's organizational structure, departments, personnel, and division of labor as it relates to the oversight, management administration, and day-to-day responsibilities for the FHA insurance program during the relevant time period, in addition to other depositions permitted by the parties' agreement.

18.    The Government did not oppose the principle behind this request, but refused to proceed except as a deposition by written questions. *See* ECF No. 30, at 40-41. But the very complexity and opacity of HUD's organizational structure that make a Rule 30(b)(6) deposition of this sort necessary makes the use of written

questions an ineffective and inefficient means of proceeding, and Quicken Loans needs the ability to propound follow-up questions in response to answers.

## II. THIS MOTION IS CONSISTENT WITH QUICKEN LOANS' REQUEST TO TRANSFER THIS CASE TO THIS COURT.

19. In opposing this Motion, the Government is likely to argue that Quicken Loans is estopped from seeking this discovery based on statements Quicken Loans made in seeking transfer of this case from the District of Columbia to this Court. That argument relies on a misrepresentation of what Quicken Loans said in seeking transfer, and the Court should reject it.

20. In support of its motion to transfer, Quicken Loans pointed out (correctly) that "the great bulk of the relevant evidence is in Detroit, including all of the loan files for the claim loans at issue, and all of Quicken Loans' emails and documents that will be necessary to rebut the Government's false allegations." Ex. K, at 19. But Quicken Loans also expressly acknowledged that witnesses and evidence outside Detroit would also be relevant, including HUD "witnesses who may provide additional support for Quicken Loans' defenses, to show that the DOJ's litigating positions as to what FHA guidelines or rules require, contemplate, or allow are simply not how FHA has ever interpreted or applied the requirements." *Id.* at 17. It is documents of precisely that sort that Quicken Loans now seeks. And Quicken Loans' statement in its reply brief supporting transfer that certain evidence "has no significance to the issues of misstatements, scienter,

and causation" relevant to the case related specifically to the administration of computer systems, claims processing, and payment management. *See* Ex. L, at 3. It is this evidence that Quicken Loans stated was "beyond the core liability issues" and would involve "limited discovery." *Id.* at 18. The discovery Quicken Loans now seeks is not in those categories, but relates instead to FHA's application and interpretation of its guidelines and the quality of Quicken Loans' underwriting. This discovery is centrally relevant to the case, and Quicken Loans was clear before transfer that it would be necessary in this case. *See* Ex. M, at 11.

## CONCLUSION

21. For the foregoing reasons, the Court should compel the production of the documents, information, and witnesses sought in this Motion.

Dated: May 3, 2017

Respectfully submitted,

QUICKEN LOANS, by its attorneys,

*/s/ Jeffrey B. Morganroth*

Thomas M. Hefferon
Sabrina M. Rose-Smith
W. Kyle Tayman
**GOODWIN PROCTER LLP**
901 New York Ave., NW
Washington, DC 20001
Tel.: 202.346.4000
Fax: 202.346.4444
thefferon@goodwinlaw.com
srose-smith@goodwinlaw.com
ktayman@goodwinlaw.com

Jeffrey B. Morganroth
**MORGANROTH & MORGANROTH, PLLC**
344 North Old Woodward Ave., Suite 200
Birmingham, MI 48009
Tel.: 248.864.4000
Fax: 248.864.4001
jmorganroth@morganrothlaw.com
P41670

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2017, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

*/s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth