# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> QUICKEN LOANS INC., ) <br> ) <br> ) <br> Defendant. ) <br> ) <br> ) | CIVIL ACTION NO.: 1:15-cv-00613-RBW <br><br> **QUICKEN LOANS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Quicken Loans makes the following first request for production to Plaintiff United States of America.  Quicken Loans requests that the United States answer each of the following requests for production no later than March 21, 2016, at the office of Quicken Loans' attorneys, Goodwin Procter LLP, 901 New York Avenue, NW, Washington, DC 20001, or at other such place as is mutually agreeable to the parties.

**DEFINITIONS**

1.   The term "concerning" means about, addressing, referencing, dealing with, reflecting, evidencing, regarding, or the subject of.

2.   The term "DE Lender" means any bank, lender, mortgage originator, or other entity that is or was approved under 24 C.F.R. § 203.3 to participate in the FHA program's Direct Endorsement Program as set forth in 24 C.F.R. § 203.5 at any time during the period September 1, 2007 through December 31, 2011.

3.   The terms "Direct Endorsement Program" or "DE Program" mean FHA's Title II mortgage insurance program pursuant to the National Housing Act and 24 C.F.R. Part 203.

4. The terms "Document" and "Documents" mean and include all correspondence; e-mails (hard copy or in digital form); text messages; memoranda; notes; records; ledgers; files; binders; handbooks; guidelines; research; manuals; work papers; spreadsheets; desk calendars; diaries; journal notes or entries; social media transmissions or postings; statistics; letters; telegrams; minutes; contracts; reports; studies; checks; invoices; statements; receipts; returns; warranties; guarantees; summaries; pamphlets; books; prospectuses; inter-office communications; offers; notations of any sort of conversations, telephone calls, meetings or other communications; bulletins; magazines; publications; printed matter; photographs; computer printouts; teletypes; telefax; worksheets; and all drafts, alterations, modifications, changes and amendments of any of the foregoing; tapes, tape recordings, transcripts, graphic or aural records or representations of any kind; and, electronic, mechanical, electric, magnetic, or digital records or representations of any kind which are in Plaintiff's actual or constructive possession, custody, or control.

5. The term "FHA loans" means, unless otherwise specified, Title II mortgage loans for single family mortgages originated under the Direct Endorsement Program.

6. The terms "FHA" and "HUD" refer collectively to the Federal Housing Administration; the United States Department of Housing and Urban Development; and any personnel, agency, or agent of either, including the HUD Office of Single Family Housing, and HUD Homeownership Centers.

7. The term "HUD-OIG" means the HUD Office of the Inspector General, and any personnel, agency, or agent of HUD-OIG.

8. The term "Neighborhood Watch" means HUD's Neighborhood Watch Early Warning System.

9. The term "Post Endorsement Technical Review" means Post Endorsement Technical Reviews (PETRs) of FHA lenders performed by HUD-FHA pursuant to HUD Handbook 4155.2.

10. References to the requirement that DE Lenders "self-report" FHA loans to HUD are to the requirements set forth in the HUD Handbook including, inter alia, HUD Handbook 4060.1 REV-1 CHG-1, Paragraphs 7-3J and 7-13.

11. Unless otherwise specified, the "Lending Time Period" for which information is sought is September 1, 2007 through December 31, 2011.

## INSTRUCTIONS

1. In responding to these document requests, Plaintiff need not reproduce any Document produced to Plaintiff by Quicken Loans in response to the April 27, 2012 Subpoena Duces Tecum from HUD-OIG; the May 4, 2012 Subpoena Duces Tecum from HUD-OIG; the June 2, 2012 Civil Investigative Demand ("CID") issued by the DOJ; or the September 4, 2012 CID issued by the DOJ.

2. These requests seek Documents in the possession, custody, or control of any officer, employee, or agency of the federal government, including HUD, HUD-OIG, and the Department of Justice ("DOJ").

3. Discovery specifically concerning value appeals and appraisal revaluations may be withheld at this time per the agreement of the parties.

## FIRST SET OF DOCUMENT REQUESTS

1. All Documents referred to or relied upon in preparing the complaint.

2. All Documents concerning, itemizing or summarizing any damages that Plaintiff seeks to recover in connection with this lawsuit.

3. All Documents that DOJ, HUD, or HUD-OIG have provided to any fact witness in connection with this lawsuit or any investigation of Quicken Loans, or concerning the subject-matter of this lawsuit or such investigation, and all Documents that any such witness has provided to DOJ, HUD, or HUD-OIG in connection with this lawsuit or any investigation of Quicken Loans, or concerning the subject-matter of this lawsuit or such investigation.

