UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

QUICKEN LOANS INC.,

      Defendant.
_____/

Case No. 16-cv-14050

HON. MARK A. GOLDSMITH

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (Dkt. 32) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL (Dkt. 33)

This matter is before the Court on the Government's motion to compel (Dkt. 32) and Defendant Quicken Loans Inc.'s motion to compel (Dkt. 33). A hearing on these motions was held on May 22, 2017. The Court addresses each motion in turn and, for the reasons stated below, grants, in part, and denies, in part, both of the parties' motions.

### I. STANDARD OF DECISION

Federal Rule of Civil Procedure 26 allows for broad discovery in litigation, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Although Rule 26 was amended in 2015 to include a "proportionality" requirement, the "basic tenet that Rule 26 is to be liberally construed to permit broad discovery" remains unaltered. State Farm Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 315 F.R.D. 220, 222 (E.D. Mich. 2016); Martin v. Bimbo Foods Bakeries Distribution, LLC, 313 F.R.D.1, 5 (E.D.N.C. 2016) ("The rules of discovery, including Rule 26, are to be given broad and liberal construction."). Relevance, in turn, "has been broadly construed to encompass any possibility that the information sought may be relevant to the claim

1

or defense of any party." Martin, 313 F.R.D. at 5; Tucker v. Momentive Performance Materials USA, Inc., 2016 WL 8252929, at *2 (S.D. W. Va. Nov. 23, 2016) (same).

When ruling on discovery-related motions, the district court has broad discretion to determine the proper scope of discovery, including whether a "discovery request is too broad and oppressive." Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007); Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 402 (6th Cir. 1998).

In analyzing the parties' motions, the Court utilizes these principles, including specifically the Rules' heightened concern with the proportionality of discovery.

## II. ANALYSIS

### A. The Government's Motion to Compel (Dkt. 32)

#### 1. Request for Documents Related to Appraisals

The Government requests the production of documents that it claims are specifically related to appraisals, including (i) "communications between Quicken and any appraiser or any appraisal management company"; (ii) "documents concerning value appeals"; (iii) "documents concerning any value provided to the appraiser or appraisal management company"; and (iv) "documents related to Quicken's policies, procedures, and practices related to appraisals and value appeals." Pl. Mot. at 5 (citing Pl. 1st Set of Prod. Requests ¶¶ 8, 59, 72-76, 101-104 (Dkt. 32-3); Pl. 2d Set of Prod. Requests ¶¶ 5, 11, 16-19 (Dkt. 32-4)).

For the 487 loans identified in attachment A to the Government's second set of requests for production, see Attach. A at 10-20 (cm/ecf pages) (Dkt. 32-4) — which the parties refer to as the "Loan Selection" — Quicken claims that it has already "produced the loan files, appraisals, loan journal notes, certain appraisal-related tracking items on the list of 573 specific tracking

items requested by the government, and appraisal-related emails." Def. Resp. at 2 (Dkt. 36).[1] In its response, as well as during the hearing, Quicken stated that, once discovery resumes in this case, it will produce the value appeals tracking items and any remaining appraisal-specific policies, procedures, and training documents. See id. at 2-3.

During the hearing, the Government stated that it would wait for Quicken's production regarding the value appeals tracking items, as well as the policies, procedures, and training documents, at which point the Government will determine what, if any, documents relating to appraisals it still contends have not been produced. Therefore, the Court denies this portion of the Government's motion without prejudice, except Quicken is ordered to fulfill its stated undertaking by June 9, 2017.

The Government also sought the production of documents relating to Title Source Inc., which the Government claims "is the company Quicken used as its appraisal management company and both are wholly-owned subsidiaries of Rock Holdings, Inc." Pl. Mot. at 5. Following the hearing, counsel for the Government informed the Court that the Government is no longer seeking these documents. Therefore, the Court denies this portion of the Government's motion without prejudice.

