UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER REGARDING THE DEPOSITION OF THE FORMER SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

## Statement of Issue Presented

If the Court should quash a subpoena under Federal Rule of Civil Procedure Rule 45(d)(3) and issue a protective order under Federal Rule of Civil Procedure 26(c)(1) to prevent the deposition of the former Secretary of Housing and Urban Development on the grounds that it is irrelevant, unreasonably cumulative and duplicative, unduly burdensome, and disproportionate to the needs of the case.

## Controlling or Most Appropriate Authority for Relief Sought

1. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i), (c)(1), 45(d)(3)(A)(iv)

2. *United States v. Morgan*, 313 U.S. 409, 422 (1941)

3. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)

4. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901-02 (6th Cir. 2012)

5. *United States v. Rohner*, 634 F. App'x 495, 502-03 (6th Cir. 2015)

6. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985)

7. *Duncan v. Husted*, Civ. A. No. 13-1157, 2015 WL 631103 (S.D. Ohio Feb. 12, 2015)

8. *EMW Women's Surgical Ctr., P.S.C. v. Glisson,* Civ. A. No. 17-0189, 2017 WL 3749889 (W.D. Ky. Aug. 30, 2017)

Quicken Loans Inc. (Quicken) seeks to compel the testimony of the former Secretary of Housing and Urban Development (HUD), Shaun Donovan (the Secretary), in order to inquire about topics that are irrelevant, cumulative, or not within the Secretary's personal knowledge. The topics that Quicken has identified have no bearing on the dispute and no grounding in his personal knowledge. They are ones that Quicken can explore, and has explored, through means other than burdening, annoying, and harassing a former cabinet-level secretary. Pursuant to the Court's August 30, 2017, Order (ECF No. 65), the United States submits this memorandum in support of its motion to quash and for a protective order to shield Secretary Donovan from this unwarranted and disproportionate discovery. Quicken has received, and will receive, expansive discovery into HUD. This Court should focus Quicken and this litigation on the facts actually at issue, namely, whether or not Quicken knowingly engaged in a wide-ranging practice to originate and underwrite loans that were ineligible for Federal Housing Administration (FHA) insurance.

Quicken seeks to depose the Secretary on four topics: (1) the United States' investigation of Quicken and other FHA lenders; (2) HUD's response to the financial crisis; (3) communications with Quicken executives; and (4) the Secretary's role in the oversight of the FHA program. Quicken Suppl. Memo (ECF No. 59). The first three topics are irrelevant to this lawsuit because they do not relate to whether or not

Quicken committed the alleged fraud—whether Quicken knowingly endorsed ineligible mortgages for FHA insurance.

As for the fourth topic, while the Secretary, as the top official at HUD, had oversight for the FHA program along with the many other HUD programs administered by HUD's various divisions and Deputy and Assistant Secretaries, the Secretary lacks personal knowledge of or involvement in the rules and guidelines at issue in this case. Moreover, any testimony the Secretary could provide is inherently duplicative or cumulative of the knowledge of other HUD officials directly responsible for and involved with the administration of the FHA program and the rules and guidelines at issue in this case. Quicken has deposed and can depose certain other officials—the Government has allowed the deposition of two former Deputy Assistant Secretaries and has not objected to the deposition of the former FHA Commissioner—but should be barred from its attempt to depose Secretary Donovan.

### I. Discovery That Is Disproportionate, Unduly Burdensome, Irrelevant, or Unreasonably Cumulative and Duplicative Is Not Permitted.

Discovery is only allowed if it is "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Under Rule 26, a court may issue a protective order to protect a witness from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *Serrano v. Cintas Corp.*, 699 F.3d 884, 901-

02 (6th Cir. 2012). Under Rule 45 a subpoena must be quashed if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Testimony should not be permitted if it is: (i) irrelevant, Fed. R. Civ. P. 26(b)(1); *United States v. Rohner*, 634 F. App'x 495, 502-03 (6th Cir. 2015) (denying deposition as irrelevant), or (ii) "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" Fed. R. Civ. P. 26(b)(2)(C)(i); *Duncan v. Husted*, Civ. A. No. 13-1157, 2015 WL 631103, at *2-4 (S.D. Ohio Feb. 12, 2015) (applying *Serrano* and Rule 26(b)(2)(C)(i)). Discovery is therefore properly denied and a protective order warranted when a party improperly seeks testimony that is irrelevant, unreasonably cumulative or duplicative, or can be obtained from more convenient and less burdensome sources.

