UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. |
| | ) | 2:16-cv-14050 (MAG) (RSW) |
| Plaintiff, | ) | |
| | ) | District Judge: |
| v. | ) | Hon. Mark A. Goldsmith |
| | ) | |
| QUICKEN LOANS INC., | ) | Magistrate Judge: |
| | ) | Hon. R. Steven Whalen |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' RESPONSE AND MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE, IN PART,
THE UNITED STATES' LOAN SELECTION FINDINGS**

# **TABLE OF CONTENTS**

I.    Quicken Fails to Provide a Legal Basis for the Relief It Seeks. ...............2

    A.    *Bledsoe* Provides No Basis to Strike the Loan Findings. ...............3

    B.    As a Discovery Motion, Quicken's Motion to Strike Fails. ............6

    C.    The Motion to Strike Viewed as a Motion *in Limine* is Inappropriate and Premature. ....................................................................................7

II.   The September 1 Loan Findings Comply with the Letter and Spirit of the Court's Scheduling Order. .........................................................................9

III.  The Findings All Fall within the Example Practices Pleaded in the Complaint. ...............................................................................................12

    A.    The Loan Findings Resulted from the Example Practices. ............12

    B.    Quicken's Contentions to the Contrary Are Belied by Specific Allegations in the Complaint. .......................................................17

IV.   Quicken Has Sought and Continues to Seek Expansive Discovery It Claims Is Needed. ...................................................................................18

V.    There Is No Prejudice to Allowing the Claims to Include the Entire Loan Findings. ................................................................................................19

## Issues Presented

1) Whether the holding of *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 510 (6th Cir. 2007), "where a [plaintiff] pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a [plaintiff] may proceed to discovery on the entire fraudulent scheme[,]" allows the United States to pursue in this action the full fraudulent scheme that the Court identified and found to be well-pleaded in the United States' Complaint?

2) Whether the Court should strike portions of the discovery response set forth in the United States' Loan Findings (defined below) based on rules governing pleadings or a discovery or evidentiary rule yet to be identified by Quicken?

3) Whether the Court should grant *in limine* relief to exclude evidence at this stage of litigation where the parties are in the midst of conducting discovery, more than a year before trial is set to take place, and that would have a dispositive effect on some of the United States' claims?

4) Whether the United States' Loan Findings detail "the loans in the Loan Selection it contends support its claims in this matter" and "the manner in which the loans do so, including specifically, what guideline or rule is alleged to have been violated[,]" as required by the Court's Scheduling Order?

## <u>PRINCIPAL CONTROLLING AUTHORITIES</u>

1) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

2) *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007).

3) Federal Rule of Civil Procedure 37.

4) Federal Rule of Civil Procedure 26.

5) *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013).

6) Federal Rule of Civil Procedure 15(a).

7) *Ragland v. Raby*, Civ. A. No. 08-15253, 2009 WL 2390532, at *1 (E.D. Mich. July 31, 2009).

This Court has held that the Government adequately alleged in its Complaint that Quicken Loans Inc. ("Quicken") "created a fraudulent scheme of 'knowingly representing to HUD certain FHA-insured mortgages had been underwritten with due diligence and were eligible for FHA insurance when, in fact, they were not.'" Memo. Op. of 3/9/2017 (ECF No. 25) (the "MTD Order") at 10. This fraudulent scheme—which the Court ruled the Government pleaded with the requisite particularity by identifying as examples certain practices employed by Quicken to carry out its scheme—was wide-ranging, spanned five years, and involved the knowing participation of the highest levels of Quicken's management. The parties are now in the midst of discovery, in which the United States specifically identified underwriting violations in many of the loans reviewed. Through this and other evidence, the United States has substantiated its allegations.

Quicken now attempts to use an unrecognized and extraordinary procedural device to limit the United States' claims, exclude evidence of alleged fraud already uncovered, cabin further discovery, and limit the evidence the United States can present at trial, premised on a myopic reading of the claims asserted in this litigation. Chiefly citing pleading requirements, Quicken now seeks to strike portions of what is essentially a Court-ordered discovery response (the "Loan Findings") that detailed "the loans in the Loan Selection [the United States] contends support its claims in this matter" and "the manner in which the loans do so, including specifically, what

guideline or rule is alleged to have been violated[,]" and to exclude any evidence related to those findings. Loan Findings (ECF No. 67) at 1 (quoting Scheduling Order of 5/26/2017 (ECF No. 44) (the "Scheduling Order") ¶ 4); Quicken Proposed Order, Ex. 1.

