UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> QUICKEN LOANS INC., <br><br> Defendant. | Civil Action No. <br> 2:16-cv-14050 (MAG) (RSW) <br><br> District Judge: <br> Hon. Mark A. Goldsmith <br><br> Magistrate Judge: <br> Hon. R. Steven Whalen |

# QUICKEN LOANS INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE, IN PART, THE UNITED STATES' LOAN SELECTION FINDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRINCIPAL CONTROLLING AUTHORITIES ..................................................... iii

I.     The Government's Procedural Evasions are Futile. ........................................2

II.    This Case Is Undeniably Limited to the Four Practices. ................................3

III.   The Improper Findings Are Far Outside the Four Practices. .........................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ..................................................................................................4

*United States ex rel. Bledsoe v. Cmty. Health Servs., Inc.*,
 501 F.3d 493 (6th Cir. 2007) ..........................................................................*passim*

*Quicken Loans Inc. v. United States*,
 Case No. 15-11408 ...................................................................................................3

**Statutes & Rules**

31 U.S.C. § 3729 *et seq.* ("False Claims Act") ........................................................1, 6

Fed. R. Civ. P. 9 ............................................................................................................2

Fed. R. Civ. P. 1 ............................................................................................................3

Fed. R. Civ. P. 16 ..........................................................................................................3

Fed. R. Civ. P. 26 ..........................................................................................................3

Fed. R. Civ. P. 37 ..........................................................................................................3

## **PRINCIPAL CONTROLLING AUTHORITIES**

1) *United States ex rel. Bledsoe v. Cmty. Health Servs., Inc.*, 501 F.3d 493 (6th Cir. 2007)

The Sixth Circuit held in *Bledsoe* that the False Claims Act cannot be abused by pursuing claims that extend beyond the specifics of the complaint, because that would expose honest companies (like Quicken Loans) "to fishing expeditions and strike suits" and "spurious charges of immoral and fraudulent behavior." *Bledsoe*, 501 F.3d at 510. As the Opposition reveals, that is exactly what the government is trying to do.

Stripped to its essentials, the government's position is that once it partially survived the motion to dismiss, all bets were off and the allegations in the Complaint—as limited by the Court's MTD Order—became largely irrelevant. The government argues that, free of the Complaint's limitations, it is entitled to the "benefit of imagination" (Opp. at 4) to raise and pursue any and every contention it can gin up and then crown as part of Quicken Loans' alleged "scheme" to submit false claims. That is simply not the law and makes no sense.

The government's motivations for taking this sweeping position are no mystery. Even by its own erroneous reckoning, the government found little within the Four Practices, despite a 3-year pre-suit investigation and 2 ½ years of litigation. Such paltry results are entirely expected, given that Quicken Loans has the highest quality FHA loans, by HUD's own measures. Apparently frustrated, the government is now trying to use the Loan Findings to run from its Complaint by asserting a myriad of defects unrelated to the Four Practices. It then attempts to

1

justify having done so by arguing points of procedure, futilely, and by mischaracterizing Quicken Loans' attempt to enforce the MTD Order as somehow trying to "insulate itself from unfavorable evidence." Opp. at 3, 7.

But the government cannot justify its attempt to multiply this proceeding. The government's case and discovery must be limited to those practices adequately pled in the complaint under Rule 9(b)'s stringent standards. *Bledsoe*, 501 F.3d at 510-11. If there were underwriting "errors" outside of what this case is about, then Quicken Loans and HUD can and should resolve those issues through the contractually-required PETR process. Mem. at 18. But Quicken Loans respectfully submits that, after more than five years, this Court should not allow the government to drive this case off the rails by greatly expanding its bounds beyond the allegations that survived the MTD Order.

I.   **The Government's Procedural Evasions Are Futile.**

The government's initial argument—that this Court is powerless to enforce the limits on this case imposed by the Complaint, *Bledsoe*, and its own MTD Order—is absurd. Opp. at 2-9. Quicken Loans' Motion (Mem. at 7-8) cited caselaw—including *Bledsoe*—recognizing the Court's authority and duty to control FCA proceedings based on the allegedly fraudulent practices adequately pled in the complaint. The government's arguments also gloss over the fact that this Court's case management order (which the government never challenged)

required it to file its loan findings.  That order, consistent with the fundamental purposes of the Rules of Civil Procedure, was designed to "benefit the parties by narrowing their discovery efforts in this sprawling case."  ECF 70 at 2.  There is nothing wrong—and everything right—about Quicken Loans' Motion to invite this Court to further exercise its case management authority under Federal Rules 1, 16, 26, and 37, which expressly include the power to "establish[] early and continuing control," "discourag[e] wasteful pretrial activities," and "modify the extent of discovery."  Indeed, the Court has already recognized the importance of controlling this case, both in issuing the original order and authorizing this Motion.

Concerned it may lose, the government (at 20) lobs a last-ditch plea that it be allowed to amend the Complaint "to include the specific allegations set forth in the Loan Findings."  That untimely throw-away request, unaccompanied by a motion and proposed pleading, should be rejected as procedurally defective.  *See Quicken Loans Inc. v. United States*, Case No. 15-11408, ECF 31 at 23 n.13 (denying relief to amend not made by motion).  If and when a motion is made, Quicken Loans then will describe the many reasons, including unfair prejudice, why this 5 ½ year old witch hunt should not be expanded.

