UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**UNITED STATES' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT QUICKEN LOANS INC. TO RESPOND TO UNITED STATES' LOAN FINDINGS AND PRODUCE <u>USABLE LOAN FILE DOCUMENTS</u>**

**Motion**

Pursuant to the Court's March 28, 2018 Order, the United States moves to compel Quicken Loans Inc. (Quicken) to 1) respond to the United States' Loan Findings Memoranda (Dkts. 67, 79) and; 2) produce Quicken's loan files with all the functionality available through its proprietary software, Amazing Mortgage Platform (AMP), Loan Archive Retrieval System (LARS), and Guideline & Underwriting Reference Utility (GURU).

**Preliminary Statement**

The Court should bring parity to this litigation and allow the United States access to the same information Quicken possesses with regard to the loans in the Loan Selection, which the United States specifically identified to support its claims in this matter. Quicken has had the United States' loan findings for 223 days—over seven months—and yet refuses to respond substantively in any way to the loan defects identified by the United States in the Loan Selection. Furthermore, Quicken produced its loan files for the Loan Selection in a degraded format without the full functionality available using Quicken's proprietary systems. Thus, Quicken alone has access to the loan files in the format most akin to how Quicken employees reviewed them at the time Quicken falsely certified to HUD that the files complied with FHA requirements. The United States respectfully requests the Court correct this imbalance.

**Background**

Quicken's refusal to provide the requested discovery has hindered the United States' ability to obtain a complete record on Quicken's false certifications of compliance with FHA's requirements. At a most basic level, it is unclear whether the parties even dispute falsity in this case—i.e., whether Quicken agrees with the facts and violations noted in the United States' loan findings. Here, the United States' first request is a simple one: Quicken should respond to the United States' findings by stating whether it agrees with the factual findings and, if so, whether it agrees that the facts indicate (i) a material violation of FHA requirements; and (ii) whether such a violation was done with the requisite level of scienter. The United States previously made the same request, which the Court denied without prejudice in September 2017, to give Quicken "sufficient time" to respond. Dkt. 70. Quicken has now had more than sufficient time and should be ordered to respond without further delay.

Additionally, Quicken has hindered the United States' ability to obtain relevant testimony because it has refused to grant the United States access to the loan files in the format used by Quicken's employees in underwriting them. To originate and underwrite its loans, Quicken utilizes a proprietary loan origination software called AMP, a successor system to a program known as Lakewood. AMP stores all of the data associated with a loan, including information about the borrower and the

internal tracking and approvals of a loan. Quicken has a second proprietary system, LARS, which stores electronic versions of all of the documents Quicken collects while underwriting a loan. LARS is logically organized by both document type (e.g., income, assets, credit) and date/time received by Quicken. Further, LARS tracks who has looked at a document and when. Finally, Quicken has an online GURU that contains all of Quicken's underwriting guidance. GURU is hyperlinked so that underwriters can quickly jump to the relevant section when they have specific underwriting questions. Many of Quicken's underwriters have never seen HUD's binding rules and instead rely solely on GURU. Dep. of Sheryl Kutrukis Tr. (Ex. 1) at 35:25-37:2.

Quicken produced AMP as a large Excel export containing data on the Loan Selection. While Quicken underwriters have repeatedly testified that they used AMP to underwrite a loan and need to see AMP to testify about a loan, these underwriters have found the Excel exports produced by Quicken to be unintelligible. Kutrukis Tr. at 82:3-83:4 (Ex. 1). The United States similarly has been unable to reasonably use the AMP exports.

Quicken produced versions of its loan files that lacked additional information contained in LARS. Although after repeated requests Quicken has now provided the United States one piece of that missing information (i.e., which documents were in "junk" folders), it has otherwise not provided any of the organization of the loan

- 3 -

file or other tracking information contained in LARS. Quicken's underwriters never reviewed a loan in hard copy. Dep. of Brandy Klenk Tr. (Rough) (Ex. 2) at 32:10-25.

Finally, Quicken produced copies of GURU as documents without any hyperlinks. Although Quicken has attempted to address this issue by producing certain versions of GURU with PDF-linked indices, it has not done so for all versions and the linked indices do not provide the same functionality as the hyperlinks in the natively formatted versions. Quicken's underwriters have never seen GURU in hard copy and believe a printed version of GURU is not usable. *See* Kutrukis Tr. at 51:22-53:9, 84:13-85:4 (Ex. 1); Klenk Tr. at 21:13-22:1 (Ex. 2); Dep. of Eboni Hull Tr. (Ex. 3) at 122:11-123:21, 137:24-138:5, 169:11-170:5, 198:1-10. Some profess to be unable to testify to their understanding of the relevant FHA guidelines without reference to the GURU. *See, e.g.*, Kutrukis Tr. at 88:18-89:23 (Ex. 1); Hull Tr. at 121:7-122:16, 169:14-23, 198:4-6 (Ex. 3).

