UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT
QUICKEN LOANS INC.'S MOTION TO COMPEL**

**INTRODUCTION**

After three years of litigation and two years of discovery, Quicken Loans

Inc. (Quicken) seeks to impose burdensome, open-ended discovery of duplicative

and often irrelevant documents.  The United States has produced over 17 million

pages of material, and Quicken still has the ability to request limited targeted

discovery based on the parties' prior agreements.  Instead, Quicken requests

boundless production of all documents responsive to 29 vague requests, with only

the most limited specificity as to what it actually seeks.  It asks the Court to ignore

the parties' prior agreements and order burdensome, irrelevant discovery.  The

Court should properly limit discovery in this matter and deny Quicken's requested

relief.

**BACKGROUND**

In April 2015, Quicken filed a meritless preemptive lawsuit that this Court

dismissed in its entirety.  That lawsuit delayed this False Claims Act (FCA) lawsuit

by almost a year, and discovery began in February 2016.  In November 2016,

Quicken successfully moved to transfer this case from the District of Columbia to

the Eastern District of Michigan.  To convince the Court to transfer, it argued: "just

about all of the key witnesses, documents, and other evidence pertinent to those

alleged violations are presently located in the Detroit area[;]" the Department of

Housing and Urban Development's (HUD) "involvement 'in the processes' of the

FHA program has no significance to the issues of misstatements, scienter, and causation that are placed front and center by the government's Complaint[;]" and "the fact that this is a federal insurance program means, of course, that FHA officials had processes and administrative structures that set the parameters for the loans and had computers that received the information, but those processes are not central to the issues framed by the Complaint." Reply Memorandum in Support of Quicken Loans' Renewed Motion to Transfer, D.D.C. Dkt. 32 at 1, 2.

Contrary to these representations that it would seek minimal discovery from HUD, Quicken then sought expansive discovery into all aspects of the Federal Housing Administration (FHA) program. It petitioned this Court for and was granted access to documents related to any participant in the FHA program (Dkt. 43), took a seven-hour Rule 30(b)(6) deposition focused on the types of documents and electronically-stored information (ESI) within HUD's possession, deposed the former Secretary of HUD, and received six years of custodial ESI for 165 HUD employees.

The parties agreed in their initial Rule 26(f) conference that ESI would be produced using agreed-upon search terms: "[A] responding party's production of electronically stored information responsive to discovery requests should not occur until the parties have agreed on the principal custodians and search terms that the responding party will use for these purposes." Joint Local Civil Rule 16.3 Report

February 26, 2016 (D.D.C. Dkt. 27 at 14).  The parties reaffirmed this understanding in the second Rule 26(f) report and further agreed:  "[N]o additional search terms or ESI custodians may be requested after the agreed upon exchange, unless a requesting party makes a demonstration of good cause and substantial need."  Updated Joint Civil Rule 26(f) Report, April 12, 2017 (Dkt. 30 at 38-39).  During negotiations over ESI search terms and custodians, the parties agreed to "consider reasonable requests for additional search terms based on information learned through depositions or other discovery." Email from Matt Riffee, Aug. 30, 2017 (not attached per Civility Principle 28).

Quicken requested and received non-privileged ESI responsive to 297 search terms for six years from 165 custodians.  Quicken's ESI Search Terms (Ex. 1).  Many of those search terms were complex search strings involving numerous conjunctive and disjunctive searches.  For example, one term was:

(((meeting OR conference* OR call*) w/10 (minute* OR note* OR agenda* OR outline* OR record* OR remark*)) AND ((Quicken* OR QL OR QLI OR income OR credit) w/10 (vagu* OR uncertain* OR ambigu* OR unclear* OR exception* OR exempt*))) OR
(((meeting OR conference* OR call*) w/10  (minute* OR note* OR agenda* OR outline* OR record* OR remark*)) AND (underwrit* w/10 (compensat* OR bonus* OR commission*))) OR
(((meeting OR conference* OR call*) w/10 (minute* OR note* OR agenda* OR outline* OR record* OR remark*)) AND (report* w/5 (fraud* OR misrep* OR material* OR significant* OR serious OR error* OR mistake*))) OR
(((meeting OR conference* OR call*) w/10  (minute* OR note* OR agenda* OR outline* OR record* OR remark*)) AND ("red flag*" OR "false claims act" OR negligen* OR "fiduciary duty" OR lawsuit*)) OR
(((meeting OR conference* OR call*) w/10 (minute* OR note* OR agenda* OR

