UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**DEFENDANT QUICKEN LOANS INC.'S
OPPOSITION TO
UNITED STATES' MOTION TO COMPEL (ECF NO. 92)**

Faced with its own damning discovery conduct (ECF No. 93), the Government tries—but fails—to portray itself as the victim by accusing Quicken Loans of withholding discovery, too.  First, although the Government claims that Quicken Loans is "refusing" to respond to the so-called Loan Findings, this Court has twice ruled that Quicken Loans has no obligation to do so.  Second, the Government's request to compel Quicken Loans to produce its loan files with "full functionality" is a thinly-veiled Trojan Horse to attempt to gain unrestricted "access" to Quicken Loans proprietary systems.

There is no justification for the Court to order relief on either issue.  The Loan Findings are not themselves discovery, as this Court recently found (ECF No. 97), so there is no "response" that can be compelled under Rule 37.  In any event, the Court should not reconsider its earlier decision denying the Government's request for a response, particularly because the vast majority of the Loan Findings (2,700+ out of about 3,000) are not even "at issue in this case" (ECF No. 97 at 4), and the few surviving "findings" are the subject of ongoing discovery.

The Government's request for access to Quicken Loans' systems is untethered to any predicate discovery request.  There is thus nothing to compel under Rule 37.  Nor does the Government's tortured reading of Rule 34 justify its motion.  If it did, the Government would itself be guilty of numerous violations in its own production of data.  Compliance with the request would also create severe

and undue burdens on Quicken Loans, requiring hundreds (if not thousands) of hours of software programming in order to create access. Even if it were feasible (it is not), it would be unproductive because today's versions of the systems are not the same as were used during the period in question. To the extent the Government is complaining about the format and electronic accessibility of loan files, associated data, and underwriting manuals (GURU), Quicken Loans has already produced what was requested months and even years ago, so the request is not only unjustified, it is impermissibly late.

## I.   THE LOAN FINDINGS WARRANT NO RESPONSE.

The Government seeks an order compelling Quicken Loans to (1) "respond to the United States' findings by stating whether it agrees with the factual findings"; (2) stating "whether it agrees that the facts indicate [] a material violation of FHA requirements"; and (3) stating "whether such a violation was done with the requisite level of scienter." Mot. at 2. The motion should be denied in all respects.

As a threshold matter, the Government's request is procedurally improper. It never served discovery seeking a "response" or other information about the Loan Findings. Because Rule 37 cannot be invoked without a predicate discovery request, and the Government "has cited no authority . . . that would allow the Court to [compel] a discovery response in these circumstances," the Court should deny

the Government's motion as premature and procedurally improper.  ECF No. 97 at 4.

The Court has also already twice ruled that no disclosure from Quicken Loans is necessary (ECF Nos. 44, 70), and the Government shows no good cause for why this Court should reconsider those rulings.  This is true for three reasons.

First, as this Court recently ruled, findings "not comprehended within the four practices described in the complaint and sustained as sufficiently pled will not be at issue in this case."  ECF No. 97 at 4.  That eliminates the vast majority (2,700+) of the Loan Findings.  However, because the Government has asked the Court to compel a response to <u>all</u> of the Loan Findings, the motion should be denied as grossly overbroad.

Second, requiring a "response" at this time would be premature and inequitable.  As this Court has previously found, while the Government "had years to canvass information within its province" before being required to disclose its Loan Findings, Quicken Loans still has not received sufficient discovery to allow it to formulate its defenses.  ECF 44.  The Government misleadingly asserts that Quicken Loans has had seven months to prepare responses.  But the Government has thwarted Quicken Loans' attempts to obtain sufficient discovery needed to allow it and its expert to fully rebut the Government's contentions.   The Government, for instance, has refused to search for and produce all relevant

documents on how it interpreted the guidelines at issue and applied them to particular factual circumstances for FHA loans.  This is in part the subject of Quicken Loans' motion to compel (ECF No. 93).  The Government also has claimed privilege over an astounding 300,000 documents without identifying, much less substantiating, those privilege claims; discovery dispute practice as to the privilege log was raised to the Court just yesterday.  And what the Government has produced has been produced late; only last month, for instance, the Government turned over 380,000 documents—over one-third of its total ESI productions—including many documents from key witnesses who have knowledge of the interpretation and application of HUD guidelines (a number who have already been deposed as to those issues, and may need to be re-called).

