UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>    Defendant. | Civil Action No.<br>2:16-cv-14050 (MAG) (RSW)<br><br>District Judge:<br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge:<br>Hon. R. Steven Whalen |

**QUICKEN LOANS INC.'S OPPOSITION TO THE UNITED STATES'
MOTION TO COMPEL RESPONSES TO REQUESTS FOR ADMISSION
<u>CONCERNING UNPLED PRACTICES</u>**

The Court has twice ruled explicitly that this case is limited to the four practices that the Government pled with specificity in its Complaint, and it reiterated that guidance at the June 27, 2018 conference. ECF Nos. 25 (MTD Op.), 97 (MTS Op.). Yet, the Government continues to insist that all of the 3,000+ alleged findings in its September 1 Report remain "at issue" in the case—including in discovery correspondence on July 3, a week *after* the June 27 conference. The motion to compel continues that approach: seeking answers to two sets of requests to admit irrelevant facts about loans that do not involve one of the four alleged practices. *See* Motion (addressing First Set of Requests to Admit, nos. 1-606, the "Factual RFAs" (Mot., Ex. 2), and Second Set of Requests to Admit, the "Document RFAs" (Mot., Ex. 1)).

The Court should reject the Government's latest effort to complicate this already "sprawling" case in clear contravention of this Court's orders and repeated admonition that matters outside "the four practices described in the complaint" "will not be at issue in this case." MTS Op. at 4. Quicken Loans has already undergone substantial expense and burden in responding to hundreds of RFAs with substantive information. Holding the Government to only those findings contemplated by its Complaint is not arbitrary (Mot. at 7)—it is necessary, or else "discovery would have to be widely expanded," and the schedule severely impacted. MTS Op. at 4, n.1.

I.      **RFAs On Unpled Practices Are Not "At Issue" In This Lawsuit.**

The two sets of RFAs sought nearly 700 admissions about facts that have nothing to do with the four practices alleged in the Complaint: that is, income miscalculation, ignoring "obvious red flags that indicated a borrower would not be able to repay," management exceptions, and value appeals. ECF 25 at 8-10. Tellingly, the Government makes no attempt to show how each RFA relates to one of the four practices. To the contrary, the Government suggests it needs discovery to figure out whether and how the Unpled Practices findings can be crammed into categories that its Complaint embraced. Mot. at 5-6.

Moreover, the Government expressly admits that it is seeking to expand the covered practices. Rather than limiting its requests to "management exceptions" as pled in its Complaint (Compl. ¶¶ 114-27; MTD Op. 19-22), the Government now asserts that it is challenging exceptions, "whether they were a management *or underwriter* exception." Mot. 6 (emphasis added). The Government also seeks to redefine "red flags" to include not only "obvious red flags that indicated a borrower would not be able to repay" as pled in the Complaint (Compl. ¶ 112), but also facts or circumstances implicating "the borrower's creditworthiness, or the integrity of the data entered into the AUS." Mot. 6. Such eleventh-hour attempts to replead and vastly expand this case run counter to not only the operative pleadings, but numerous Court Orders. As the Court has repeatedly recognized,

2

the Government cannot contend that a failure to comply with any eligibility and qualification guideline is a "red flag." (Such a contention is also inconsistent with how FHA officials have testified. Exs. 1, 2). That would put the parties back to the twice-discredited contention that this case involves anything the Government might want to label as part of a "scheme to submit false claims."

Unlike the Government, Quicken Loans has done the work of identifying, in its Motion to Strike, the loans that concern Unpled Practices. ECF 75-2, 75-3. Even a cursory look at the RFAs that relate to those Unpled Practices loans reveals they do not concern facts at issue under *Bledsoe* and this Court's orders:

- Factual RFA 224: "the borrower's bank statements show numerous purchases made at stores located in Newport News, VA."

- Factual RFA 141: "the loan file does not contain documentation that the home owners' association fee for the subject property was $130 per month."

- Factual RFA 205: "Quicken [Loans] did not consider . . .the value of the items given by the seller, here, a pool table and riding lawn mower, as part of the sales contract."

- Factual RFA 509: "the borrower had lived in Iowa for at least 2 years prior to applying for the subject loan."

*See* Ex. 3 (additional examples just as to non-appraisal findings).

For the Document RFAs, the Government improperly seeks to compel hundreds of additional admissions concerning Unpled Practices. For example, for FHA Case No. 431-4576072, the Government seeks to compel RFAs 302 and 303

3

concerning two loan documents where the only finding in the September 1 Report is something outside the scope of this case—that Quicken Loans "failed to adequately document a gift." ECF 67-2 at 37. Similarly, for FHA Case No. 011-6068939, the Government asks in RFA 375 about an appraisal report although the September 1 Report finding does not concern value appeals at all. ECF 67-3 at 6.

