UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> QUICKEN LOANS INC., <br><br> Defendant. | Civil Action No. <br> 2:16-cv-14050 (MAG) (RSW) <br><br> District Judge: <br> Hon. Mark A. Goldsmith <br><br> Magistrate Judge: <br> Hon. R. Steven Whalen |

# UNITED STATES' MOTION TO COMPEL QUICKEN LOANS INC. TO PROVIDE NECESSARY DISCOVERY

The United States moves this Court to compel Quicken Loans Inc. (Quicken) to provide certain narrow discovery necessary to correct its shortcomings in discovery. Specifically, the United States seeks to compel (1) documents that Quicken collected from third parties related to the Loan Selection; (2) one additional hour of testimony from Dan Gilbert whose deposition was unilaterally terminated after only four hours; (3) non-privileged information and a privilege log for withheld loan journal notes; (4) additional inspection of Quicken's underwriting system, AMP, including the loss mitigation and automated underwriting system (AUS) screens in order to remedy improper restrictions on the court-ordered access to AMP; (5) a four-hour deposition of Julie Cabble; and (6) the production of profit data for the universe of loans Quicken claims is relevant to its defense.

## Argument

The Court should allow for limited additional discovery in order to correct Quicken's discovery shortcomings and allow the discovery necessary to fully rebut the company's defenses.

 **I.** **Quicken Improperly Withheld Documents, Prematurely Terminated a Deposition, Refused to Provide a Privilege Log, and Limited the United States' Access to AMP**

**Documents related to Loan Selection**: Quicken has collected documents from third parties related to the loan files at issue but failed to produce these documents.

On the evening of the final day of discovery, Quicken produced three loan file documents from "Loss Mitigation": ▬▬▬▬▬▬▬▬▬▬ from July 2018 and ▬▬▬▬▬▬▬▬ from May 2018. Ex. 1-3. Quicken had never before produced loan file documentation from loss mitigation or informed the United States that it had such documentation. Quicken claimed that producing any additional documentation raised work product concerns, yet it has not logged any such documents, presumably because the parties agreed to only log documents from the relevant time period.

The documents are responsive to the United States' Second Requests for Production, which requested for all 487 loans in the loan selection "all documents concerning the origination, underwriting, insuring, quality control, and servicing of the mortgage, including but not limited to" thirty four enumerated categories of documents covering all aspects of the loans. Ex. 4.

Communications with third parties are not work product, even if the communications are done by or at the direction of counsel. *See Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) (Rosen J.). These documents are highly relevant as they directly concern the validity of the United States' allegations. While the United States reserves the right to object to Quicken's use of documents to support its case that Quicken did not produce in

discovery, Quicken should not be allowed to hide any inculpatory evidence merely because the evidence was collected by attorneys during the litigation.

**Deposition of Dan Gilbert:** Quicken unilaterally ended Mr. Gilbert's deposition based on a limitation imposed by Quicken's counsel without the authority of a protective order from the Court. The United States provided informal notice of the deposition of Dan Gilbert on January 31, 2018. Quicken did not propose dates for Mr. Gilbert's deposition until July 16, offering July 20 or the afternoon of July 30, stating otherwise the deposition would need to occur after August 6. As July 20 was only four days later and three other depositions were already scheduled for that day, the United States agreed to the afternoon of July 30. The United States agreed to begin the deposition in the afternoon but refused to agree to a hard stop at four hours stating Quicken would need to seek a protective order if they wanted to limit the deposition. Quicken never sought a protective order. The deposition was scheduled to begin at 1:30 p.m. but Mr. Gilbert did not arrive until 2:15 p.m. At 7:30 p.m., after only 4:14 minutes of testimony, counsel for Quicken abruptly ended the deposition stating, "we're terminating the deposition at this point[,]" and that "you're way over four hours and we indicated we would present Mr. Gilbert

for four hours." Deposition Transcript of Daniel Gilbert (Gilbert Tr.) at 197:13-14, 198:5-9 (Ex. 5).