4. All witness statements, declarations, or affidavits that DOJ, HUD, or HUD-OIG have obtained in connection with this lawsuit or any investigation of Quicken Loans.

5. All transcripts or recordings of any interviews with any current or former Quicken Loans employees, agents, or vendors.

6. Documents sufficient to identify each mortgage loan that Plaintiff contends is at issue in this lawsuit.

7. All Documents concerning any mortgage loan identified in response to request number 6.

8. All Documents concerning the claims for insurance submitted in connection with any loan identified in request number 6.

9. All Documents concerning the allegation, in Paragraph 14 of the complaint, that "[i]neligible loans endorsed by Quicken have resulted in millions of dollars in existing losses to HUD and many additional loans are currently in default and will likely result in significant additional losses to the agency," including the specific payment records supporting these claims.

10. All mortgage insurance certificates for all "[i]neligible loans endorsed by Quicken" that Plaintiff claims resulted in losses in Paragraph 14 of the complaint.

11. Each Document Plaintiff alleges constitutes or reflects a "false" or "fraudulent" claim or certification, as alleged in Paragraphs 107-113, 124, 138, 148, 199-202, 204-205, and

207-208 of the complaint, including all Documents that identify, analyze, discuss, or refer to such "false" or "fraudulent" claims or certifications.

12. Each Document Plaintiff alleges constitutes or reflects "false records or statements material to false or fraudulent claims for payment," as alleged in Paragraphs 204 and 207 of the complaint.

13. Each Document Plaintiff alleges constitutes or reflects a "false" or "fraudulent" statement in connection with an FHA loan, as alleged in Paragraphs 199 and 204 of the complaint, including all Documents that identify, analyze, discuss, or refer to any such "false" or "fraudulent" statement.

14. All Documents concerning Quicken Loans' application and approval for Direct Endorsement Lender status.

15. All Documents concerning any evaluations or reviews of Quicken Loans' Direct Endorsement Lender status or performance.

16. Documents concerning HUD or HUD-OIG interpretations of annual certification obligations, including but not limited to the purpose and enforcement of such obligations, under the FHA program.

17. Documents sufficient to identify and describe TOTAL's analytical or decision making tools or applications as it existed and was used between September 1, 2007 and December 31, 2011, including (i) all algorithms, logic, and assumptions used in TOTAL; (ii) the information available from and the form of reports generated by TOTAL; and (iii) any credit risk scoring or evaluation models embedded within the TOTAL system.

18. All Documents concerning Plaintiff's claim in Paragraph 106 of the complaint that the "loan-level" certifications referenced in Paragraphs 87-89 and 104-105 of the complaint

5

"were knowingly false because . . . Quicken knew, deliberately ignored, or recklessly disregarded that it originated and underwrote loans that were not in compliance with HUD requirements."

19. All Documents, including where applicable HUD or FHA case binders, reviewed by Plaintiff in order to determine that certain FHA loans originated by Quicken Loans "did not meet all of HUD's requirements to qualify for FHA insurance" as alleged in Paragraphs 113, 186, 190, and 198 of the complaint.

20. All Documents, including where applicable HUD or FHA case binders, reviewed by Plaintiff in order to determine that certain FHA loans originated by Quicken Loans contained "unacceptable risk" as alleged in Paragraphs 113, 186, 190, and 198 of the complaint.

21. All Documents, including where applicable HUD or FHA case binders, reviewed by Plaintiff in order to determine that certain FHA loans originated by Quicken Loans contained "material underwriting deficiencies" as alleged in Paragraphs 113, 186, 190, and 198 of the complaint.

22. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning HUD's underwriting requirements.

23. All Documents concerning Plaintiff's claim that the "management exception" process described in Paragraphs 110, and 115-127 of the complaint resulted in the submission of false claims.

24. All Documents concerning HUD's and HUD-OIG's knowledge of Quicken Loans' exceptions practices, at any time during the Lending Time Period.

25. All Documents concerning HUD or HUD-OIG's interpretations of HUD's requirements as to the granting of exceptions in the FHA program, including internal communications about that subject which in any way comment on or reflect that interpretation.

26. Documents sufficient to show any HUD personnel's verbal or written instruction, direction, or interpretation to Quicken Loans concerning the granting of exceptions under the FHA program.

27. All Documents concerning Plaintiff's claim in Paragraph112 of the complaint that "Quicken also regularly misrepresented . . . a borrower's income."

28. All Documents concerning Plaintiff's claim in Paragraph 112 of the complaint that "Quicken also regularly . . . miscalculated a borrower's income."