### 2. Request for Loan Journal Notes and Loan-Level Emails

The Government is seeking the production of loan journal notes and loan-level emails regarding the Loan Selection, Pl. Mot. at 6 (citing Pl. 2d Set of Prod. Requests ¶¶ 4, 6, 12),

---

[1] The parties use the term "Loan Sample" to refer to the 350 loans that the Government has selected, purportedly through the use of statistical sampling principles. The Government has also selected, by means not clearly spelled out, an additional 137 loans, from which it hopes to augment its evidence of alleged wrongdoing by Quicken. The 487 loans, comprising the 350 loan sample and the 137 additional loans, are denominated as the "Loan Selection."

3

arguing that these documents "go to the very heart of this matter as they serve as the foundational evidence of Quicken's knowing endorsement of ineligible FHA loans," id. at 8.

Regarding its request for loan journal notes, the Government contends that these documents are written by a Quicken employee about a specific loan and are "highly relevant to whether a loan is eligible for FHA mortgage insurance, and Quicken's knowledge thereof." Pl. Mot. at 7. Because each loan at issue in this case closed during the time period of September 1, 2007 to December 31, 2011, Quicken objects to the production of journal notes outside of this timeframe, arguing that such journal note entries are irrelevant to the underwriting decisions made on the loans. Def. Resp. at 5-6. The Government contends that this "arbitrary" end-date "ignores the very real possibility that notes written after the loan was underwritten could, among other things, address defects Quicken identified in the loan file or conversations with the borrower concerning the borrower's financial condition at the time the loan was underwritten." Pl. Mot. at 7-8. The Court agrees with the Government.

It is not uncommon for relevant information to be discoverable, even if such information falls outside the timeframe of actionable activity set out in a complaint. Parties may speak or write about past activities or transactions in a way that sheds relevant light on the innocent or guilty nature of their acts — and that light is not dimmed simply because the evidence was generated after the lapse of the period embracing the wrongful acts. In our case, for example, a journal note entered on January 2, 2012 relating to a subject loan would still be relevant, regardless of the fact that it was entered after the time period identified in the Government's complaint. Therefore, the Court overrules Quicken's objection, grants this portion of the Government's motion, and orders the production of all loan journal notes for the Loan Selection, regardless of the time a particular note was created or entered, by June 23, 2017.

Regarding its request for loan-level emails, the Government states that Quicken has objected to the production of emails concerning the selection of a loan product for the borrower, the pricing of the loan, and other email communications with the borrower early in the lending process. Pl. Mot. at 7. The Government argues that these "communications are highly relevant to the ultimate question of the loan file review — whether the loan was eligible for FHA mortgage insurance," because they are evidence of (i) the decision made by Quicken and the borrower to obtain an FHA-insured mortgage, (ii) the support for the decision, and (iii) the representations Quicken made to the borrower regarding the proposed mortgage's qualification for FHA insurance. Id. at 7. It wants all loan-level emails, except for so-called "sales scripts" (i.e., the generic sales pitches that are made to customers during the initial contact), which it expressly waived at the hearing.

In response, Quicken argues that the Government's request for all emails related to the Loan Selection, regardless of date or subject, should be denied because Judge Reggie Walton of the U.S. District Court for the District of Columbia previously considered and rejected the same request when this case was still in his court. Judge Walton specifically ruled that "information regarding mere sales tactics that did not contribute to information being submitted by Quicken Loans to the [FHA] need not be produced." Def. Resp. at 5 (quoting 10/24/2016 Order, Ex. A to Pl. Mot. (Dkt. 32-2). Instead, Quicken claims that Judge Walton "ordered only a targeted production of emails related to mortgage bankers," and that Quicken has completed its production of those emails for the Loan Selection. Id.[2]

---

[2] Quicken claims that it has also produced emails involving non-underwriters concerning topics of any conceivable relevance to underwriting, including (i) taking and preparing loans applications; (ii) collecting and verifying information material to loan applications; (iii) using TOTAL and evaluating or responding to its results; (iv) ordering and evaluating or responding to