When a high-level executive has no knowledge relevant to the claims at issue, the Court can infer an improper purpose for the deposition. *See Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) (cited with approval by *Serrano*, 699 F.3d at 901-02). This rule applies with particular force to former high-ranking Government officials because "subjecting a cabinet officer to oral deposition is not normally countenanced." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985) (collecting Circuit authorities, citing *United States v. Morgan*, 313 U.S. 409, 422 (1941), for the rule "that top executive department officials should not, absent extraordinary circumstances, be

- 3 -

called to testify regarding their reasons for taking official actions"); *see also EMW Women's Surgical Ctr., P.S.C. v. Glisson,* Civ. A. No. 17-0189, 2017 WL 3749889, at *2 (W.D. Ky. Aug. 30, 2017) (noting that "many courts have found high-ranking government officials are generally not subject to deposition") (citing, among other cases, *Simplex Time Recorder*, 766 F.2d at 586; *Morgan*, 313 U.S. at 422).

Accordingly, courts have rejected attempts to depose such officials when they lack personal knowledge of relevant facts and there are other individuals better suited to provide the relevant discovery. *See, e.g., Elvis Presley Enters.*, 936 F.2d at 894 (upholding denial of deposition where sought deponent's affidavit stated that she had no knowledge of the relevant acts and the deposition's primary purpose would be to harass and annoy her); *Duncan*, 2015 WL 631103, at *1-4 (denying deposition of state secretary on the basis that a member of the secretary's staff who had been offered to testify instead was more likely to be able to answer the questions the plaintiff sought to ask, given his responsibilities and experience relevant to the issues in the case); *EMW Women's Surgical Ctr.*, 2017 WL 3749889, at *3-4 (denying deposition of state governor, finding the governor was not involved in the agreements at issue and his deposition "would be a fishing expedition intended to harass or annoy"). As the Government demonstrates below, the disproportionate, unduly burdensome, and irrelevant or duplicative nature of the testimony sought by

Quicken warrants a protective order under Rule 26. *See Duncan*, 2015 WL 631103, at *1-4.

### II. Quicken Seeks Irrelevant or Unreasonably Cumulative and Duplicative Testimony from Secretary Donovan.

The topics on which Quicken seeks to question Secretary Donovan are irrelevant or unnecessarily cumulative and duplicative of the voluminous discovery already provided to it and otherwise available to it in this case. Quicken has already received over a million pages of documents from HUD and is set to receive additional electronically-stored custodial information (ESI) from 165 HUD employees or former employees and more than eighty loan reviewers. Further, Quicken has begun taking its full allotment of forty-five fact depositions as well as two Rule 30(b)(6) depositions of HUD. Nonetheless, Quicken seeks to depose a cabinet-level official with no direct involvement in any of the core circumstances underlying this case. At bottom, Quicken has failed to establish any topic as a basis for the deposition that is relevant to the facts or issues of this case or on which the Secretary would provide non-duplicative or cumulative testimony. Notwithstanding repeated requests from the United States and opportunities from the Court, Quicken has yet to provide any specific evidence to support its contention that Secretary Donovan will provide relevant and warranted testimony.

A. <u>The Secretary's Cursory Knowledge of the United States' Investigation of Quicken and Other FHA Lenders Is Irrelevant to the Facts and Issues of This Case.</u>

The Government's motivation to investigate the alleged fraud by Quicken against HUD's FHA program has no bearing on whether or not Quicken committed the alleged fraud. It has no bearing on any defense or counterclaim asserted by Quicken. *See* Quicken's Answer to Compl. (ECF No. 28). Although Quicken may attempt to characterize this case as "malicious and opportunistic[,]" the United States' allegations will rise and fall on the facts alleged and proven. This Court has twice rejected Quicken's argument that the United States is pursuing meritless claims to improperly force a settlement: first when it dismissed Quicken's preemptive suit and again when it concluded that the United States had properly alleged that Quicken defrauded HUD in violation of the False Claims Act. None of Quicken's defenses can possibly relate to the United States' internal deliberations or decision to bring this suit, as those determinations by definition took place long after Quicken improperly endorsed ineligible mortgages for FHA insurance in the relevant time period of this case.

Quicken also provides nothing to support its assertion that whatever knowledge the Secretary has of the United States' investigation bears on the credibility of other HUD witnesses. *See* Quicken Suppl. Memo (ECF No. 59) at 4. This Court should make clear that Quicken should focus its discovery efforts on the

facts of the case before the Court and cease improper inquiries into the United States' internal deliberations and enforcement decisions in an effort to extend its dismissed preemptive suit.