Quicken's Motion lacks merit for a number of reasons. It provides no legal basis for the relief it seeks—precisely because there is none—and misconstrues the Federal Rules of Civil Procedure ("Rules") and case law in seeking to restrict discovery and prevent the United States from using evidence developed during discovery. Moreover, it incorrectly contends that the Loan Findings fail to comply with the Scheduling Order and ignores the connections between the Loan Findings and the United States' Complaint. Indeed, the relief sought by Quicken is not contemplated by the Rules, is not warranted by the facts of this case, and is contrary to the Court's prior orders. Accordingly, this Court should deny Quicken's Motion.

## I.   <u>Quicken Fails to Provide a Legal Basis for the Relief It Seeks.</u>

First and foremost, Quicken asks this Court to strike the United States' Loan Findings despite a wholesale failure to provide any legal basis to do so. Indeed, Quicken cites no authority for its attempt to strike a discovery response nor advocates any alternative legal standard or framework the Court should use in considering its novel request. Instead, Quicken rests its entire Motion on inapplicable case law concerning pleading requirements.

Consequently, the exact legal basis on which Quicken moves is a mystery—it may be (a) an attempt to re-litigate its already-denied motion to dismiss; (b) a motion to strike a discovery response without specifying what particular relief it seeks (e.g., a protective order and the confines of such an order); or (c) a motion *in limine* to exclude relevant evidence even though the parties are still engaged in ongoing discovery and the case is not set for trial for more than a year. Even if Quicken were to now choose one of these frameworks for its Motion, none provide refuge for Quicken's unorthodox and unsupported request to strike.

### A.    *Bledsoe* Provides No Basis to Strike the Loan Findings.

Quicken's Motion relies almost exclusively on the Sixth Circuit's decision in *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007), for a purported legal basis on which to advance its arguments. In doing so, Quicken ascribes to *Bledsoe* more weight than the case can bear. *Bledsoe*, which this Court considered and addressed in detail in its MTD Order, contemplated the pleading requirements necessary for a complex False Claims Act ("FCA") complaint to survive a motion to dismiss under Rule 9(b). Yet Quicken, without support or precedent, seeks to distort the holding of *Bledsoe* to insulate itself from unfavorable evidence developed in discovery *after* the motion-to-dismiss stage.

But *Bledsoe* does not set forth the bounds of discovery or how a plaintiff ultimately presents its case at trial. Indeed, as *Bledsoe* itself stated, "where a relator

pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the *entire* fraudulent scheme." *Id.* at 510 (emphasis added).  *Bledsoe* is consistent with the Supreme Court's jurisprudence, which holds that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (collecting cases, including *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")).

The cases cited by Quicken are not to the contrary.  Mot. at 9-10.  Like *Bledsoe*, *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011), and *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006), both discuss pleading standards under Rule 9(b).  The dicta cited by Quicken does not disturb the upshot of *Bledsoe* and *Twombly* that the facts adduced in discovery can support the claims asserted.  Quicken's assertion that the facts adduced in discovery are only relevant if they match specific examples set forth in the complaint is unfounded.

As this Court recognized in its MTD Order, "the Government alleges that Quicken created a fraudulent scheme of 'knowingly representing to HUD certain FHA-insured mortgages had been underwritten with due diligence and were eligible

- 4 -

for FHA insurance when, in fact, they were not.'"  MTD Order at 10.  It is this scheme that the United States pleaded and that survived Quicken's motion to dismiss.  And it is this scheme that is supported by the specific loans and violations identified in the United States' Loan Findings.  This case has surmounted the barriers that *Bledsoe* imposes.  Quicken can no longer rely on that holding to claim it somehow lacks sufficient notice of the alleged fraud when it has been provided hundreds of specific loan examples and the additional facts derived from its own files supporting the allegations as to each.