## II.    This Case is Undeniably Limited to the Four Practices.

The government largely does not respond to Quicken Loans' showing that *Bledsoe* forecloses its efforts to exponentially expand the case beyond what

survived the MTD Order. Mem. at 8-10. Rather, it makes the breathtaking claim that having partially survived the MTD, it is "not bound by the example practices it pleaded." Opp. at 10. The government's position is absurd, and wrong. *Bledsoe* permits complex FCA cases alleging a scheme to defraud only if the claims are pled with specificity through legally-sufficient examples of identified practices. 501 F.3d at 510-11. Under *Bledsoe*, "*all claims covered by the fraudulent scheme*" must have the same "characteristic[s]," "time frame, substantive content" as the examples pled in the complaint. *Id.* The government intones this standard but does not even try to show that it is met as to the Unpled Practices.

There is also no merit to the government's related contention that "*Bledsoe* does not set forth the bounds of discovery or . . . trial." Opp. at 3. Indeed, in its last paragraph, *Bledsoe*'s final instruction directs the parties to "proceed" only as to the *specific* allegations of *particular* practices that survived the motion to dismiss (and appeal). 501 F.3d at 524. That is, of course, why this Court engaged in a 24-page, "paragraph-by-paragraph" analysis of the Complaint in its MTD Order, just as *Bledsoe* instructs. Even under the more permissive standards of Rule 8, the case only is allowed to proceed "consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

This Court already rejected explicitly the government's contrary argument that it can sue on unpled practices for which the Complaint identifies no example

4

loans. MTD Order at 9 n.2. Without addressing this holding, the government, quoting *Bledsoe*, claims that once the pleadings are closed it may pursue "discovery on the entire fraudulent scheme." *Id*. (citing *Bledsoe*, 501 F.3d at 510). But *Bledsoe* says the opposite in the opinion's very next passage by flatly rejecting the contention that a scheme of "submitting false claims" is a permissible basis for an FCA suit, reasoning, as already noted, that overbroad allegations lead to improper fishing expeditions, strike suits, and spurious charges. 501 F.3d at 510. At bottom, after finding insufficient defects relating to the Four Practices, the government is trying to use its Loan Findings to change its claims pled in the Complaint. As Quicken Loans previously explained, that not only is legally impermissible, it would throw the case and the schedule into turmoil and be unfairly prejudicial. Motion at 3, 18-20. After over 2 ½ years of litigation, the contours of the dispute were settled long ago.

## III. The Improper Findings Are Far Outside the Four Practices.

Grasping at straws, the government argues as a fallback (at 12-17) that all of the Unpled Practices that Quicken Loans moves to strike fall within the "management exception" and "ignoring red flags" allegations, now collectively recast as a practice of "ignoring indicia that a loan was not eligible for FHA mortgage insurance." Opp. at 13. Without quite coming out and saying so, the government's position appears to be that these two practices are "miscellaneous"

5

catch-all categories under which every alleged failure to follow an FHA guideline is either a red flag (because a rule was ignored) or a management exception (because not complying with a rule is like making an "exception"). *Id*. at 14.

This argument misstates the Complaint and so cannot save the Unpled Practices. The exception practice alleged in the Complaint, and illustrated by the examples, was a "*process*" by which "Quicken granted *management* exceptions to allow violations of FHA underwriting requirements." Compl. ¶ 115 (emphasis added). The government cannot now, consistent with *Bledsoe* (as well as pleading rules, among other norms), redefine as an exception any instance where a rule was not followed by an underwriter. Likewise, as to red flags, the Complaint alleged that, "[o]nce a TOTAL [computerized] Approve/Accept decision was obtained," Quicken Loans "ignored '*obvious* red flags that indicated a borrower would not be able to repay the mortgage.'" MTD Order at 31 (citing Compl. ¶¶ 166, 169) (emphasis added). Patently, this prevents the government from magically converting the "red flags" practice as alleged in the Complaint into one that applies to appraisals (at all, since they have nothing to do with ability to repay), or to loans not approved by TOTAL, or to every alleged (and trivial) error.

Moreover, as this Court already found, not every error, even if proven, "can . . . be said to mount to a plausible claim under the False Claims Act." MTD Order at 25 (striking example loan at Complaint ¶ 149). The Court should thus

6

reject the government's attempt to interpret every alleged error as a practice of ignoring red flags or granting management exceptions. Indeed, taken to its logical conclusion, the government's positions would have the completely-nonsensical result of enabling it to resurrect the loan examples this Court already found legally insufficient. MTD Order at 25 (income), 30-31 (manipulating data).

In a larger sense, there is no merit to the position that an FCA plaintiff can rest a case on a practice or two that are so vague and capacious as to encompass every supposed error by a defendant. If adopted, the position would gut *Bledsoe* and the MTD Order; if *both decisions* stand for nothing else, it is that there is no such thing as an FCA suit premised on the "practice of submitting false claims." For this reason, had the Complaint put forward exception and red flag allegations like what the government is asserting now, they would have been dismissed more than a year ago.

The Court should not permit the government to improperly and unfairly attempt to change this case. The Motion to Strike should be granted.

Dated: October 31, 2017                    Respectfully submitted,

                                           /s/ Jeffrey B. Morganroth
                                           Jeffrey B. Morganroth
Thomas M. Hefferon                         MORGANROTH &
Sabrina M. Rose-Smith                      MORGANROTH, PLLC
W. Kyle Tayman                             344 North Old Woodward Avenue
GOODWIN PROCTER LLP                        Suite 200
901 New York Avenue, NW                    Birmingham, MI 48009
Washington, DC 20001                       Tel.: 248.864.4000
Tel.: 202.346.4000

7

## **LOCAL RULE CERTIFICATION**

I, Jeffrey B. Morganroth, certify that Quicken Loans' Motion to Strike, in Part, the United States' Loan Selection Findings complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length pursuant to the Court's September 26, 2017 order.  ECF No. 70.

/s/ Jeffrey B. Morganroth
Jeffrey B. Morganroth

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2017, a copy of the foregoing was filed through the CM/ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system.

/s/Jeffrey B. Morganroth