The United States requested native data from AMP, LARS, and GURU through requests for production and for inspection under Federal Rule of Civil Procedure 34. *See* United States' First Request for the Production of Documents to Quicken (Ex. 4); United States' Second Request for the Production of Documents to Quicken (Ex. 5). Quicken responded stating that Quicken does not need to allow the inspection of AMP or LARS because LARS and AMP do not currently exist as they

existed during the relevant time period. Despite receiving the requests over two years ago, and representing to the Court that "Quicken Loans has not refused [the general request to inspect AMP and LARS,]" Quicken has never provided an adequate proposal for inspecting AMP or LARS. The United States has attempted to gather deposition evidence from Quicken employees and former employees without access to these systems, but it is now clear that without access such testimony will necessarily be incomplete.

Quicken's production of degraded loan files hinders the United States' ability to review the files and to depose the witnesses who actually reviewed the loan files at the time. For example, Sheryl Kutrukis, an underwriter who certified that one of the loans in the Loan Findings was eligible for FHA insurance, refused to testify about Automated Underwriting System (AUS) findings for that loan, stating "let me look at the entire loan." Kutrukis Tr. at 65:2-14 (Ex. 1). She then made clear that "the entire loan" meant, in part, reviewing the AUS findings in Quicken's loan origination system, AMP. *Id.* at 66:3-24. Since Quicken did not make AMP available, to facilitate her testimony, counsel for the United States represented that the exhibit was the ultimate AUS findings for the loan. *Id.* This drew a speaking objection from Quicken: "Objection. Are you testifying under oath, Mr. Buffone." *Id.* Later, when Ms. Kutrukis testified that AMP would contain information about the borrower's employment history, counsel for the United States presented a

- 5 -

printout of Excel data from AMP in the form in which it had been produced in discovery by Quicken. Ms. Kutrukis refused to testify about AMP as Quicken produced it, testifying "I don't understand this" Excel data, and when asked "[w]ould you need to see it in AMP?" she responded, "Yes." *Id.* at 82:25-83:4 (Ex. 1). This leaves the United States in an untenable and unfair position: able to obtain neither Quicken's positions on the loan findings nor complete testimony from the individuals who contemporaneously underwrote the loans.

Unlike the United States, Quicken has access to the information contained in these systems. Quicken has used the native version of AMP to review the loan files to prepare its defense of this case. Indeed, every loan journal note contains at least two entries that are withheld as "attorney-work product and privileged attorney-client communications in anticipation of threatened or pending litigation." Quicken Privilege Log Excerpt (Ex. 6). In other words, Quicken has used, and continues to use, its loan origination system in this ligation even as it denies the United States access.

This asymmetry, if permitted, threatens real consequences in this case. Rather than narrowing the issues in dispute for trial, Quicken is evidently planning to surprise the United States through an expert report, after the close of fact discovery, wherein it will finally state whether it disagrees in whole or in part with the Loan Findings. Then, at trial, Quicken's witnesses will potentially attempt to take

positions on the loan files they refused to take in depositions, claiming they were able to review the entire file, presumably with the assistance of Quicken's proprietary systems. This raises a specter much worse than the purportedly one-sided information hoarding Quicken decried when it moved the Court to compel the United States to issue preliminary loan findings.

To be clear, the United States has developed strong evidence of Quicken's fraud. Quicken's underwriters have admitted that they signed false certifications. Dep. of David Wright Tr. at 134:16-23 (Ex. 7) ("Q: But you stated in the loan journal note at 78 that you thought that value was not supported? A: Correct. MR. SWANK: Objection to form. Q: But you certified to HUD that that value was supported? A: Correct."). ██████ ██████████████████████████████████████████████████ July 28, 2010 Email from Debra Adams (Ex. 8 Filed Under Seal). ██████████ ████████████████████████████. May 31, 2007 Email from Bob Walters (Ex. 9 Filed Under Seal) (████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ ██████████████████████████

- 7 -

███████████████████████████████ December 17, 2010 email from Bobbi MacPherson (Ex. 10 Filed Under Seal) █████████████████████████████████████████████████████████████████████████); May 11, 2010 email from Bobbi MacPherson (Ex. 11 Filed Under Seal) ██████████████████████████████████████████████████████████████████████████) And Quicken granted exceptions to FHA requirements. Dep. of Michael Doyle Tr. (Ex. 12) at 168:2-6. Despite the compelling nature of these admissions, the United States is entitled to understand Quicken's and its witnesses' positions on the facts and allegations in this case and not be surprised at trial because of gamesmanship. The Court should order Quicken to respond to the Loan Findings and produce the loan files with all the functionality available through its proprietary systems. [REDACTED PORTIONS OF THIS PARAGRAPH FILED UNDER SEAL]