- 3 -

outline* OR record* OR remark*)) AND ((default* OR losses) w/10 (crisis OR collapse OR downturn OR recover*)))

The use of "OR" in this search term created five broad searches related to a wide set of meetings or conference calls.

Consistent with the United States' representations to Quicken and this Court regarding the burden associated with the production of ESI for 165 custodians, the United States produced documents responsive to Quicken's proposed search terms, after narrowing the terms that returned the most unique hits and eliminating documents that hit on a narrow set of terms selected to identify privileged documents.  In contrast, Quicken simply refused to apply two of the United States' search terms (relating to the United States' investigations of FHA lenders and sampling), reviewed less than half of the documents that hit on the search terms, used sampling and extrapolation to conclude that the population of un-reviewed documents was comprised primarily of unresponsive documents (but still contained many responsive documents), and produced no un-reviewed documents and only some of the reviewed documents after an additional, overly narrow relevancy review that it refused to fully explain.

Additionally, to lessen the burden associated with logging material withheld as privileged, the parties stipulated to a privilege log protocol that allowed a party to "provide a detailed written description of the category(ies) of responsive documents withheld pursuant to a Privilege Claim (a "Categorical Log")" in lieu of

a document-by-document log and provided the parties could meet and confer to request additional information.  Stipulated Privilege Log Protocol (Ex. 2).  In response to the United States' categorical log provided pursuant to the parties' agreement, Quicken requested a document-level log. The parties met and conferred, the United States agreed to provide additional information, and Quicken agreed to consider more detailed categorical logs.

## ARGUMENT

Quicken seeks to ignore the parties' prior agreements meant to establish reasonable limits on the scope of discovery and drown the United States with unnecessary requests for irrelevant documents.  With almost a month left in document discovery, the Court should properly limit the scope of discovery, declare that these documents are irrelevant and unduly burdensome to collect, and deny Quicken's motion.

## I.    The United States Has Produced Sufficient Documents Concerning the Guidelines.

Quicken is correct that HUD's guidelines set out the requirements for underwriting and endorsing an FHA loan, and therefore Quicken's knowing violations of those requirements are key facts in this case.  The United States has already provided significant discovery into the guidelines.  These include: the FAQs published by the FHA Resource Center, an extract of all post-endorsement technical review (PETR) findings from the relevant time period, almost 700 PETR files

requested by Quicken after reviewing that extract, correspondence from the relevant time period with FHA lenders, and meeting minutes for the Processing and Underwriting (P&U) calls where HUD discussed issues in the FHA program. These productions total over 40,000 documents. Additionally, Quicken requested 178 search terms specifically derived from Quicken's review of the United States' September 1, 2017 Loan Findings and received, from 165 HUD custodians, the responsive ESI to these 178 terms, as well as 119 more generic terms, many of which are targeted to the relevant guidelines.

Quicken's knowledge of the underwriting requirements at issue is relevant, as the United States must prove knowing violations to win its FCA case. However, what Quicken requests goes not to its own understandings but to the understandings of individual employees within HUD. The underwriting requirements that the United States alleges Quicken violated are clear and, as reflected in testimony, were understood by Quicken, despite Quicken's best attempts to take broad statements out of context and point to a selection of fringe rules or unique circumstances that are not part of the United States' case. *See* Jeanine Taylor Dep. Tr. (Ex. 3); Elena Boreczky Tr. (Ex. 4); Motion at 4-5. Quicken recognizes that the parties have identified the relevant FHA rules. Motion at 4. But Quicken fails to identify any specific rule at issue in this case that it claims is ambiguous or was not understood by its management or its underwriters.