When the Government initially requested that Quicken Loans be compelled to respond to these findings, this Court correctly concluded that Quicken Loans "cannot be expected to stake out positions that could have dispositive consequences on hundreds of issues," ECF No. 70 at 2, before fact discovery is complete.  That fact remains true today.  While the Government now argues that it is "simply not fair" to wait for Quicken Loans' expert disclosures, that is the discovery schedule that the Government thrice asked that the Court adopt.  ECF No. 23 at 11-12; D.C. ECF No. 27 at 5; ECF No. 30 at 20.

Third, requiring Quicken Loans to make affirmative disclosures concerning the materiality and scienter elements of the Government's case in chief, and on which the Government has itself made no disclosures, is inappropriate. The Court originally ordered the Government to identify "which of the loans in the Loan Selection it contends support its claims" and "the manner in which the loans do so, including specifically what guideline or rule is alleged to have been violated." ECF No. 44. The Government then made disclosures only concerning the issue of "falsity" under the False Claims Act, and said nothing about scienter or about materiality. ECF No. 67 (Loan Findings); *see* ECF No. 84 at 13, 32-33 (as discussed at the January argument on Quicken Loans' motion to strike). Thus, granting the Government's request to compel Quicken Loans' position as to these elements of the Government's case would unfairly flip the burden of production and proof to Quicken Loans. The RMBS case management orders cited by the Government (Mot. at 9) lend no support to requiring such a backwards process because none look like what the Government wants here: a mechanism to force a defending party to "go first" as to elements of the plaintiff's affirmative case. *E.g.*, *Federal Housing Fin. Agency v. UBS America, Inc.*, No. 11-06201 (Nov. 26, 2012) ("Rebuttal Findings shall not be used for any purpose . . . ."). At bottom, there is simply nothing for Quicken Loans to "respond" to or even "agree" with on scienter and materiality, so the Court should deny the Government's motion.

5

## II.   THE GOVERNMENT'S DEMAND FOR ACCESS TO QUICKEN LOANS' SYSTEMS SHOULD BE DENIED.

The Court should also deny the Government's request for access to Quicken Loans' proprietary computer systems.

### A.   There Are No Discovery Requests At Issue, So There Is Nothing to Compel.

The Government's motion to compel has no foundation.  There was no request ever made for Quicken Loans to produce what the Government now seeks: "Quicken [Loans]'s loan files with all the functionality available through its proprietary software."  Mot. at 1.  Nor has the Government requested "the production of native files for the loan files in AMP and LARS as well as the software necessary to view those native files and . . . native versions of GURU with working hyperlinks."  Mot. at 14.  The Government does not even feign that it asked for such discovery, and instead vaguely alludes to its "requests for production and for inspection."  Mot. at 4.  At most, the Government asked for a simple inspection of Quicken Loans' primary loan software system, AMP, and its document viewer system, LARS, to understand how those systems are used in underwriting.  Quicken Loans has offered, and the parties are moving forward with, that inspection.  Tayman Decl. ¶ 11.  But without a predicate discovery request for the native files and underlying software, there is nothing more to

6

compel.  Fed. R. Civ. P. 37.  Granting the Government's motion would, therefore, "violate the prohibition on issuing advisory opinions."  ECF No. 65.

### B.      Rule 34 Does Not Require Producing Computer Software.

Trying to save its motion, the Government suggests that Quicken Loans "fail[ed] to meet its duties under Rule 34" because Quicken Loans has produced loan files, data, and underwriting manuals in "degraded" electronic versions by not also making the company's proprietary software available.  Mot. at 12.  This argument is a red-herring.  The Government never requested, and never sought to meet and confer until after it sought relief from the Court, that it be given or allowed to access Quicken Loans' proprietary software to view the loan files and loan data.  And, Rule 34 only requires, as the Government concedes (Mot. at 12), that electronic data be produced "in a reasonably usable form or forms."  Quicken Loans did just that.  The Government's rather remarkable contention that Quicken Loans flouted Rule 34 by producing loan files and data without simultaneously making the software available for the data to be viewed *in situ* is unprecedented.