The Government's contentions that it should be allowed nevertheless to obtain discovery in contravention of the Court's orders and guidance are, largely, more of what it has said before. The suggestion (Mot. at 7) that this Court wait until *after* fact and expert discovery closes before further enforcing its two prior Orders and holding the Government to its Complaint, as those Orders do, is absurd. There is no reason to force Quicken Loans to incur huge additional and unnecessary expenses, and the diversion of its officers' and employees' time and attention, just because the Government wants to delay the inevitable. It is decidedly timely—not too early—for the Court to continue to manage the discovery in this case and prevent irrelevant and wasteful pre-trial proceedings.

The Government offers two new arguments in support of its attempt to seek Unpled Practices discovery, neither of which is persuasive.

First, the Government contends the Unpled Practices can be the subject of litigation because it has two tagalong common law claims and the limitations this Court has repeatedly imposed arise only under the False Claims Act. Mot. at 5, 7.

4

But the Government has explicitly limited *itself*: both common law causes of action are premised solely on the same factual allegations as the False Claims Act claims (Compl. ¶¶ 213, 217), and the Government concedes it will attempt to prove those claims "simultaneously with its False Claims Act case." ECF 116 at 6. The Government never stated in response to Quicken Loans' Motion to Strike (ECF 76), or in the recent Joint Submission (ECF 116), or at the June 27 conference that its common law claims embraced broader conduct and unlocked the key to discovery into Unpled Practices. And this Court never limited the scope of its Orders and guidance to the FCA claims. This lawsuit is defined by the Complaint, and it is too late now to sue for more. MTS Op. at 4, n.1.

Finally, the Government seeks to justify its Motion by claiming that it "has uncovered evidence to support its contentions that the findings are related to the four practices," pointing to a single loan, and so the Court should compel burdensome discovery into *all* of the Unpled Practices. Mot. at 5-6. The statement is a clear admission that the Government listed loans on the September 1 Report without believing they fit within any of the four practices but with a hope that something would turn up. In any event, no new evidence has been "uncovered" as the relevant loan documents and data were produced long before the September 1 Report. And the Government's attempt to retroactively justify one contention in its September 1 Report with respect to a single loan cannot justify the Government's

request to engage in a widespread fishing expedition that would require Quicken Loans to respond to burdensome and unnecessary discovery on irrelevant issues.

## II. The Government's Expansive Discovery Is Disproportionate.

The RFAs at issue here do not "streamline" the case because there is no need to "facilitate proof" or "narrow [] issues" (Mot. at 2), that are not part of the lawsuit. Moreover, the discovery sought is unduly burdensome and disproportional to the needs of the case at this time—by Quicken Loans' count, it would encompass approximately 350 Factual RFAs and about the same number of Document RFAs. This would require literally hundreds of man-hours to complete. The Motion is simply not justified given that the Government has had the relevant files and data for years and could have served these onerous Requests months ago.

## III. The Motion is Otherwise Improper.

The Motion also should be denied because it, and the proposed Order, go far beyond the permission granted by the Court to file "a motion to compel as outlined in [the Government's] June 22, 2018 letter." ECF 119. The letter only sought to overrule the Unpled Practices objection, but the Motion and proposed Order indiscriminately seek to compel additional responses to all 1,219 RFAs—seemingly seeking to overrule all other objections to particular RFAs. Even the Government's letter acknowledges the parties have not met and conferred about anything other than the Unpled Practices objection, and the Motion grudgingly

6

acknowledges Quicken Loans' substantive responses to many of the RFAs. The Government's overreach should not be entertained.

Among other objections that remain are Quicken Loans' concerns that dozens of the Factual RFAs are premised on new alleged findings that are not on the September 1 Report—and so plainly not candidates for relief (never mind improper under the Scheduling Order). *See* Ex. 4 (identifying examples).

For the reason that it goes beyond the scope of the letter, too, the Government's throw-away suggestion that access to Quicken Loans' underwriting systems be given as an alternative remedy (Mot. at 7), is inappropriate. Nor would access to the system resolve disputes for trial through RFAs. Mot. at 2-3, 4. The Government already has the documents (like the AUS certificate) and the loan data (like exception and value appeal tracking items). The problem is the unjustified burden of demanding that Quicken Loans answer some 700 RFAs about documents and data that are irrelevant because the loans concern Unpled Practices.

Dated: July 10, 2018

Thomas M. Hefferon
Sabrina M. Rose-Smith
W. Kyle Tayman
Joseph R. Savage
**GOODWIN PROCTER LLP**
901 New York Ave., NW
Washington, DC 20001

Respectfully submitted,
QUICKEN LOANS, by its attorneys,

*/s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth
**MORGANROTH &**
**MORGANROTH, PLLC**
344 North Old Woodward Ave., Suite 200
Birmingham, MI 48009
jmorganroth@morganrothlaw.com

7

## **LOCAL RULE CERTIFICATIONS**

I, Jeffrey B. Morganroth, certify that Defendant Quicken Loans Inc.'s Opposition to United States' Motion to Compel complies with the page limitations set forth in the Court's June 27, 2018 Order, and Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2018, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

*/s/ Jeffrey B. Morganroth*
Jeffrey B. Morganroth