This tactic was procedurally improper. "Once a deposition is underway, the only mechanism to limit questioning is to terminate the deposition and move for a protective order. *See* Fed. R. Civ. P. 30(d)(3)(A) (a party may only terminate the deposition if it is conducted in bad faith or an attorney "unreasonably annoys, embarrasses, or oppresses the deponent or party.")." *Hochstein v. Microsoft Corp.*, Civ. A. No. 04-73071, 2009 WL 2616253 at *4 (E.D. Mich. Aug. 21, 2009) (Borman J.). Quicken never sought a protective order and cannot credibly argue the deposition was conducted in bad faith or to annoy, embarrass, or oppress Mr. Gilbert.

Mr. Gilbert testified that  Gilbtert Tr. at 34: 11-13 (Ex. 5).

While Mr. Gilbert was asked about emails he was not on, the emails and questions are all highly relevant to Quicken's knowledge. In one instance Mr. Gilbert was asked about an email where Quicken's head of operations, Mike Lyon,

- 4 -

stated, ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ Ex. 6; Gilbert Tr. at 116:14-120:12 (Ex. 5). One week before this email, Mr. Gilbert ████████████████████████

████████████████████████████████████

██████████████████████████████████ Ex. 7; Gilbert Tr. 150:5-7 (Ex. 5).

In another instance where Mr. Gilbert gave relevant testimony about emails he was not on, Mr. Gilbert was asked about an instance where Mr. Lyon ██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████" Ex. 8, Gilbert Tr. 150:5-7 (Ex. 5).

The United States has limited additional questions, including Mr. Gilbert's response to receiving quality control reports, Mr. Gilbert's awareness of Quicken's failure to fire employees known to have committed fraud and misrepresentation, Quicken's reduction in staff in 2008 at the time Quicken was demanding higher production, and certain other follow up questions. The United States asks for an additional hour of testimony and, to reduce the costs associated with Quicken

improperly ending the deposition, that the deposition take place in D.C. at Government counsel's office.

**Loan Journal Note Privilege Claims:** Quicken redacted at least two lines from every loan journal note. *See, e.g.,* Ex. 9. This included the author and date of the entries. The redacted entries were made by accessing the live loan in AMP where loan data can be changed, and resulted in changes to the loan journal notes for the loans at issue in the case because new notes were added. Quicken provided one categorical log with a generic statement that "[t]he redacted portions of the loan journal notes reflect attorney-work product and privileged attorney-client communications in anticipation of threatened or pending litigation." Ex. 10. But even categorical logs should contain sufficient information to assess the privilege including the date and author. *See EPAC Tech. Inc. v. Harpercollins Christian Publ'g, Inc.*, Civ. A. No. 12-cv-00463, 2018 WL 3628890 at *1 (M.D. Tenn. Mar. 29, 2018). The United States asks the Court compel Quicken provide the United States with the redacted information that is not privileged as well as enough information to assess Quicken's privilege assertions.

**Inspection of AMP:** The United States also asks to reopen the inspection of AMP (an internal Quicken system), as the United States was barred from accessing relevant portions of AMP, specifically the loss mitigation screens and the AUS runs. Quicken's corporate designees testified these sections contained relevant

- 6 -

information. *See* Deposition Transcript Kristin Broadley 30(b)(6) at 8:6-10 (Ex. 11); Deposition Transcript of Alexi Alan 30(b)(6) at 301:25-306:3 (Ex. 12). Quicken interpreted the Court's order exceedingly narrowly arguing that the Court had not required access to the loss mitigation screens. Further, on numerous occasions the United States was denied access when attempting to access the AUS runs. In those instances where the United States could access the AUS runs in AMP, certain other relevant information was not available. Quicken also provided zero guidance on how to navigate AMP, and so the United States was unable to find this highly relevant portion of the loan files until the end of its inspections. The United States asks the Court allow 60 additional hours to inspect any information in AMP related to the 487 loans in the loan selection. The United States will further stipulate that it will only look at those loans in the 487 still at issue after the United States narrows its case, a process that is ongoing and will be completed by the end of the month, when the United States will serve its expert reports.

## II. The United States Seeks Limited Additional Discovery to Rebut Quicken's Defenses

The United States seeks limited discovery to rebut Quicken's defenses related to premiums and value appeals. Quicken has made clear it intends to argue that the premiums HUD received from borrowers for every FHA loan Quicken originated during the relevant time period is relevant to Quicken's defenses.

Additionally, testimony obtained late in discovery revealed the importance of Julie Cabble to rebut Quicken's defense that it believed its value appeal practice was proper.