29. All Documents concerning HUD's and HUD-OIG's knowledge of Quicken Loans' practices in evaluating and calculating applicant income, at any time during the Lending Time Period.

30. Documents sufficient to show any HUD personnel's verbal or written instruction, direction, or interpretation to Quicken Loans concerning proper calculation of borrower income under the FHA program.

31. All Documents concerning Plaintiff's claim that the "value appeal" process described in Paragraphs 111, and 131-143 of the complaint resulted in the submission of false claims.

32. All Documents concerning HUD's and HUD-OIG's knowledge of Quicken Loans' alleged practice of value appeals or value reconsideration, at any time during the Lending Time Period.

33. All Documents concerning HUD or HUD-OIG's interpretations of HUD's requirements as to value appeals or value reconsideration in the FHA program, including internal communications about that subject which in any way comment on or reflect that interpretation.

34. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning value appeals or requests for reconsideration of appraised value under the FHA program.

35. All Documents concerning the "prohibited commissions," or "speed bonuses that Quicken Loans paid underwriters," as Plaintiff alleges in Paragraphs 156-165 of the complaint.

36. All Documents concerning Plaintiff's allegation that Quicken Loans' underwriter personnel compensation system did not comply with FHA requirements, as alleged in Paragraphs 156-165 of the complaint, including all Documents that discuss, describe or concern HUD's requirements and the meaning of the term "commission."

37. All Documents concerning HUD or HUD-OIG's interpretations of HUD's requirements as to underwriter compensation in the FHA program, including internal communications about that subject which in any way comment on or reflect that interpretation.

38. All Documents concerning HUD's and HUD-OIG's knowledge of Quicken Loans' underwriter compensation or training practices, at any time during the Lending Time Period.

39. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning underwriter compensation under the FHA program.

40. All Documents concerning Plaintiff's claim in Paragraph 112 of the complaint that Quicken Loans "manipulated the data entered in the AUS to gain a TOTAL Accept/Approve

decision, and ignored obvious red flags that indicated a borrower would not be able to repay the mortgage."

41. All Documents concerning HUD or HUD-OIG's interpretations of how often, and under what circumstances DE Lenders were required to, were advised to, or were permitted to submit a single loan to TOTAL, including internal communications about that subject which in any way comment on or reflect that interpretation.

42. All Documents concerning HUD's and HUD-OIG's knowledge of Quicken Loans' alleged practice of submitting a single loan to TOTAL numerous times during the underwriting process, at any time during the Lending Time Period.

43. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning the submission of a single loan to TOTAL numerous times during the underwriting process.

44. All Documents concerning Plaintiff's claim in Paragraph 186 that "Quicken's quality control process failed to accurately identify the risk level of FHA loans with material underwriting deficiencies."

45. All Documents concerning (a) internal HUD, HUD-OIG, or FHA reviews or communications or (b) communications between HUD, HUD-OIG, or FHA and Quicken Loans concerning Quicken Loans' FHA quality control program or plan.

46. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning its quality control program, policies and practices.

47. All Documents concerning Plaintiff's claim in Paragraph 193 of the complaint that "Quicken systematically concealed the underwriting defects and ineligible loans it had

approved for FHA insurance by only reporting suspected borrower fraud to HUD, but failing to report other deficient loans to HUD."

48. All drafts of mortgagee letters concerning self-reporting, including but not limited to Mortgagee Letter 11-02.

49. All versions and revisions of HUD, FHA, or HUD-OIG instructions, user manuals, help documentation, training materials, and other Documents concerning Neighborhood Watch, including all versions and revisions of the selections available for categorizing self-reports and the content accessible via the Help menu selection within Neighborhood Watch.

50. All Documents concerning HUD or HUD-OIG's interpretations of self-reporting obligations under the FHA program during the Lending Time Period, including internal communications about that subject which in any way comment on or reflect that interpretation.

51. All FHA Homeownership Center Documents concerning regional deliberations, discussions, or interpretations of self-reporting obligations under the FHA program during the Lending Time Period.

52. Documents sufficient to show any HUD personnel's verbal or written instruction, direction or interpretation to Quicken Loans concerning self-reporting.

53. Documents sufficient to show all revisions and changes to HUD Handbooks 2000.4, 4000.2, 4020.1, 4060.1, 4060.2, 4155.2, 4165.1, 4165.2, 4330.1, 4330.4, and all HUD and FHA drafts and internal communications, interpretations, and commentary on such revisions and changes from 2007 to the present.

54. Each of the FHA underwriting and program guidelines, mortgagee letters, rules, regulations, and requirements in effect at any time from January 1, 2007 to the present, and all

HUD and FHA drafts and internal communications, interpretations, and commentary on revisions and changes, proposed or adopted.