5

This Court concludes that all loan-level emails for the Loan Selection are relevant and should be produced, except for "sales scripts." Because there is no transcript of Judge Walton's ruling, or of the conference that he conducted with counsel, this Court has only his minute order from which to discern his intent. Unfortunately, the order is cryptic, leaving some issues unclear. For example, Judge Walton provides, by way of "category 2" in his order, for the production of "representations or promises that mortgage bankers made to potential borrowers." But this is apparently limited by the phrase "but due to initial appraisals that would not permit Quicken Loans to fulfill those promises, resulting in Quicken Loans having property appraisals reevaluated and the appraisal values of the properties increased so that such representations or promises could be fulfilled." Looking beyond the incorrect syntax — which impedes a clear understanding of the import of this provision — it appears that this provision addresses promises about qualifications for a loan that could not be kept except by way of a request for a higher valuation of the borrower's property after an initial lower-than-hoped-for valuation.

Why Judge Walton would apparently limit the discovery in this fashion is not made clear by anything of record. And given that the Government's case goes well beyond allegedly improper value appeals, there is no principled basis for allowing Quicken to refuse to turn over documents that touch on other allegedly improper tactics, such as management exceptions or inflation of borrower income. The requested loan-level documents are the central repository of what Quicken representatives communicated to their customers about the loans and Quicken's practices. The Government is entitled to their production.

Therefore, the Court overrules Quicken's objection, grants this portion of the Government's motion, and orders the production of all loan-level emails for the Loan Selection,

---

appraisals; and (v) post-loan application activities related to credit risk or credit guidelines. Def. Resp. at 4-5.

except for the generic "sales scripts" that Quicken employees purportedly use during initial communications with a potential borrower.[3] This production shall be completed by June 23, 2017.

### 3. Request for Documents Related to Management Exceptions and Value Appeals

The Government is seeking the production of documents regarding "easily extractable tracking items" outside of the Loan Selection that contain (i) "management-exception and requests," (ii) "management's ultimate decision in response to the request," and (iii) "key information concerning value appeals." Pl. Mot. at 9 (citing Pl. 1st Set of Prod. Requests ¶¶ 63-64, 68-69, 72). The Government claims that Quicken has "already written the code necessary to extract the requested data." Id. During the hearing, the Government further explained that Quicken wrote a computer code for 573 tracking items, which was applied to the approximately 4,000 claim loans (representing all of the loans during the relevant period for which FHA insurance claims were submitted). This original code, according to Quicken, took approximately two to three weeks to write.

In response, Quicken argues that the Government's request for the production of management-exception and value-appeals tracking items "for every one of the 4,000+ claim loans" should be denied because it "did not serve a document request requesting them." Def. Resp. at 6-7. Quicken also argues that these documents would be "useless" and "irrelevant" because the Government does not seek all of the loan files and associated documents. Id. at 7.

The Court first finds that the Government's requests would appear to cover the documents being sought here. See, e.g., Pl. 1st Set of Prod. Requests ¶¶ 63 ("All documents and

---

[3] Courts may revisit their earlier orders, including pre-transfer orders by other judges. Gillig v. Advanced Cardiovascular Sys., Inc., 67 F.3d 586, 590 (6th Cir. 1995). Thus, to the extent this Court is revising an earlier ruling in this case by Judge Walton, it has the discretion to do so.

communications related to any Exception you requested or considered, including by not limited to Client Service Exceptions, Management Exceptions, Underwriting Exceptions, and CART Exceptions."), 64 ("All data or databases used to track, store, or identify any Exception."), 72 ("All documents related to the Value Appeal process at Quicken Loans, including any database used to track, store, or identify Value Appeals."). There is no language within these paragraphs in particular, or within the production request in general, to suggest that documents were limited to only the Loan Selection or Loan Sample.