Even if the United States' motivations for its investigation were a proper subject of discovery, Secretary Donovan's limited knowledge of this investigation provides no basis for his deposition. The Secretary was generally aware of HUD's enforcement efforts pertaining to alleged fraud against the FHA program (sometimes referred to as the Big Lender Initiative or BLI), but *not* as they specifically relate to Quicken, and he did not engage Mr. Gilbert when Mr. Gilbert requested that he intervene in the investigation. Donovan Decl. ¶¶ 7, 9-10 (Ex. 1 hereto). Again, testimony from the deposition of the former Deputy Assistant Secretary for Single Family Housing, Charles Coulter, is not to the contrary. *See* Coulter Dep. at 37-38, 46-47, 49 (Ex. 2).

B. <u>HUD's Response to the Financial Crisis Is Irrelevant to Whether Quicken Endorsed Ineligible Mortgages for FHA Insurance.</u>

HUD's response to the financial crisis is similarly irrelevant to whether or not Quicken knowingly represented to HUD that certain FHA-insured mortgages were underwritten with due diligence and were eligible for FHA insurance when, in fact, they were not. The inquiry in this case is clear: Did Quicken, as alleged by the United States in its Complaint, violate the False Claims Act by endorsing ineligible

mortgages for FHA insurance? Yet Quicken again attempts to distract from that inquiry with a fishing expedition.

Quicken seeks Secretary Donovan's "knowledge of and the reasons for HUD's efforts in response to the financial crisis[,]" Quicken Suppl. Memo (ECF No. 59) at 5, but makes no showing of the relevance of such testimony to the claims and defenses in this lawsuit. There is none. While Quicken intimated it may seek to show that HUD changed some policy in response to the financial crisis (such as loosening underwriting requirements), any inquiry should focus on that purported change in policy or specific relevant FHA requirements, not on the financial crisis. And Quicken has failed to link the former Secretary to any specific relevant policy or purported change therein.

To the extent Quicken seeks to question the Secretary about specific FHA rules, there is no basis to believe the Secretary has personal knowledge or involvement in any. To the extent Quicken seeks discovery into HUD's enforcement of FHA program requirements, the Government has provided extensive discovery including correspondence in the Quality Assurance Division (QAD) Document Library System and QAD review files produced in the *Wells Fargo* litigation from the Lending Time Period, and there is no basis to believe the Secretary has personal knowledge. Lastly, if Quicken is seeking a cabinet-level Secretary's internal deliberations of potential responses to the nation's largest housing crisis, those

- 8 -

deliberations are privileged in addition to being wholly irrelevant. *See Morgan*, 313 U.S. at 422.

C. <u>The Communications between the Secretary and Quicken Executives Are Irrelevant to the Claims and Defenses.</u>

Quicken has stated that the Secretary had communications with certain Quicken executives that were not loan-specific. Quicken points to only general comments and platitudes about Quicken as an FHA lender, not communications about the specific loans, FHA rules, or practices and policies actually at issue in the case. Testimony from the deposition of Mr. Coulter demonstrates that Secretary Donovan lacks specific, non-cumulative information relevant to this case. *See* Coulter Dep. at 37-38, 46-47, 49 (Ex. 2). For instance, Mr. Coulter did not have specific conversations with Secretary Donovan regarding Quicken's underwriting or origination practices—the practices at the crux of this matter—and had only "fairly high-level conversations" related to a review process of lender loan files and "[Mr. Coulter's] opinion on the process and approach." *Id.* at 37-38, 46-47. While Quicken seeks to probe these "high-level conversations" to determine if they pertained to Quicken, Mr. Coulter's testimony belies any suggestion that they did and nothing in the record lends support to a contrary conclusion.

Quicken also seeks to elicit testimony regarding so-called "admissions" Secretary Donovan made to Quicken executives. But these so-called admissions appear to be nothing more than general statements about Quicken as a valued

participant in the FHA program. Quicken's past status or reputation as an FHA lender, Quicken Suppl. Memo (ECF No. 59) at 4, is irrelevant to whether Quicken endorsed for FHA insurance loans that it knew were ineligible.

Quicken also does not need the Secretary's testimony to establish either that Quicken was the largest lender in the FHA program or that Quicken ranked highly in some of FHA's metrics. Quicken has the actual metrics. The Secretary's testimony would be duplicative of the reports and other documents produced as well as of the testimony from other witnesses already or to be deposed. While these metrics are irrelevant themselves—the fact that Quicken-originated mortgages defaulted at a lower rate than the FHA average is not relevant to whether Quicken-originated mortgages were fraudulently underwritten and Quicken failed to comply with HUD's FHA requirements—Secretary Donovan's less specific impressions of Quicken are not based on, and have no bearing on, the facts at issue in this case.