Even were *Bledsoe* applicable to the United States' Loan Findings and the Court were to analyze the discovery response under the pleading requirements of Rules 8 and 9(b), the Loan Findings would merely need to permit Quicken "to infer with reasonable accuracy the precise claims at issue[.]"  *Bledsoe*, 501 F.3d at 511."  Here, Quicken need no longer rely merely on the inferences the Court found sufficient in its MTD Order.  Instead, in its Loan Findings, the United States provided comprehensive findings well beyond the short and plain statement required in a complaint.  *See* Fed. R. Civ. P. 8.  Thus, even if Quicken views the Loan Findings in the context of Rule 9(b)'s pleading framework discussed in *Bledsoe*, the United States has far exceeded any notice requirement.  *Bledsoe*, 501 F.3d at 503 ("The purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim[.]") (internal quotation

- 5 -

and correction marks omitted) (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679, 680 (6th Cir. 1988) ("It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.")).

### B.    As a Discovery Motion, Quicken's Motion to Strike Fails.

Analyzing Quicken's Motion under applicable discovery rules provides Quicken no solace either.  The Court issued its Scheduling Order in response to a series of discovery disputes between the parties, essentially directing the United States to answer an interrogatory posed by the Court.  Perhaps recognizing this context for the Loan Findings, Quicken cites several cases concerning the scope of discovery as supposed support for striking the Loan Findings.  *See United States ex rel. Duxbury v. Ortho Biotech Prods.*, 719 F.3d 31 (1st Cir. 2013); *United States ex rel. Spay v. CVS Caremark Corp.*, Civ. A. No. 09-4672, 2013 WL 4525226 (E.D. Pa. Aug. 27, 2013); *United States v. Aurora Las Encinas, LLC,* Civ. A. No. 10-01031, 2012 WL 12897081 (C.D. Cal. Sept. 6, 2012).  Each of these cases, however, concerns the proper scope of discovery—not the striking of facts cited in a discovery response—and is therefore, at best, irrelevant to the action sought by Quicken.  And, as discussed below, Quicken's effort to strike facts consistent with the Government's well-pleaded allegations of a fraudulent scheme is improper.

Quicken, as any party, is permitted to move for judicial intervention in discovery. It may seek, for example, a protective order limiting the scope of discovery. Alternatively, a party may move to compel discovery responses, such as seeking a more complete answer to an interrogatory. Finally, a party may seek to strike a discovery response under Rule 37 because it is, for instance, unsigned or untimely. Yet Quicken's Motion seeks none of these Rules-based avenues of redress, nor does it suggest that any are appropriate. Instead, without citing pertinent case law or authority from the Rules, it seeks the extraordinary result of striking wholesale certain particularized contentions that the United States has presented in support of the well-pleaded fraudulent scheme alleged. Such a request is inappropriate in the context of discovery, and the Court should not permit Quicken to create new procedural rules to insulate itself from unfavorable evidence unturned in discovery.

## C. The Motion to Strike Viewed as a Motion *in Limine* is Inappropriate and Premature.

Quicken's Proposed Order requires that the United States "not use the Stricken Findings as the basis for any claim in this case or as evidence in support of any claim in this case[,]" Proposed Order at 2, and thus could be construed as seeking *in limine* relief. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("A motion in limine is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.") (internal

- 7 -

quotation marks and citation omitted).  Viewing the Motion in that manner, however, does nothing to cure its deficiencies.

A party may move *in limine* to exclude before trial certain pieces of evidence that, among other things, may be irrelevant or would be prejudicial to place before the jury.  Yet, as many courts have recognized, it is inappropriate to substitute a motion *in limine* for a dispositive motion as Quicken attempts to do here.  *See, e.g., Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*, Civ. A. No. 14-12488, 2016 WL 4073545, at *3 (E.D. Mich. Aug. 1, 2016) ("Courts in the Sixth Circuit have consistently denied litigants' attempts to seek the wholesale exclusion of claims or defenses. '[M]otions *in limine* are meant to deal with discrete evidentiary issues related to trial and are not [an] excuse to file dispositive motions disguised as motions *in limine*.'") (quoting *Dunn v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009), and citing, among others, *SPX Corp. v. Bartec USA, LLC*, Civ. A. No. 06-14888, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008); *ABC Beverage Corp. & Subsidiaries v. United States*, Civ. A. No. 07-051, 2008 WL 5424174, at *2 (W.D. Mich. Dec. 4, 2008); *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (collecting cases)).  While styled as an attempt to strike the evidence set out in the United States' Loan Findings, it is clear that Quicken is attempting to stifle discovery and dismiss wholesale certain false claims the United States intends to use to support its well-pleaded allegations.