## Argument

**I.  Quicken Should Respond to the United States' Loan Findings as Required by Comparable Discovery Schedules**

The Court's current discovery schedule is unique among courts who have fashioned discovery for fraudulent schemes similar to that alleged here. When the parties presented the Court with other schedules that addressed the use of sampling, each side presented five cases. Those cases provided two alternatives: (i) require disclosure solely through expert reports; or (ii) require preliminary disclosures of

- 8 -

findings, supplemented by expert reports. The Court chose the latter but at least initially only mandated disclosures by the United States, stating that "Quicken must be given sufficient time to understand the details of the Government's case and canvass its own records and personnel before it must register agreement or disagreement with the Government's contentions." Sept. 26, 2017 Order (Dkt. 70).

Other courts similarly have allowed defendants sufficient time to canvass their own records and personnel before responding to a plaintiff's loan findings. But those courts ultimately required defendants to respond to the findings in the sample in 28 days, Expert Sched. Order, *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, No. 11-cv-6201 (S.D.N.Y. Nov. 26, 2012) (Ex. 13); 90 days, Consolidated Case Mgmt. Order, *In re RFC and RESCAP Liquidating Trust Litig.*, No. 13-cv-3451 (D. Minn. Mar. 18, 2015) (Ex. 14); or 120 days, Companioned Case Mgmt. and Sched. Order, *Residential Funding. Co., LLC, v. Quicken Loans, Inc.*, No. 27-cv-14-3111 (Minn. Dist. Ct. May 4, 2015) (Ex. 15). Quicken has had 223 days and continues its refusal to respond. Quicken's previous objections, namely, that it needed time to review and analyze the findings, no longer hold water. Quicken has had more than enough time to permit it to adequately respond to the Loan Findings and narrow the issues in this case.

Quicken's position, that the United States needs to wait for Quicken's response until expert disclosures, is untenable. By that point, the United States will

only have 30 days before the end of expert discovery and 60 days before dispositive motions to review, analyze, and understand Quicken's view of the Loan Findings. Also, fact discovery will be closed when Quicken first presents any view of the Loan Findings, which will stymie the United States' efforts to obtain facts purportedly underlying Quicken's defense. This is simply not fair or conducive to resolving this litigation on its merits.

## II. Quicken Produced Degraded Loan Files and Should Produce Files with Full Functionality

Quicken produced its loan files in a degraded format that lacks the full functionality of AMP, LARS, and GURU. These degraded files leave the United States unable to obtain complete discovery on the loan files: both the facts and circumstances of Quicken's underwriting presumably available in Quicken's proprietary systems and the fulsome testimony of witnesses who underwrote the loans. For instance, the United States has been unable to identify from the data how long each underwriter worked on the loans in the Loan Selection due to the nature of the production format.

As an example, the AMP data for one loan consists of 103 pages of printed Excel data. *See* AMP Data Extract (Ex. 16) (Filed Under Seal). Table "ifcrqst" shows the underwriter, Ms. Klenk, submitted the loan to the AUS three times, 2/25/2009 at time 32308, 2/26/2009 at time 63129, and again on 2/26/2009 at time 63529. It is not clear what format the time is in or what time those numbers

- 10 -

correspond to.  And, while Ms. Klenk testified she used Lakewood to review client data and the mortgage application and utilize Quicken's income calculator, she did not recognize and could not testify about the data extracted from AMP.  Klenk Tr. 61:14-64:6 (Ex. 2).

AMP and LARS are both proprietary software that takes data from a database and displays it in a way that is comprehensible to the end user.  Dep. of Kevin Lang Tr. (Ex. 17) at 13:15-21, 91:19-20. Without access to the software programs for AMP and LARS, the United States is unable to fully comprehend the data presented by Quicken.  The United States is in the same position as if Quicken had provided the data behind a website without access to the web code or a browser to view the website.  The United States is able to glean some information but unable to fully understand the data as it is intended to be displayed.