- 6 -

Quicken seeks even more discovery as to what individual employees within HUD may have thought about unspecified HUD rules. Courts have correctly recognized that "agency interpretations are only relevant if they are reflected in public documents." *United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) ("The non-public or informal understandings of agency officials concerning the meaning of a regulation are thus not relevant."); *see also United States ex rel. Martin v. Life Care Centers of Am., Inc.*, Nos. 1:08-cv-251, 1:12-cv-64, 2015 WL 10987068 at *4-5 (E.D. Tenn. Apr. 29, 2015) (Ex. 5) (applying the conclusions in *Lachman* to deny a motion to compel on the basis that non-public agency interpretations are not relevant).

The breadth of discovery Quicken has already received, the lack of specificity regarding which guidelines Quicken argues are even facially ambiguous, and the irrelevance of internal HUD discussions of clear rules all warrant denying Quicken's requests. None of the specific requests provide an independent basis for any of Quicken's requested relief.

Request for Production ("RFP") No. 182 is vague. Quicken seeks to compel a catch-all request for "all differing interpretations ... [of] the FHA guidelines concerning the underwriting practices alleged in the Complaint." Motion ex. 1 at 1. As discussed above, the United States has produced numerous types of documents wherein HUD discusses the rules. While Quicken's motion stresses the need for

"these documents[,]" it fails to identify the names or even a general description of any of "these documents" despite two years of discovery and 19 depositions. It is unclear what Quicken is asking the Court to compel or how the United States would comply with such a broad order.

Quicken has received the documents responsive to RFPs Nos. 202 and 207. The United States has conducted a reasonable search for minutes and associated records of the P&U Calls, Valuation Calls, and Calibration Calls in non-custodial ESI including the relevant portions of the shared J: drives. However, these documents were generally emailed and stored in custodial ESI. Quicken's broad search terms, including the 178 search terms specifically directed at the United States' Loan Findings, should capture any relevant documents from these calls. Quicken primarily seeks to compel the production of documents that might be in custodial ESI that was not captured by the agreed-upon search terms. Supplemental custodial ESI searches are governed by the parties' agreement as set forth in the Rule 26(f) reports, which provide that a party may request additional searches based on good cause and substantial need. Quicken refuses to request additional searches. The Court should therefore deny Quicken's request.

Quicken has received documents responsive to RFP No. 200. The United States has produced over 100 documents responsive to this request as they were kept in the ordinary course of business in custodial ESI. Quicken's failure to locate the

documents through its "review to date" is not a basis for the requested relief.  Further, the "personal drive, G drive" is part of custodial ESI.  Quicken Motion at 7 (citing Kuczma Dep. at 52).  Therefore, the G drives of the 165 ESI custodians chosen by Quicken were searched using the 297 search terms Quicken requested.  Any additional searches are governed by the parties' agreement as set forth in the Rule 26(f) reports.  Therefore, the Court should deny Quicken's request.

The parties do not currently have a dispute regarding RFP No. 201.  The United States produced responsive, non-privileged documents.  Quicken is correct that the United States has claimed that the withheld documents are protected under the deliberative process privilege.  Additionally, many of the documents are also attorney-client privileged.  What Quicken fails to mention is that the parties agreed to categorical claims of privilege for hard copy collections of documents like these. The United States agreed to provide additional detail on the claims of privilege for the documents Quicken requested pursuant to the parties' agreement.  As such, there is no dispute for the Court to resolve.

There are no known documents responsive to RFP No. 184.  As numerous witnesses have testified, FHA made its underwriting requirements more stringent in the wake of the financial crisis.  *See* Shaun Donovan Dep. Tr. (Ex. 6); Charles Coulter Dep. Tr. (Ex. 7).  Quicken fails to point to any evidence to the contrary but

rather asks this Court to compel the United States to engage in a fishing expedition to attempt to contradict witnesses' testimony.