The Government's alternative contention that Quicken Loans produced "degraded" data because it does not show "the data as it is intended to be displayed" is self-defeating.  Mot. at 11.  Both parties, in fact, have produced data extracts from their proprietary systems in Excel format.  That is the nature of how

data extracts work and frequently get produced, and is precisely what the parties agreed to do and have done throughout the case.

    The Government also fails to establish that the loan files and data it has is somehow not "reasonably usable."  Quicken Loans produced the loan files in the same format that it has always used to produce loan files to HUD, which is the format that HUD requires when it audits a loan (Ex. 1 at 5), and the same format that the Government used when it produced audit files to Quicken Loans.  Indeed, the Government first received loan files in this format from Quicken Loans nearly six years ago during the pre-suit investigation.  Tayman Decl. ¶ 3.  It has had the loan files for the Loan Selection for over two years, and has had the data extract for over nine months (and much of the relevant data and text entries, including loan journal notes, for much longer).  *Id*. ¶¶ 4, 7-9.  And, yet, at no time did the Government seek to have Quicken Loans produce the loan files and data in a different form or format (*id.*), nor has it had any difficulty using the loan files to make its September 1 loan findings or otherwise prosecute this case.  If there was a legitimate issue with using these materials, it would have raised it long ago.

    The Government entirely ignores this, and instead rests its strawman argument on the testimony of Sheryl Kutrukis.  The Government asserts that it was thwarted in obtaining her testimony because Ms. Kutrukis did not recognize a data extract from AMP.  Mot. at 5.  However, Ms. Kutrukis did not "refuse[] to testify"

on this basis, as the Government asserts; rather, when the Government showed Ms. Kutrukis the loan file, she aptly answered the exact same question that she could not answer when shown only a data extract.  Ex. 2.  Damning to its own argument here, in the 7+ months after Ms. Kutrukis' deposition, the Government proceeded to take more than fifteen depositions without hesitancy or issue.

### C.    The Court Should Not Grant Any Relief.

Independent of these hurdles, the Government demonstrates no "need" for some enhanced form of the loan files, data and manuals, and no "need" for "access" to Quicken Loans' proprietary systems, let alone one that is proportional to the significant burdens implicated by its request.  Its request also presents reasons unique to each system that are alone sufficient to deny the motion.

### 1.    The Motion Does Not Make Any Showing That The Requested Access Is Feasible or Reasonable.

The Government's request for "access" to Quicken Loans' computer systems present substantial and burdensome technological challenges.  There is no feasible way to provide the Government with what it envisions—a login and password that would enable it to view the relevant loans in AMP and LARS, and access the GURU underwriting guidelines.  Mannarino Decl. ¶ 7.  Quicken Loans systems are fully integrated.  When one accesses AMP, GURU, and LARS, other proprietary intranet sites and resources housing Quicken Loans' and its clients' sensitive and confidential data are also accessible.  *Id.* ¶ 6.  Under its proposal, the

Government would have free reign to search for, inspect, and copy this information because there is no reasonable means by which Quicken Loans can limit a third-party's access solely to AMP, GURU, and LARS. *Id.* ¶¶ 7-9. Nor are these systems currently capable of "read only" access that would prevent the Government from changing, reformatting, moving, or otherwise inadvertently altering Quicken Loans' data. Limiting the Government's access to the loans at issue is no cure because to do so Quicken Loans would have to design, code, and implement restrictive permissions, at significant cost, as the systems do not currently operate with such restrictions. *Id.* As Quicken Loans' VP of Internal Platforms testifies, all of these tasks—granting access, limiting permissions, and creating firewalls—would divert hundreds of hours of team member time and cause substantial business disruption. *Id.* And these are only a few of the complex problems the motion to compel presents, that the Government blithely ignores.