**Reciprocal Profit Data:** Quicken requested and received premium data on every loan it originated during the relevant time period, asserting such information was relevant to its defenses. When Quicken made clear the scope of the premium data it requested, the United States requested corresponding, reciprocal profit data for the same loans. Quicken refused. The United States previously moved to compel profits related to the loans in the loan selection as those are the loans on which the United States primarily intends to prove its case. However, the United States requested profit information on all loans. United States 1st Request for Production 90-92 (Ex. 13). As Quicken has made clear it will not limit its defense to the Loan Selection, the United States is forced to expand the discovery it needs from Quicken to mirror the data Quicken demanded of the United States. The United States requests that the Court compel Quicken to provide reciprocal profit and revenue information for every loan on which it received premium data from the United States.

**Deposition of Julie Cabble:** Additionally, Quicken's primary defense to the United States' value appeal allegations is that it believed the practice was allowed. However, appraisers repeatedly raised concerns that the practice was improper.

- 8 -

Ex. 14, 15.  Quicken's manager in charge of Quicken employees who reviewed appraisals stated █████████████████████████████████████████████

█████████████████████████████████████████████████.  Deposition Transcript of Darren Thomas (Ex. 16) at 69:18-70:10, 74:10-77:17, 82:3-85:21.  The United States seeks to depose Ms. Cabble for four hours to understand the steps she took, if any, to address issues concerning the propriety of value appeals.

Toward the end of discovery, the parties reached an agreement to provide informal notice for any depositions of party witnesses by July 10 unless new information was discovered.  During his deposition on July 10, Darren Thomas, Quicken's manager responsible for underwriters that reviewed appraisals, disclosed Ms. Cabble as the person ████████████████████████████████

████████████████████████████████████████████████████

██████████  *Id*.  The United States received the rough draft of his deposition on Friday, July 13.  On Monday, July 16, the United States provided informal notice to TSI's counsel (which is the same counsel as for Quicken) that it wished to depose Ms. Cabble.  Counsel never responded.  Quicken had disclosed Ms. Cabble as one of eleven "current or former employees of Title Source, Inc. who may have specific information concerning appraisals and value appeals[,]" along with dozens of other Quicken employees on eight other topics.  Second Supplemental Initial Disclosures by Quicken Loans, Inc. (Ex. 17).  None of Quicken's prior disclosures

- 9 -

made clear Ms. Cabble's key role in addressing appraisers' concerns that value appeals were improper. After researching Ms. Cabble further, the United States realized that she was likely now employed at Quicken Loans and provided formal notice of her deposition to Quicken's counsel on July 26. Counsel refused to accept the notice and refused to produce Ms. Cabble for a deposition. The deposition of Ms. Cabble will not exceed the number of depositions the parties agreed in their 26(f) report. Given the importance of Ms. Cabble's role as testified by Mr. Thomas, the Court should compel her deposition.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MATTHEW J. SCHNEIDER
United States Attorney

By:  */s/ Samuel J. Buffone Jr.*
Attorney, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-2945

*Attorneys for the United States of America*

## **Local Rule Certification**

I, Samuel J. Buffone Jr., certify that the United States' Memorandum on Current Discovery Issues complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Samuel J. Buffone Jr.*
Samuel J. Buffone Jr.

# Certificate of Service

I hereby certify that on August 15, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

>Jeffrey B. Morganroth
>MORGANROTH & MORGANROTH, PLLC
>344 North Old Woodward Avenue, Suite 200
>Birmingham, MI 48009
>
>Thomas M. Hefferon
>William Kyle Tayman
>Sabrina M. Rose-Smith
>Joseph F. Yenouskas
>Levi Swank
>Matthew Riffee
>Joseph Savage
>Kate MacLeman
>GOODWIN PROCTER LLP
>901 New York Avenue, NW
>Washington, DC 20001

Additionally, copies of the sealed attachments were served via email to all counsel of record.

>/s/ Samuel J. Buffone Jr.
>Samuel J. Buffone Jr.
>Attorney, Commercial Litigation Branch
>P.O. Box 261, Ben Franklin Station
>Washington, DC 20044
>(202) 616-2945
>Email: Samuel.j.buffone@usdoj.gov