55. The FHA Total Mortgage Scorecard User Guide in effect at any time from January 1, 2007 to the present, and all HUD and FHA drafts and internal communications, interpretations, and commentary on such revisions and changes, proposed or adopted.

56. All HUD and HUD-OIG materials concerning presentations delivered at any type of conference, training, or seminar, including but not limited to NREDC Annual FHA Mortgagees Conferences and Mortgage Bankers Association Conferences, concerning FHA loan underwriting, compensation for underwriters, quality control requirements, exceptions, calculation of applicant income, the proper use of TOTAL, self-reporting, HUD monitoring programs, or underwriter training and certification.

57. All Documents concerning communications by Quicken Loans personnel with any HUD Help Lines, hotlines, or email addresses – including the FHA Resource Center, FHA Homeownership Center hotlines or email addresses, the "contact us" email in FHA Connection, Underwriting_Questions@hud.gov, and answers@hud.gov – concerning FHA loan underwriting, exceptions, calculation of applicant income, the proper use of TOTAL, compensation for underwriters, self-reporting, or underwriter training and certification.

58. All "HUD rules" Plaintiff claims were violated by Quicken Loans, as alleged in Paragraphs 5, 10, 61, 87, 126(b), 138, 139(b), 140(b), 149(b), 150(b), and 173(b) of the complaint.

59. All HUD or HUD-OIG drafts and internal communications and commentary on Mortgagee Letter 2013-41.

60. All draft and final reports of any audits of Quicken Loans conducted by HUD or HUD-OIG.

61. All Documents concerning HUD's review, during the Lending Time Period, of any Quicken Loans internal monthly quality control review results.

62. All Documents concerning HUD or FHA findings or analyses concerning the correlation between underwriting risk factors and early default rates and/or the impact of underwriting deficiencies on overall claim rates.

63. All Documents concerning HUD or FHA findings or analyses concerning the correlation between borrower risk factors and early default rates and/or the impact of underwriting deficiencies on overall claim rates.

64. All Documents concerning whether and how "[t]he official of the United States charged with responsibility to act in the circumstances" was prevented from discovering the alleged conduct that forms the basis of Plaintiff's claims in the complaint until April 23, 2009 as alleged in Paragraph 202 of the complaint.

65. All Documents concerning how and when "[t]he official of the United States charged with responsibility to act in the circumstances" became aware of the alleged conduct that forms the basis of Plaintiff's claims in the complaint.

66. All Documents concerning how and when HUD or HUD-OIG first discovered the injuries Plaintiff alleges in the complaint that HUD suffered.

67. Documents sufficient to show HUD's data, for the Lending Time Period, on Quicken Loans' early payment default rate, compare ratio, and rate of acceptable to unacceptable PETR results, both as to Quicken Loans and relative to other DE Lenders.

68. All Documents concerning any communications or referrals from HUD or HUD-OIG to DOJ about any audit or review of Quicken Loans' FHA mortgage lending operations.

69. All Documents concerning any onsite audit of Quicken Loans, including:

(a) the audit file and all associated work papers, notes, and memoranda concerning the review of Quicken Loans conducted by the HUD Philadelphia Homeownership Center's Quality Assurance Division during the week of September 7, 2010, and resulting in a November 10, 2010 findings letter (the "2010 Review");

(b) Documents sufficient to identify all HUD personnel, HUD-OIG personnel, or any other individuals who assisted with the 2010 Review;

(c) all drafts of the 2010 Review findings letter; all Documents concerning HUD or HUD-OIG communications with Quicken Loans concerning the 2010 Review;

(d) all Documents concerning remedial, corrective, or other action contemplated or taken by HUD or HUD-OIG against Quicken Loans in response to the 2010 Review; and

(e) all correspondence and communications between HUD-OIG, HUD, or FHA and (a) any federal agency or department (including DOJ) or (b) the United States Congress concerning the 2010 Review.

70. All Documents concerning the manner in and date(s) on which DOJ learned the "facts material to the cause of action" asserted in Count 1 of the complaint against Quicken Loans," as alleged in Paragraph 202 of the complaint, including Documents sufficient to identify the individual "official" or officials who learned these facts.

71. All Documents concerning any Mortgagee Review Board consideration of Quicken Loans' performance or participation in the FHA program.

72. All Documents concerning every Post Endorsement Technical Review of FHA Loans underwritten by Quicken Loans during the Lending Time Period.

73. All Post Endorsement Technical Review work papers, notes, correspondence, and memoranda generated by HUD concerning any review identified in request number 72.