The Court also finds that this evidence is relevant, even though the Government has not sought the complete loan files for all of the claim loans. Evidence of an allegedly wrongful practice might well show the mechanics of how Quicken personnel engage in illegal activity; it may also show different contexts or factors that may be relevant in understanding how an illegal practice is orchestrated by Quicken managers, and whether it is encouraged or punished. Whether additional facts or circumstances might be important to determine the ultimate significance of the evidence cannot be determined now. But nothing in the law of discovery requires that a discoverable item independently establish its significance; like evidence at trial, an item may be a building block with other evidentiary items to prove a proposition that is of significance to a party's case. State Farm, 315 F.R.D. at 222; Martin, 313 F.R.D.at 5; see also Tucker, 2016 WL 8252929, at *2; ("[R]elevancy in discovery is broader than relevance for purposes of admissibility at trial."); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Although Quicken may be required to write a new code for the limited tracking items sought by the Government, as suggested by Quicken's counsel during the hearing, the Court is

not persuaded that such an undertaking would be overly burdensome. Quicken has undoubtedly learned much from its earlier coding efforts that will likely facilitate new coding efforts.

Therefore, the Court overrules Quicken's objection, grants this portion of the Government's motion, and orders Quicken to produce the management-exception and value-appeals tracking items for the approximately 4,000 claim loans. This production is due by June 23, 2017.

### 4. Request for Documents Evidencing Compensation Incentives

The Government seeks "specific documents and data pertaining to the ways and amounts that Quicken's employees were actually compensated for their work." Pl. Mot. at 10 (citing Pl. 1st Set of Prod. Requests ¶¶ 58-61). Following the hearing, counsel for the Government informed the Court that the Government is no longer seeking these documents. Therefore, the Court denies this portion of the Government's motion without prejudice.

### 5. Request for Documents Evidencing Profit Earned

The Government seeks discovery of Quicken's profits, claiming that "Quicken's profit from FHA mortgages is relevant to Quicken's motivations for its FHA lending and related processes, and thus, its knowledge regarding its violations of FHA requirements and approval of ineligible loans." Pl. Mot. at 11 (citing Pl. 2d Set of Prod. Requests ¶¶ 30-31). To support its position, the Government claims that Quicken was already ordered by Judge Walton to produce "information regarding profits, e.g., the difference between the costs Quicken Loans incurred marketing a loan and the funds Quicken Loans acquired by successfully securing an FHA loan for a borrower." Pl. Mot. at 11 (quoting 10/24/2016 Order).

In response, Quicken argues that the Government's request for the production of all data related to profit or revenue from FHA loans (which Quicken claims would include loans on

which the Government cannot recover because they are either outside the relevant time period or never went to claim) is irrelevant to showing that a specific underwriter knowingly approved a bad loan. Def. Resp. at 9; see also id. at 10 ("The requested data is not relevant to any underwriting decision."). Quicken further states that it does not track profits loan-by-loan because profit includes the gain on the sale of the closed loan. Id. at 9-10 (citing Meller Decl. ¶¶ 11-17 (Dkt. 38)).

According to Quicken, Judge Walton previously resolved this issue, when he "agreed [with Quicken's position] and denied the [G]overnment's request for profit- or revenue-related data except as to loan-specific information regarding all profits, e.g., the difference between the costs Quicken Loans incurred marketing a loan and the funds Quicken Loans acquired by successfully securing an FHA loan for a borrower." Id. at 10 (quoting 10/24/2016 Order). The Government agrees that Judge Walton ordered profit information produced, but it claims that the Judge Walton did not limit it to loan-by-loan calculations.