Secretary Donovan's Declaration shows that he lacks any meaningful knowledge of these subjects. *See* Donovan Decl. ¶ 10 (Ex. 1). The Secretary was aware that HUD approved Quicken to participate in the FHA program but has no meaningful knowledge of Quicken's origination, underwriting, and appraisal practices or policies. *Id.* A deposition of the Secretary on Quicken's third proposed topic can yield only irrelevant or duplicative evidence.

D. <u>Deposition of the Secretary on Oversight of the FHA Program Can Only Result in Duplicative or Cumulative Testimony.</u>

Quicken claims that the Secretary was involved in specific FHA rules but has pointed to no evidence of such involvement. The Secretary relied on the Deputy Secretary and Assistant Secretaries to fulfill his duties as Secretary, including on the FHA Commissioner and the Commissioner's staff to administer the FHA program. *Id.* ¶ 4. The Secretary also confirms that he "was not involved in the decision whether or not to seek indemnification from Quicken Loans for any specific loans or any category of loans." *Id.* ¶ 12. The Secretary also states that he was not involved in decisions concerning Quicken's origination, underwriting, or appraisal standards. *Id.* ¶¶ 11-12. Quicken asserts that "the highest-level policy decisions are germane to Quicken Loans' defenses and the Government's claims[,]" Quicken Suppl. Memo (ECF No. 59) at 6, but has not specified what those policy decisions are or how they relate to whether or not Quicken committed the alleged fraud and practices that are the subject of this lawsuit. Further, nothing in the expansive record of millions of pages of documents and hundreds of pages of deposition testimony to date (including Quicken's Rule 30(b)(6) deposition of HUD on data-related topics) supports the notion that the Secretary has relevant, non-duplicative knowledge.

The cumulative nature of Quicken's request is equally clear. Quicken can and has deposed officials directly involved with, and responsible for, the FHA program, whom the Secretary relied upon to oversee that program. Donovan Decl. ¶ 4 (Ex.

1). Quicken will obtain expansive discovery on the FHA program and FHA requirements, guidelines, practices, and actions through the custodial files of 165 HUD employees and more than eighty loan reviewers, as well as forty-five depositions of more percipient witnesses. The United States has repeatedly consented to discovery where Quicken seeks even tangentially relevant discovery that may possibly bear on a conceivable defense. But its request to depose a cabinet-level official with no direct involvement in this matter is a bridge too far.

E. <u>Deposing a Former Cabinet Secretary on Irrelevant and Cumulative Topics Is Unduly Burdensome and Disproportionate to the Needs of the Case.</u>

Quicken's complete lack of justification for this testimony does not support the burden that it would impose on the Secretary. *See Elvis Presley Enters.*, 936 F.2d at 894; *Duncan*, 2015 WL 631103, at *1-4; *EMW Women's Surgical Ctr.*, 2017 WL 3749889, at *3-4. Not surprisingly, after serving his country for eight years in two different cabinet-level positions, the Secretary has moved on to other professional, family, and personal commitments. Donovan Decl. ¶ 13 (Ex. 1); *see also Shaun Donovan Named Senior Strategist for Allston*, Harvard Gazette, Sept. 14, 2017, https://news.harvard.edu/gazette/story/2017/09/shaun-donovan-named-senior-strategist-for-allston/. Quicken has failed to establish any topic as a basis for the deposition that is relevant to the facts or issues in this case or on which the Secretary's limited knowledge would provide anything other than duplicative or cumulative testimony. Under these circumstances, a deposition

of the Secretary would be harassing and unduly burdensome. It is also clearly disproportionate to the needs of the case.

## Conclusion

For the foregoing reasons, we respectfully request that the Court grant the Government's motion and quash the subpoena and issue a protective order to bar the deposition of the Secretary.

Respectfully submitted,

| | |
|---|---|
| CHAD A. READLER<br>Acting Assistant Attorney General | By: */s/ Samuel J. Buffone Jr.*<br>Attorney, Commercial Litigation Branch<br>P.O. Box 261, Ben Franklin Station |
| DANIEL L. LEMISCH<br>Acting United States Attorney | Washington, DC 20044<br>(202) 616-2945 |

*Attorneys for the United States of America representing Secretary Shaun Donovan in his capacity as a former employee of the United States*

## Local Rule Certification

  I, Samuel J. Buffone, certify that the parties met and conferred in compliance with Local Rule 7.1 and that United States' Memorandum complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

<em>/s/ Samuel J. Buffone Jr.</em><br>
Samuel J. Buffone, Jr.

# Certificate of Service

I hereby certify that on September 20, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009

Thomas M. Hefferon
William Kyle Tayman
Sabrina M. Rose-Smith
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001

/s/ Samuel J. Buffone
Samuel J. Buffone
Attorney, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-2945
Email: Samuel.j.buffone@usdoj.gov