Even were the Court to consider Quicken's Motion as seeking *in limine* relief, Quicken has failed to demonstrate it would be appropriate to exclude any evidence at this stage. "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial and to focus the issues the jury will consider." *Goldman*, 559 F. Supp. 2d at 858 (internal citations omitted). Such motions should be construed narrowly, however, and "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed." *United States v. Certain Land Situated in City of Detroit, Wayne Cty., Mich.*, 547 F. Supp. 680, 681-82 (E.D. Mich. 1982). "Generally, when a motion *in limine* does not raise questions about admissibility of evidence or that the evidence would be prejudicial, the motion will be denied." *ABC Beverage*, 2008 WL 5424174, at *2. Quicken's Motion, on its face, seeks to exclude broad categories of evidence (a practice generally disfavored) without establishing the evidence to be prejudicial or inadmissible. Thus, the evidence and allegations included in the Loan Findings should not be excluded on this or any other basis.

## II.    The September 1 Loan Findings Comply with the Letter and Spirit of the Court's Scheduling Order.

In the Scheduling Order the Court set out "an orderly process [ ] to clarify issues that is fair to both parties." To accomplish this, the Court "direct[ed] that the Government shall serve and file a memorandum detailing which of the loans in the

Loan Selection it contends support its claims in this matter. It shall also set forth the manner in which the loans do so, including specifically, what guideline or rule is alleged to have been violated." Scheduling Order, ¶ 4. This is exactly what the United States did on September 1st by providing its Loan Findings.

Quicken largely acknowledges that the United States complied with the Court's Scheduling Order by identifying the defective loans in the Loan Selection and the reasons why each is defective, including the particular guidelines or rules violated. Quicken appears to contend that the Scheduling Order required the United States to identify into which of the four example practices each defect falls. *See* Mot. at 2; Quicken Mot. Exs. A, B (ECF Nos. 75-2, 75-3) (challenging every finding that does not contain the word or phrase "value appeal," "red flag," "income," or "employment"). The Scheduling Order, however, required no such thing.

As noted above, the United States is not bound by the example practices it pleaded and may use any facts uncovered to support the well-pleaded fraudulent scheme. Consequently, it is under no obligation to adhere to an overly restrictive form-pleading standard requiring some incantation of the same precise words used in the Complaint when referring now to the defects identified in the Loan Findings. Moreover, the plain wording of the Court's Scheduling Order imposed no such requirements, as such requirements are not found in civil procedure. This case has moved past the pleading stage, and the United States is entitled to prove Quicken's

alleged fraudulent scheme with facts adduced in discovery through its review of the loan files produced by Quicken in this action.

Aside from its strained interpretation of pleading requirements and its misinterpretation of the Court's Scheduling Order, Quicken's only other stated challenge to the Loan Findings is its purported confusion about certain appraisal findings mentioning Google Street View or aerial imagery. Quicken's confusion does nothing to undermine the sufficiency of the Loan Findings. First, in expressing its confusion, Quicken ignores the actual findings, which include such detail as:

> i. The Appraisal Report does not identify physical site characteristics consistent with data sources researched (e.g., aerial imagery, public record, MLS, loan file).
>
> ii. The Appraisal Report does not provide a complete and accurate neighborhood description based on data researched (e.g., aerial maps, MLS, public record, loan file).
>
> iii. The Appraisal Report does not identify and describe the physical improvement characteristics consistent with the data source(s) researched (e.g., Google Street View, MLS, public record, loan file).

Each of these findings specifically references Quicken's own loan file as the source of the finding and provides additional sources of information that illustrate the violation. Further, the details of these findings make clear that the United States is only pursuing instances where Quicken ignored obvious defects in its own appraisal. *See infra* at 15-16; Appraisal Deficiency Examples (Exs. 2 & 3).