The United States requested these loan files through a Rule 34 document request.  While the parties agreed to production specifications for routine documents, those specifications did not address the format for data in proprietary systems such as AMP, LARS, and GURU.  *See* ESI Prod. Specs. ¶ 1 (Ex. 18) ("any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made to facilitate their production.").  As such, Quicken's obligations are governed by Rule 34(b)(2)(E)(ii), which requires a party to produce electronically stored

information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii). The Advisory Committee Notes to that Rule caution that "reasonably usable" does not mean that information can be converted to "a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *Id.* at Advisory Committee Note (2006 amd.). Here, Quicken has failed to provide the information with the same functionality and searchability as AMP, LARS, and GURU, thereby failing to meet its duties under Rule 34.

In *Rambus Inc. v. Hynix Semiconductor Inc.*, Civ. A. No. 05-0334, 2007 WL 9653194, *4-5 (N.D. Cal. Sept. 25, 2007), a special master dealt with a similar dispute regarding data stored in proprietary software. In that case, a party produced scalable PDFs instead of native documents and the proprietary software needed to view the native files. The *Rambus* decision specifically looked to Rule 34 and the Advisory Committee Notes and found that the format of production was not "reasonably usable" because it was "different than that the manner in which it is ordinarily maintained" and "makes it more difficult and burdensome for [the plaintiff] to use the information." *Id.* at *5.

Testimony has made clear that Quicken did not produce the information in a reasonably usable format. For example, Michael Doyle, an exception analyst whose sole job was to review requests for management exceptions, stated he would use

AMP to review a loan file and specifically its "underwriter summary" and "employment screen[.]" Doyle Tr. at 18:12-17 (Ex. 12). But the United States does not have an ability to review the "underwriter summary" or the "employment screen[,]" as those are portions of AMP that Quicken has refused to produce.

Quicken's Rule 34 failures are compounded by its counsel's objections to the United States using the versions that Quicken has produced. For example, a witness was asked whether she recognized loan journal notes for a loan file (which are accessed at Quicken through AMP but which Quicken produced in an Excel dump). Dep. of Marilyn Beth Freiberg Tr. (Ex. 20) at 159:18-160:1. In response, Quicken's counsel made a speaking objection, indicating to the witness that the data's source was uncertain and claiming that the Government's question lacked "foundation" because the Excel data did not indicate it came from the loan file, despite Government's counsel's representation that it did. *Id.* (counsel remarking, "Chris, how can you tell that this is from this loan file?").

At bottom, the United States does not have the loan files in the form that Quicken's employees used to underwrite its loans. Quicken's underwriters have been unwilling to testify without access to the loan files in their native form and unable to testify about the loan files in the form produced. Quicken routinely objects when the United States uses the loan files as produced by Quicken. While the United States has attempted to use the documents and information as provided, Quicken has

presented the United States with no option but to seek relief from the Court to compel Quicken to produce AMP, LARS, and GURU in their native format with access to the proprietary software necessary to view the information.

## Conclusion

Quicken has placed the United States in an untenable position—unable to obtain complete discovery on the United States' Loan Findings either through a response from Quicken or testimony from the individuals who underwrote the loans at the time. The Court should grant the relief requested in the proposed order: (1) directing Quicken to respond to the findings in the United States' Loan Findings; and (2) ordering the production of native files for the loan files in AMP and LARS as well as the software necessary to view those native files and ordering production of native versions of GURU with working hyperlinks. This relief will allow the United States to fully understand the true facts surrounding the underwriting of the loans at issue in this case and Quicken's defense to this case.

Respectfully submitted,

| | |
|---|---|
| CHAD A. READLER<br>Acting Assistant Attorney General | By:   */s/ John W. Black*<br>Attorney, Commercial Litigation Branch<br>P.O. Box 261, Ben Franklin Station |
| DANIEL L. LEMISCH<br>Acting United States Attorney | Washington, DC 20044<br>(202) 305-2479 |

*Attorneys for the United States of America*

## **Local Rule Certification**

I, John W. Black, certify that the United States' Memorandum on Current Discovery Issues complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ John W. Black*
John W. Black

# Certificate of Service

I hereby certify that on April 11, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Jeffrey B. Morganroth
    MORGANROTH & MORGANROTH, PLLC
    344 North Old Woodward Avenue, Suite 200
    Birmingham, MI 48009

    Thomas M. Hefferon
    William Kyle Tayman
    Sabrina M. Rose-Smith
    Joseph F. Yenouskas
    Levi Swank
    Matthew Riffee
    GOODWIN PROCTER LLP
    901 New York Avenue, NW
    Washington, DC 20001

Additionally, all sealed attachments were served via email to all counsel of record.

                                        */s/ John W. Black*
                                        John W. Black
                                        Attorney, Commercial Litigation Branch
                                        P.O. Box 261, Ben Franklin Station
                                        Washington, DC 20044
                                        (202) 305-2479
                                        Email: john.w.black@usdoj.gov