## II. Additional Documents on Damages and Causation are Duplicative and Unduly Burdensome

There is no dispute that the United States has provided Quicken extensive discovery on damages. There is also no dispute that the United States did in fact mitigate its damages and has provided Quicken the amount of that mitigation. However, Quicken seeks to create a side trial on damages, attempting to argue that HUD's mitigation efforts should have been better and asserting an overly restrictive view of causation. Quicken already has sufficient documentation to make these legally deficient arguments. Therefore, Quicken's requests should be denied.

The United States has produced an extract of data related to damages, including all data fields requested by Quicken. This is the best evidence of the United States' damages and the evidence the United States intends to rely on at trial. Quicken requested the backup documentation for this data, particularly the data related to HUD's efforts to sell properties that were transferred to HUD along with a claim. The United States agreed to produce the backup documentation for ten loans so that Quicken could assess the relevancy of these documents and test the accuracy of the data. Pulling the documents related to the remainder of the claims files as Quicken requests would take one employee almost two years. *See* Declaration of Barrett McVary (Ex. 8). Quicken fails to cite any evidence adduced

from the files the United States produced that would justify the production of backup documentation for any additional files.  The court in the case cited by Quicken, *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403, 2011 WL 3652754 (E.D.N.C. Aug. 18, 2011) (Ex. 9), analyzed the burden associated with the production of the sought documents and compelled the production of data and other documents based on the lack of burden.  *See id.* at *5.  Here, as the United States informed Quicken when it negotiated the compromise related to the ten loans the burden of further production would be enormous.

Except for one outlier decision, courts widely hold there is no duty to mitigate under the False Claims Act.  *See, e.g., Toepleman v. United States,* 263 F.2d 697, 700 (4th Cir. 1959); *United States v. HCR Manor Care, Inc.,* Civ. A. No. 09-0013, 2015 WL 11117429, at *1 (E.D. Va. Dec. 9, 2015) (Ex. 10).  But, more importantly, Quicken does not dispute that HUD did in fact mitigate its damages by selling any assets transferred along with a claim.

As the Sixth Circuit has held, a plaintiff is "only required to make reasonable efforts to mitigate damages, and is not held to the highest standards of diligence. The claimant's burden is not onerous, and does not require him to be successful in mitigation."  *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983).  In the context of selling property, a plaintiff is neither required to "seek out the optimum conditions for resale nor hold out for the property's fair market

- 11 -

value, but must only make those efforts that are fair and reasonable under the circumstances." *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (internal quotation omitted). Quicken cites no evidence that the United States failed to take the actions such as those that the court in *Robinson* stated could constitute reasonable efforts, such as obtaining an appraisal, advertising, calling brokers, inspecting the condition of the property, or checking local real estate market trends. *See id.*

Quicken has the data on HUD's mitigation. Quicken can therefore make any post-hoc argument it wants that HUD should have received more. But Quicken's request for evidence that the United States failed "to ferret out the single best situation which will absolutely minimize the breaching party's damages[,]" *id.* at 1336, rather than make reasonable efforts under the circumstances has no place in the case.

Finally, Quicken misconstrues the proximate causation standard. While there are certainly many factors in any individual's default on a mortgage, the law does not require that improper underwriting be the only factor. Rather, the borrower's default needs to be "a reasonably foreseeable outcome" of Quicken's actions. Opinion and Order on Motion to Dismiss (Dkt. 25 at 43) (citing, among other cases, *United States v. Eghbal*, 548 F.3d 1281, 1284 (9th Cir. 2008)). Courts routinely hold that proximate causation is satisfied as long as the improper underwriting relates to

a borrower's capacity and willingness to repay, even if there are other subsequent contributing causes such as "inability to maintain employment, [or] decreased paychecks."  *See United States v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008). General documents related to actions taken by HUD when FHA borrowers default do not go to whether the fraudulent underwriting of the loans at issue in this case went to the borrower's capacity and willingness to repay the loans at issue and therefore proximately caused the United States' losses.  The discovery sought by Quicken is therefore not relevant and disproportionate to the needs of the case.