As the propounding party the Government must show why the requested access is appropriate, proportional, and necessary. Fed. R. Civ. P. 26(b)(1). The Government has not even tried to meet that burden. Courts routinely reject disproportionate and invasive discovery demands for "unfettered" access to a company's computer systems, as is the Government's request here, because "[s]uch generalized request for access is not proper under Rule 34." *E.g.*, *Dempsey v. State Farm Mut. Auto. Ins. Co.*, No. 10-11503, 2011 WL 13217197, at *4 (E.D.

Mich. Mar. 31, 2011) (Komives, M.J.); *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) ("Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations").[1]  This Court should do the same.

### 2.    There Is No Basis to Order Enhanced Access to AMP Data.

AMP is the proprietary system used by Quicken Loans underwriters to track and underwrite a loan.  Notably, the Government does not identify any "portions of AMP that Quicken has refused to produce."  Mot. at 13.  Its only real complaint is that "data" from AMP is "not clear" because a witness responded, "I don't know," when asked if the data extract printouts "look like anything you could see in [AMP]."  Ex. 3 at 62.  But, again, that is the case with every extract of data, including the Government's.  The relevant question is not the appearance of the data, but whether it provides the same information in a reasonably usable format.  As discussed above, the Government has failed to make that showing here.  The Government also claims that certain data reflecting Ms. Klenk's submission of a loan to an AUS is "not clear" (Mot. at 10-11), but the Government never bothered to ask her about that information.  Nor has Quicken Loans "refused to produce" the "underwriter summary" and "employment screen" in AMP, as the Government claims.  Mot. at 13; Tayman Decl. ¶ 11.  And Quicken Loans produced (2+ years

---

[1] The only caselaw cited by the Government for its motion on this front—the out of circuit *Rambus* decision (Mot. at 13)—is inapposite because there, the producing party converted a <u>document</u> in a manner that made it unreadable, whereas here there is no other form in which to produce the requested "data."

ago) each set of loan journal notes from AMP as separate files, not a so-called "excel dump."  Tayman Decl. ¶ 8.

### 3.    There Is No Basis To Order Additional LARS Information.

LARS was the interface used by Quicken Loans underwriters to view loan file documents, which were organized by loan file, document type, and date.  The Government first received loan files from Quicken Loans nearly six years ago, but only now is claiming that the format of those files is "degraded," because the documents do not include information about their location in LARS.  Mot. at 13.  But the Government has never requested "any of the organization of the loan file or other tracking information contained LARS," nor has it made a relevance proffer for any "organization" or "tracking" information.  Mot. at 4.  Again, there is nothing to compel if there was nothing requested.

Proving that its request is hollow, the Government has identified no properties that exist or that have been "degraded" by the production format.  The Government also had no difficulty in obtaining testimony over the past five years.  Its only complaints on that front arose not because the documents were produced in an unusable format, but because the Government has deployed unfair deposition tactics to confuse witnesses.  For instance, the Government chose to frustrate a witness's testimony by printing out an entire loan file and asking the witness to sift through the pile to locate particular documents.  *E.g.*, Ex. 3 at 32-34.  (Quicken

Loans will ignore, for now, the Government's baseless accusations that its improper questioning during examinations have elicited speaking objections from Quicken Loans' counsel.)

### 4.     The GURU Has Been Produced Multiple Times.

The Government's final request concerns Quicken Loans' underwriting manual, GURU, which is hundreds of pages and accessed electronically by underwriters.  It wants "native versions of GURU with working hyperlinks."  Mot. at 14.  As detailed in the attached declaration, Quicken Loans has produced every version of every GURU multiple times and in multiple formats.  Tayman Decl. ¶¶ 5-6.  The Government has also acknowledged that it has had the very documents it now seeks to compel—"native PDFs with full OCR"—since the pre-suit investigation.  Tayman Decl. ¶ 5.  There is nothing more to produce.

The Government nevertheless complains that three of Quicken Loans' witnesses (out of nearly two dozen) "refused to testify" when shown hard copy exhibits of the GURU.  This warrants no attention by the Court.  Almost all of the witnesses have had no difficulty testifying, even when shown the 500+ page GURU in hard copy.  Ex. 3 at 22-23.  And even those that supposedly "refused" to testify were still able to answer when the Government bothered to identify the sections of GURU relevant to its questions.  *E.g.*, Ex. 4.  Again, there remains nothing more to compel.