74. All Documents concerning HUD or HUD-OIG's communications with Quicken Loans concerning any Post Endorsement Technical Review identified in request number 72.

75. All Documents concerning communications during the Lending Time Period between HUD and Quicken Loans concerning the quality of FHA loans underwritten by Quicken Loans.

76. All Documents concerning HUD-OIG Hotline reports concerning FHA loans underwritten by Quicken Loans.

77. All Documents sufficient to identify the methodology and criteria HUD used to select Quicken Loans-originated loans to be reviewed in any Post Endorsement Technical Review.

78. All HUD audit or review documentation concerning Quicken Loans' FHA lending program, including internal correspondence, materials received for review, and external audit finding/corrective action correspondence.

79. All Documents concerning any remedial, corrective, or other action considered by HUD or HUD-OIG as a result of any HUD audit of Quicken Loans' FHA lending program.

80. Organizational charts sufficient to identify HUD, HUD-OIG, and FHA Homeownership Center management from 2007 through the present.

81. Documents sufficient to describe the data and information stored in, and the uses for, the HUD Quality Assurance Document Library System or "QLDS."

82. Documents sufficient to describe the data and information stored in, and the uses for, the HUD AARTS System.

83. Documents sufficient to identify all systems maintained by HUD to house FHA loan and DE Lender data (e.g., the Single Family Data Warehouse).

84. Documents sufficient to identify the software, data sets, data sources, database locations, back-up systems, and database administrators for each system identified in response to request number 83.

85. Documents sufficient to show the requirements of any document retention or destruction polices of HUD, HUD-OIG, and Plaintiff applicable during the Lending Time Period.

86. All Documents concerning the sale of any loan identified in request number 6 into any pool of mortgage loans.

87. All Documents concerning HUD's recovery on the sale of any properties securing the loans identified in request number 6.

88. For each loan identified in request number 6, produce Documents concerning the amount that HUD or FHA recovered through the sale of the property following default.

89. All Documents concerning any actions taken by Plaintiff or HUD to mitigate any damages claimed in this lawsuit.

90. All Documents concerning Plaintiff's allegation that Quicken Loans is a fiduciary to HUD, as alleged in Paragraph 41, 50, 96, 97, and 210-214 of the complaint.

91. All Documents concerning Plaintiff's allegation that Quicken Loans "breached its fiduciary duty to the FHA and HUD," as alleged in Paragraph 213 of the complaint.

92. All Documents concerning Plaintiff's allegation that Quicken Loans owed HUD "a duty of reasonable care," as alleged in Paragraph 216 of the complaint.

93. All Documents concerning Plaintiff's allegations that Quicken Loans breached its duties of reasonable care and/or due diligence to HUD, as alleged in the Third and Fourth Counts of the complaint.

94. All Documents that Plaintiff may use as an exhibit at any deposition, hearing, or trial in this lawsuit.

95. All Documents referenced by, or supportive of, Plaintiff's Initial Disclosures.

96. All Documents concerning the damages Plaintiff claims in this lawsuit and the method or formula used to calculate those damages.

97. All Documents Plaintiff, HUD, or HUD-OIG produced in *U.S. v. Wells Fargo Bank, N.A., et al.*, Case 1:12-cv-07527-JMF that mention Quicken Loans.

98. All transcripts of depositions of witnesses taken by any defendant in *U.S. v. Wells Fargo Bank, N.A., et al.*, Case 1:12-cv-07527-JMF, including Plaintiff, HUD, or HUD-OIG.

99. All Documents concerning complaints received by Plaintiff or HUD from any member of the public concerning Quicken Loans' FHA lending or any Quicken Loans FHA Loan.

100. All Documents concerning any information received by Plaintiff or HUD from any putative whistleblower concerning Quicken Loans' FHA lending.

Dated: February 19, 2016  Respectfully Submitted,

/s/ Jeffrey B. Morganroth
**Jeffrey B. Morganroth**
jmorganroth@morganrothlaw.com
D.C. Bar No. 421684
**MORGANROTH & MORGANROTH, PLLC**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
Tel.: 248.864.4000
Fax.: 248.864.4001


**Thomas M. Hefferon**
thefferon@goodwinprocter.com
D.C. Bar No. 461750
**Sabrina Rose-Smith**
srosesmith@goodwinprocter.com
D.C. Bar No. 494578
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2016, I caused a true and correct copy of the forgoing to be served upon counsel of record as of this date via United States Mail with a courtesy copy sent via e-mail.

Dated:  February 19, 2016                                   /s/ Sabrina Rose-Smith
                                                            Sabrina Rose-Smith
                                                            Attorney for Quicken Loans Inc.