Judge Walton's order does not expressly adopt either a loan-by-loan perspective or something more "macro." The Government states that it is content with certain specific items identified in confidential filings. See Exs. E & F to Pl. Mot. (Dkts. 39, 40). Quicken argues that the information will not be sufficient to learn everything necessary to determine "profit." Again, however, evidence does not need to embody or reflect a self-contained point of legal significance; it may become significant based on other evidentiary items. It is discoverable if it provides a useful and reasonable starting point for building a claim or defense. See State Farm, 315 F.R.D. at 222; Martin, 313 F.R.D. at 5; Tucker, 2016 WL 8252929, at *2. The profit documents identified in Exhibits E and F appear to be of such a character, in that they may

become the building blocks for matters of significance in the case. Quicken must produce those items by June 23, 2017.

### 6. Request for Documents Evidencing Disciplinary Actions Quicken Took Against Underperforming Employees

The Government sought the production of "[a]ll Opportunity Letters issued to any individual involved with the origination or underwriting of FHA loans." Pl. 1st Set of Prod. Request ¶ 62; see also Pl. Mot. at 11-12 (stating that opportunity letters were the only form of disciplinary action that "Quicken could, or did, take during the Lending Time Period to encourage originators and underwriters to adhere to FHA requirements"). Following the hearing, counsel for the Government informed the Court that the Government is no longer seeking these documents. Therefore, the Court denies this portion of the Government's motion without prejudice.

## B. Quicken's Motion to Compel (Dkt. 33)

### 1. Request for Documents Applying FHA Guidelines to Other Lenders' Loans

Quicken seeks the production of "all documents applying, interpreting, or construing the FHA guidelines that the Government alleges Quicken Loans violated, even if they involve another lender's loan," including "[Post Endorsement Technical Review ("PETR")] files, [Quality Assurance Division ("QAD")] files, correspondence and memoranda," and "HUD-2 exception request[s]." Def. Mot. at 4 (citing Def. 2d Set of Prod. Requests ¶¶ 116, 121-123, 125, 131-136, 138-139, 148 (Dkt. 33-2)). During the hearing, Quicken reasserted that it was only requesting documents related to the guidelines that the Government contends Quicken allegedly

violated in this case.[4]

Because the Government has not yet determined which, if any, of the 350 loans in the Loan Sample violated FHA guidelines, the Court denies this request without prejudice. Once the Government discloses the problematic loans within the sample and the guidelines which those loans purportedly violated, Quicken may renew its request for these additional lender documents; any objection by the Government shall be served within seven days of any renewed demand. In the meantime, the Court orders the Government to produce those documents outlined in the Government's compromise email regarding this request. See 4/17/2017 Email, Ex. F to Def. Mot. (Dkt. 33-7). This production shall be due by June 23, 2017.

### 2. Request for Non-Privileged Documents Withheld as "Attorneys' Eyes Only"

Quicken loans seeks over 8,000 "responsive, non-privileged documents that the Government has withheld on the grounds that they are too confidential to share with Quicken," Def. Mot. at 1, and that Quicken "cannot be trusted with them," id. at 5. According to Quicken, the Government will only provide these documents with an Attorney-Eyes-Only designation. See id. Quicken argues that the Government has failed to satisfy the burden for an Attorney-Eyes-Only designation with a particular and specific demonstration of fact. Id. at 5-6. Quicken also contends that designating this material as "Confidential" under a protective order would prevent its use outside of this litigation, including for business purposes. Id. at 7.

In response, the Government states that it is not withholding these documents based on an Attorney-Eyes-Only objection, but, rather, it has agreed to produce these documents, provided "adequate safeguards [are] in place to protect the sensitivity of the information." Pl. Resp. at 6.

---

[4] Following the hearing, counsel for Quicken informed the Court that Quicken is no longer seeking judicial intervention regarding the PETR files. Therefore, the Court denies this portion of Quicken's motion without prejudice.

There are two categories of materials that the Government seeks to protect: (i) "information related to HUD's function as a regulator which could allow Quicken to reverse-engineer certain ways in which HUD oversees lenders, and thus avoid enforcement"; and (ii) "proprietary information of Quicken's business competitors." Id. at 6-7.