Quicken's Motion otherwise makes clear that the Loan Findings provide exactly the level of detail this Court ordered to explain to Quicken the specific allegations with respect to each loan. The Loan Findings fully comply with the Court's prior order, and, as a result, the Court should reject Quicken's attempt to institute an unprecedented version of form pleading.

## III.    The Findings All Fall within the Example Practices Pleaded in the Complaint.

As established above, the Loan Findings conform to the well-pleaded fraudulent scheme set forth in the Government's Complaint. But even were the United States narrowly confined to the example practices alleged rather than the scheme it adequately pleaded under Rules 8(a) and 9(b), the Loan Findings are still proper as the Loan Findings are all the result of the example practices.

### A.    The Loan Findings Resulted from the Example Practices.

In its MTD Order, the Court analyzed the Government's Complaint and found that the Government had sufficiently pleaded four example practices used by Quicken to carry out its fraudulent scheme, namely, (i) value appeals; (ii) miscalculating borrower income; (iii) providing, seeking, and receiving exceptions to underwriting requirements ("Exceptions"); and (iv) ignoring red flags in loan files ("Red Flags").

In discussing Exceptions, the Court concluded that "[t]he complaint clearly alleges that Quicken created a management-exception process, whereby

underwriters could 'request management approval for an exception to an FHA underwriting requirement that could not be met in order to approve loans[,]'" MTD Order at 21 (quoting Compl. ¶ 110), and that Quicken's management understood that it was "an underwriter's decision whether to seek a documented management exception or to provide the exception on his own[,]" *id.* (quoting Compl. ¶ 118). Accordingly, the Complaint pleaded, properly according to this Court, a practice of making or obtaining exceptions to FHA requirements, both formally and informally. Similarly, the Court recognized, with respect to Red Flags, that "the complaint alleges that Quicken's underwriters ignored 'obvious red flags that indicated a borrower would not be able to repay the mortgage.'" *Id.* at 31 (quoting Compl. ¶¶ 166, 169). Ignoring red flags is a practice that led to violations of FHA requirements. Therefore, the Complaint pleaded, and this Court affirmed, a practice of ignoring indicia that a loan was not eligible for FHA mortgage insurance.

Quicken is simply incorrect when it complains that certain of the Loan Findings do not fall within the practices identified in the Complaint. Along with income miscalculation and value appeals, making or obtaining exceptions and ignoring red flags are practices that *caused* the violations identified in the Loan Findings. These practices caused Quicken to violate a range of HUD's underwriting and origination requirements. The Court did not cabin its analysis to violations of FHA requirements concerning only income calculation or value appeals, and

- 13 -

allegations containing the magic words "exception" or "red flag." Indeed, the Court's own analysis of an adequately-pleaded example of income miscalculation considered Quicken's improper exclusion of the co-borrowers' debts and other "glaring errors and omissions[.]" *Id.* at 24-25. Ubiquitous failures to meet FHA requirements regarding verification and documentation of required information, calculation of assets and liabilities, or property eligibility are not outside of these alleged practices—they are precisely the result of the alleged practices.

For example, in community property states, the relevant liabilities include spousal debts, and failing to obtain a credit report on the borrower's spouse and include any spousal debts in the monthly debt calculation is a violation of FHA requirements. Similarly, failing to adequately source large deposits into the borrower's account and failing to adequately document gift funds that the borrower needs to close are violations of FHA requirements. Likewise, failing to resolve conflicting information indicating the borrower did not reside in the subject property is a violation of FHA requirements. While violations of FHA requirements such as these appearing in the Loan Findings may not contain the word "exception" or the phrase "ignoring red flags," they are the natural consequence of Quicken underwriters routinely making or obtaining exceptions to FHA requirements, failing to exercise due diligence, and ignoring red flags going to the core of a borrower's likely capacity and willingness to pay the mortgage—all practices adequately

- 14 -

alleged in the Complaint. Further, the frequency of these errors does not render them trivial; it reflects the pervasiveness of the practices and the foreseeable result of a scheme to endorse ineligible loans.