### III.    Quicken's Attempt to Put the Government on Trial Should be Stopped

To distract from the facts uncovered by the Government of Quicken's widespread scheme to defraud HUD of millions of dollars, Quicken attacks the Government for having the gall to investigate the company.  To that end, Quicken continues to seek discovery into the Government's investigation that has no relevance to any claim at issue or any cognizable defense.

While Quicken currently seeks two particular documents, it is unclear where this line of inquiry will end if the Court allows Quicken to investigate the Department of Justice's investigation of Quicken and the steps HUD took to protect the integrity of that investigation.  This line of inquiry has already led to badgering a former cabinet secretary about supposed conversations about the investigation. Donovan Tr. at 202-229 (Ex. 6).

- 13 -

Quicken's attempt to show the United States' investigation was "a political initiative unrelated to loan quality" has no place in this action.  Motion at 14.  Any "purported defense of 'discriminatory enforcement' is, as a matter of law, no defense.  The government 'alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically.'"  *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 658 (6th Cir. 1976) (quoting *Moog Indus., Inc. v. Federal Trade Commission*, 355 U.S. 411, 413 (1958)). The Court should end this inquiry now.

Despite two years of discovery, Quicken has yet to obtain any evidence to indicate that the Government's decision to investigate Quicken is a proper avenue for additional discovery.  This is not surprising because, even were Quicken's allegations true, they reveal nothing improper.  Quicken seeks to show that it was investigated because FHA lost significant money and investigated the largest lenders who were responsible for the mortgages that caused the greatest losses to FHA in order to determine if there was potential wrongdoing.  But there would be nothing improper if it were the case that when the United States lost significant money it looked to see if fraud was a cause.  Based on the evidence uncovered here and summarized in the complaint, there is certainly nothing improper about the United States seeking to recover from Quicken for its False Claims Act violations.

- 14 -

The other documents Quicken seeks also should not be compelled. The United States is not aware of any documents responsive to RFP No. 189. The United States sued Quicken on April 23, 2015. The United States' initial subpoena was issued on April 27, 2012, less than three years before filing suit. The United States is unaware of any information prior to Quicken's response to that subpoena that would put the United States on notice of Quicken's fraud. Therefore, the United States is unaware of any documents responsive to RFPs Nos. 162-163.

Respectfully submitted,

CHAD A. READLER                 By:   */s/ Samuel J. Buffone Jr.*
Acting Assistant Attorney General      Attorney, Commercial Litigation Branch
                                       P.O. Box 261, Ben Franklin Station
Matthew Schneider                      Washington, DC 20044
United States Attorney                 (202) 616-2945

*Attorneys for the United States of America*

## **Local Rule Certification**

I, Samuel J. Buffone, certify that the United States' Memorandum on Current Discovery Issues complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Samuel J. Buffone Jr.*
Samuel J. Buffone, Jr.

# **Certificate of Service**

I hereby certify that on April 25, 2018, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

    Jeffrey B. Morganroth
    MORGANROTH & MORGANROTH, PLLC
    344 North Old Woodward Avenue, Suite 200
    Birmingham, MI 48009

    Thomas M. Hefferon
    William Kyle Tayman
    Sabrina M. Rose-Smith
    Joseph F. Yenouskas
    Levi Swank
    Matthew Riffee
    GOODWIN PROCTER LLP
    901 New York Avenue, NW
    Washington, DC 20001

Additionally, copies of the sealed attachments were served via email to all

counsel of record.

                                         */s/ Samuel J. Buffone*
                                         Samuel J. Buffone
                                         Attorney, Commercial Litigation Branch
                                         P.O. Box 261, Ben Franklin Station
                                         Washington, DC 20044
                                         (202) 616-2945
                                         Email: Samuel.j.buffone@usdoj.gov