## III.   THE GOVERNMENT'S "EVIDENCE" OF A "FRAUDULENT SCHEME" IS IMPROPER AND SHOWS NOTHING.

The Government tries, yet again, to soil Quicken Loans' good name by diverting the Court's attention to what the Government contends are the most "compelling" "admissions" of fraud it has identified to date.  Mot. at 7-8.  But this supposedly "strong evidence of Quicken's fraud" is a transparent and improper attempt to color the record, and is not relevant to the discovery dispute at issue.

Nonetheless, Quicken Loans will briefly set the record straight.  There was no fraud.  As it did in the Complaint, the Government misleadingly excerpts one-off emails concerning specific loans or practices not even at issue in the case, in a vain effort to fabricate some basis for this lawsuit.  There is nothing here:

- The Government identifies as supposed "fraud" a single instance in which an underwriter could not "recall," 9+ years after the fact, whether his original opinion, that the appraised value of a particular property was too high, changed after further review of the appraisal by his supervisors.  Mot. Ex. 7.

- The Government mischaracterizes one email as showing that Quicken Loans "pressured underwriters to compromise their integrity," but the email can in no way be read to support that claim, and instead shows Quicken Loans' concern with quality.  Mot. Ex. 8.

- The Government cites an irrelevant email showing Quicken Loans management doing the right thing on appraisals (not value appeals) for <u>non-FHA loans</u>, months before Quicken Loans even began underwriting FHA loans.  In no way is this email germane to this lawsuit, let alone is it an "admission" of fraud.  Mot. Ex. 9.

- The Government misleadingly stamps "fraud" on a hypothetical statement that Quicken Loans "might take 11" months of canceled checks to exclude a

14

specific debt, rather than the 12 months provided in the handbook, "if we got permission from the HOC or there was a mortgagee letter" or someone "reach[ed] out" to HUD about it to confirm that Quicken Loans was in compliance with HUD's guidance.  Ex. 5.

- The Government also attacks Quicken Loans for putting HUD "at risk" by approving a refinance loan for one borrower who had to pay a $350 prepayment penalty on his existing mortgage, choosing to ignore that the borrower had compensating factors of $250,000+ in assets and exemplary credit score.  Mot. Ex. 11.  And, for a different borrower, it attacks Quicken Loans for approving a borrower with two supposedly missed payments on a prior mortgage that were not missed at all, but the result of a reporting error by the servicer.  Mot. Ex. 10.  Neither accusation is remotely credible, let alone evidence of fraud.

These mischaracterized snippets are simply irrelevant to the instant motion, and incapable of sustaining the Government's misguided theory that Quicken Loans engaged in a fraudulent scheme.

## CONCLUSION

The Court should deny the Government's motion to compel.

Dated:  April 25, 2018

Respectfully submitted,

QUICKEN LOANS, by its attorneys,

*/s/ Jeffrey B. Morganroth*

| | |
|---|---|
| Thomas M. Hefferon | Jeffrey B. Morganroth |
| Sabrina M. Rose-Smith | **MORGANROTH &** |
| W. Kyle Tayman | **MORGANROTH, PLLC** |
| **GOODWIN PROCTER LLP** | 344 North Old Woodward Ave., Suite 200 |
| 901 New York Ave., NW | Birmingham, MI 48009 |
| Washington, DC  20001 | Tel.:  248.864.4000 |
| Tel.:  202.346.4000 | jmorganroth@morganrothlaw.com |
| thefferon@goodwinlaw.com | |

15

## <u>LOCAL RULE CERTIFICATIONS</u>

I, Jeffrey B. Morganroth, certify that Defendants Quicken Loans Inc.'s Opposition to United States' Motion to Compel complies with the page limitations set forth in the Court's March 28, 2018 Order, and Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).


*/s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2018, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

<u>*/s/ Jeffrey B. Morganroth*</u>
Jeffrey B. Morganroth