Regarding the first category of materials, the Government contends that production would allow Quicken's "personnel [to] learn[ ] the exact parameters FHA uses to select a mortgage for review," thereby allowing Quicken to avoid FHA review in the future. Id. at 7; see also id. at 9 ("[A]s a regulator HUD needs to ensure the exact methods it uses to oversee the program are not known and circumvented"). Regarding the second category of materials, the Government contends that "it would be unfair and unjust to disclose to Quicken sensitive information collected from Quicken's competitors," id. at 9, which includes a "lenders' portfolio characteristics, risk of default, financial risk (including adjusted net income), and compliance risk, as well as many specific documents on lender's specific business practices," id. at 8.

The Government further states that, if Quicken's counsel believes that disclosure of the documents to its business-facing employees is necessary to evaluate properly any material marked as Attorney-Eyes-Only, or if Quicken disputes that a document is sufficiently sensitive to deserve such a designation, the parties could discuss the specific document and try to reach a resolution without judicial involvement; if resolution is not achieved, Quicken could then seek the Court's intervention. Id. at 10.

At this time, the Court finds the Government's approach to be the most efficient resolution of this issue. Therefore, the Court denies this portion of the motion without prejudice to Quicken filing a motion to remove the Attorney-Eyes-Only restriction. The Government shall produce the "Attorney Eyes Only" documents by June 9, 2017.

### 3. Request for Email Responses from the FHA Resource Center

Quicken seeks the production of "[e]mail responses from the FHA Resource Center to Quicken." Def. Mot. at 1; id. at 7 (citing Def. 1st Set of Prod. Requests ¶ 57 (Dkt. 33-9)). Although the Government produced a document cataloguing Quicken's inquiries to the FHA Resource Center, it did not include any responses to these inquiries. Def. Mot. at 7. According to Quicken, the Government claims that its production of "standard answers" that FHA staff were instructed to provide should be adequate. Id. Quicken argues that it should not have to rely on the standard answers, and that it is entitled to the actual answers provided to it. Id. at 8. Quicken further claims that it did not track, compile, or preserve answers it received from the FHA Resource Center in any particular way and, thus, it does not possess all of the answers. Id.

In response, the Government first notes that, in addition to the catalogue of thousands of inquiries it has already produced, it has since located more accurate date information and intends to supplement this data. Pl. Resp. at 10. Because the data does not consistently identify the individual at HUD who responded to an inquiry, the Government contends that it would be inefficient to use this data to target HUD's email responses. Id. at 10. Instead, the Government proposes to capture the response to Quicken's request through the parties' electronically stored information ("ESI") searches, using negotiated search terms and custodians. Id. at 10-11.

The Court concludes that resolution of this issue in connection with development of ESI searches may be more efficient. The Court grants this portion of the motion insofar as the Government shall produce the requested documents within 14 days following the completion of the Rule 30(b)(6) ESI deposition (which deposition is addressed in a separate order).

### 4. Request for Documents Comparing Quicken Loans and Other Lenders

Quicken seeks "[d]ocuments comparing the performance of loans originated by Quicken Loans during the relevant time period to those of other lenders," Def. Mot. at 1, including "documents comparing early-payment default and material finding rates, as well as Mortgage Performance Reports, for Quicken Loans' loans originated during the relevant time period (even if the documents were created later)," id. at 9 (citing Def. 1st Set of Prod. Requests ¶ 67). Quicken maintains that, as compared to other lenders, its loans performed better than average, with fewer early defaults, and with lower defect rates as part of the PETR process. See Def. Mot. at 8-9. Documents demonstrating these facts are relevant, according to Quicken, because they "would tend to confirm that no [multi-year scheme to defraud the Government] existed." Id. at 9.