The appraisal findings also are consistent with the fraudulent scheme and practices alleged in the Complaint. Quicken's attempt to portray them as too trivial and numerous to be legitimate only underscores how widespread yet fundamental the defects in Quicken's appraisal reports are. Quicken certified, for each loan submitted for FHA insurance (whether a manual or AUS-approved), that a Direct Endorsement ("DE") underwriter reviewed the appraisal. Compl. ¶ 88. HUD rules state that a DE Lender "must accept responsibility, equally with the appraiser, for the integrity, accuracy, and thoroughness of the appraisal, and will be held accountable by HUD for the quality of the appraisal." Mortgagee Letter 1994-54; *see* Appraisal Deficiency Examples (Exs. 2 & 3) at 2. Nevertheless, many loans in the Loan Findings had appraisals undermined by defects other than value appeals, yet ignored by Quicken's underwriters who failed to examine and question the reliability of the appraisals they certified as reviewed and acceptable. Whether the result of granting exceptions to FHA rules regarding appraisals or of ignoring red flags that an appraisal violated FHA rules and the value was not supported, these Findings clearly spring from the alleged example practices.

- 15 -

When the appraisal-related findings are analyzed in detail, it is clear the appraisal reports are not credible on their face and, thereby, the appraised value of the property serving as collateral for the loan is not supported. For example, one appraisal report claimed that the neighborhood was average residential, when the zoning classification is stated as "C-2" (C generally indicates commercial zoning) and photographs of the subject property in the appraisal report show as much. *See* Loan 221-4130351 Appraisal Deficiency Example (Ex. 2) at 7-8. Nevertheless, the Quicken underwriter ignored these indicia of unreliability, when a simple review of Google Earth/Street or other aerial imagery would have confirmed the commercial nature of the neighborhood. *See id.* at 9-13. This is a violation of FHA requirements, renders the value determination unreliable, and constitutes an obvious red flag ignored by Quicken. In another example, Quicken ignored the fact that the appraisal report discussed a convenience store located behind the subject property and yet stated the neighborhood was residential. *See* Loan 132-2348277 Appraisal Deficiency Example (Ex. 3) at 7-8. Publicly available information shows that the convenience store was in fact a gas station whose proximity to the subject property would render the subject property ineligible in violation of FHA requirements. *See id.* at 9-12.

Far from hyper-technical deficiencies, these types of violations go to the most basic required components of an FHA appraisal that a DE lender is required to

- 16 -

review to ensure the accuracy and integrity of the value of the collateral securing the loan. *See* Exs. 2 & 3 at 2. But again, Quicken underwriters routinely ignored these red flags or made or obtained exceptions for these defects.

### B. Quicken's Contentions to the Contrary Are Belied by Specific Allegations in the Complaint.

The fallacy of Quicken's Motion is evident in Quicken's baseless assertion that violations pleaded in the Complaint and determined by the Court to state plausible claims under the FCA, somehow fall outside the Complaint. For example, Quicken contends that a violation alleging that Quicken endorsed a loan with "a Loan to Value in excess of the 85% cap on identity of interest transactions[,]" Mot. at 15, falls outside the Complaint when this Court ruled in its MTD Order that *that very same violation* was a well-pleaded example of ignoring red flags. *Compare id.*, *with* MTD Order at 33-34. Likewise, Quicken claims that an allegation concerning its "failure to include all debts" owed by the borrower, Mot. at 13, falls outside the Complaint, when this Court specifically held that Quicken's "fail[ure] to resubmit the loan with true and accurate monthly debt[] amounts[]" states a plausible claim under the FCA. *Compare id.*, *with* MTD Order at 34-35. Quicken's attempt to re-litigate issues decided months ago should not be entertained.

Even more, Quicken itself recognized that the types of findings it now calls "Unpled Practices" are part of the United States' claims. In Quicken's prior Motion to Compel, Quicken described asset requirements as "the very requirements that the

- 17 -

Government is relying on here," specifically citing a HUD review that discussed a finding for assets. *See* Mot. to Compel (ECF No. 33) at 3 and ECF No. 33-4 at 4 (referring to HUD's statements about the asset finding). Quicken's position then was correct; Quicken's violation of requirements related to assets, liabilities, debts, eligibility, and appraisals are all within the United States' claims.