In response, the Government argues that Quicken's performance relative to other FHA lenders is irrelevant to the issue of how Quicken performed relative to FHA's requirements. Pl. Resp. at 11. The Government then states that it is currently searching for documents responsive to Quicken's request. Id. The Government is also supposedly searching productions from its Wells Fargo litigation for any responsive documents, and it intends to produce any such documents identified as part of its ESI productions using search terms and custodians negotiated by the parties. Id. at 11-12. During the hearing, the Government further stated that it is still searching for responsive documents, which may include relevant reports and compare ratios that were attached to a HUD employee's emails. If any responsive documents are discovered, the Government again stated that it will produce those documents to Quicken as part of its ESI productions.

As with the FHA Resource Center email responses, it may be more efficient to produce the requested documents following the ESI searches. Accordingly, the Court grants this portion

15

of the motion insofar as the Government shall produce the requested documents within 14 days following the completion of the Rule 30(b)(6) ESI deposition.

### 5. Requests for the Government's Loan Sample Selection Methodology and Rule 30(b)(6) Witness for Search Term and Custodian Selection

Quicken requests the methodology the Government used in selecting the 350 loans for the sample, Def. Mot. at 9-10 (citing Interrogatory No. 3 (Dkt. 33-11)), as well as permission to take a Rule 30(b)(6) deposition regarding ESI and document custodians, id. at 10-11. Regarding methodology, the Government stated at the hearing on these motions that it does not oppose disclosure, but argues that Quicken must similarly disclose its position on sampling issues. Regarding ESI, the Government contends that compelling it is premature because Quicken has not served a proper notice. Pl. Resp. at 12.

Sampling methodology will be a complex matter, involving experts to assist in resolving. It makes sense for the Government to disclose the method and justification at this early juncture, so that Quicken can begin its investigation and defense on that issue. However, requiring Quicken to formulate its position on that issue now would be premature. As this case progresses, it may make sense to require Quicken to do so in advance of other expert disclosures; at that point, the timing of an earlier disclosure by Quicken can be considered. Accordingly, the Court orders the Government to disclose its sampling methodology and justifications therefor by either answering Interrogatory 3 of Quicken's first set of interrogatories or furnishing an expert report. This shall be done by July 7, 2017.

The issue of ESI is properly before the Court, as it has been the subject of scheduling and discovery conferences. The rules encourage the Court to address discovery in the less formal setting of a conference. See Fed. R. Civ. P. 16(c)(2)(F) ("At any pretrial conference, the court may consider and take appropriate action on . . . controlling and scheduling discovery, including

orders affecting disclosures and discovery under Rule 26. . . ."). ESI is a huge trove of the discoverable material in this case; its mining will require sophisticated attention by the parties and possibly their experts. Accordingly, the Court grants Quicken's request for an early 30(b)(6) deposition on the issue of ESI and document custodians. Quicken shall serve formal notice of the deposition, if it has not done so already, by June 2, 2017; the deposition shall be completed by June 16, 2017.

### III. CONCLUSION

For the reasons stated above, the Court grants, in part, and denies, in part, the Government's motion to compel (Dkt. 32). The Court also grants, in part, and denies, in part, Quicken's motion to compel (Dkt. 33).

Should the parties wish to modify any dates set forth in this order, the following restrictions apply. The Court's policy is that adjournment of any event scheduled to occur prior to the due date for fact discovery may be accomplished by submission of a proposed stipulated order, provided that no such adjournment may affect the due date of any event scheduled to occur from and after the due date for fact discovery. Adjournment of any event scheduled to occur from and after the fact discovery due date must be sought by written motion setting forth good cause and filed promptly after the circumstance giving rise to the claimed need for an adjournment. A party seeking to file such a motion must first comply with the Court's order on motion protocol (Dkt. 31).

SO ORDERED.

Dated: May 26, 2017                          s/Mark A. Goldsmith
     Detroit, Michigan                   MARK A. GOLDSMITH
                                                   United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2017.

s/Karri Sandusky<br>Case Manager