At bottom, Quicken has not identified a single defect as resulting from some practice distinct from the alleged example practices in "general time frame, substantive content, and relation to the allegedly fraudulent scheme[.]" *Bledsoe*, 501 F.3d at 511. In accordance with the Court's Scheduling Order, all of the violations in the Loan Findings manifest the alleged scheme to defraud HUD by endorsing ineligible loans for FHA insurance, carried out through practices including those examples alleged in the Complaint. The Government should now be allowed to complete discovery and prove any set of facts consistent with the allegations in the Complaint, including the violations identified in the Loan Findings.

## IV.  Quicken Has Sought and Continues to Seek Expansive Discovery It Claims Is Needed.

Quicken's claims that the Court's current discovery schedule will not accommodate sufficient discovery on the Loan Findings is unfounded. At Quicken's request, the parties agreed to, and this Court ordered, an expansive discovery plan. Quicken can take 45 fact depositions including 25 full-day depositions and 20 half-day depositions, and an additional Rule 30(b)(6) deposition running a total time of

28 hours.  Quicken will receive custodial electronically-stored information (ESI) from 251 custodians, including 165 general custodians and 86 custodians related specifically to the Loan Selection.  The United States was transparent that the issues Quicken calls the "Unpled Practices" were part of the claims in this case and so Quicken has sought and received the discovery relevant to those practices.  The United States' first production was in April of 2016, over two years before the current close of fact discovery, and to date the United States has produced 1,650,113 pages of documents.  The broad discovery Quicken has sought into the supposed "Unpled Practices" include broad ESI search terms that would collect any document containing the terms "liability", "debt", "credit", "asset", or "appraisal" near other terms indicating interpretation of HUD guidance.  "Unpled Practices" Search Terms (Ex. 4).  Given these and similarly broad requests, there is no reason Quicken would need more expansive discovery beyond that which is contemplated by the Court's Scheduling Order.  Quicken should now factually, rather than procedurally, attempt to defend its conduct.  Rejecting Quicken's unfounded Motion will ensure discovery moves forward expeditiously toward its goal—an adjudication of the merits of this case.

## V.   There Is No Prejudice to Allowing the Claims to Include the Entire Loan Findings.

Even if this Court were to adopt a narrow reading of the claims that survived Quicken's Motion to Dismiss and also narrowly interpret the well-pleaded examples

in the Complaint, there is no prejudice to Quicken if the United States pursues the claims in the Loan Findings. As noted above, the Loan Findings gave Quicken the notice needed to defend itself, and the discovery sought and obtained will afford Quicken the ability to do just that. As the Court has already analyzed the adequacy of the Complaint, there is no need for an amended complaint to add these additional details identified in discovery. However, should the Court disagree, the United States requests leave to amend its Complaint to include the specific allegations set forth in the Loan Findings, which should be freely granted under Rule 15(a). Fed. R. Civ. P. 15(a); *see also Ragland v. Raby*, Civ. A. No, 08-15253, 2009 WL 2390532, at *1 (E.D. Mich. July 31, 2009) (acknowledging that amendments seeking to add claims are generally granted more freely than amendments to add parties) (citations omitted).

Respectfully submitted,

CHAD A. READLER                  By:   */s/ Samuel J. Buffone Jr.*
Acting Assistant Attorney General        Attorney, Commercial Litigation Branch
                                         P.O. Box 261, Ben Franklin Station
DANIEL L. LEMISCH                        Washington, DC 20044
Acting United States Attorney            (202) 616-2945

*Attorneys for the United States of America*

## **<u>Local Rule Certification</u>**

I, Samuel J. Buffone, certify that the United States' Memorandum in Opposition To Defendant's Motion to Strike, in Part, the United States' Loan Selection Findings complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Samuel J. Buffone Jr.*
Samuel J. Buffone, Jr.

## **Certificate of Service**

I hereby certify that on October 24, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009

Thomas M. Hefferon
William Kyle Tayman
Sabrina M. Rose-Smith
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001

/s/ Samuel J. Buffone
Samuel J. Buffone
Attorney, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-2945
Email: Samuel.j.buffone@usdoj.gov